**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Telephone: (671) 472-8868/69
Email: *jtang@civilletang.com*

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
254 Commercial Street, Suite 245
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*

*Counsel for the Debtor*

**IN THE DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**
**BANKRUPTCY DIVISION**

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC., [1] | Chapter 11 |
| Debtor. | **CERTIFICATE OF SERVICE** |

I, ANDREW HELMAN, under penalty of perjury, state that, on October 5, 2023, pursuant to this Court's *Order Regarding Fixing of Deadlines under Bankruptcy Rule 3017.2* (the "Scheduling Order") [Docket No. 143], I caused copies of the following documents to be served via First Class United States Mail on all parties listed on **Exhibit A**:

1.    A copy of the *First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated September 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code* (the "Plan") [Docket No. 137];

2.    a copy of the *Ballot for Accepting or Rejecting First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated*

---

[1] The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910

*September 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code* (the "<u>Ballot</u>") [Docket No. 137-6]; and

3.      a copy of the Scheduling Order.

Service of the foregoing documents was completed by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an approved bankruptcy notice provider authorized by the United States Courts Administrative Office pursuant to rules 9001(9) and 2002(g)(4) of the Federal Rules of Bankruptcy Procedure.   A Certificate of Service Declaration of Mailing is attached as **<u>Exhibit A-1.</u>**

I further certify that on October 5, 2023, I caused copies of the following documents to be served via First Class United States Mail on all parties listed on all parties listed on **<u>Exhibit B</u>**:

1.      A copy of the Plan; and

2.      a copy of the Scheduling Order.

Service of the foregoing documents was completed by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an approved bankruptcy notice provider authorized by the United States Courts Administrative Office pursuant to rules 9001(9) and 2002(g)(4) of the Federal Rules of Bankruptcy Procedure.   A Certificate of Service Declaration of Mailing is attached as **<u>Exhibit B-1.</u>**

I further certify that I caused a copy of the Scheduling Order and a letter providing notice of the date of the confirmation hearing and deadline to object to the Plan on the Debtor's clients listed on its Amended Schedule G [Docket No. 112] to be served via electronic mail and/or First Class United States Mail (in compliance with this Court's *Order* [Docket No. 95] and the *Stipulated Protective Order re Unredacted Schedule G and Master Mailing Matrix* [Docket No. 126]) on all parties listed on **<u>Exhibit C</u>**.

1
2
3   Dated: October 13, 2023        Respectfully submitted,
4
5                      **DENTONS BINGHAM GREENEBAUM LLP**
6

/s/ Andrew C. Helman
**ANDREW C. HELMAN**

*Counsel for the Debtor*

**Exhibit A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

23197453.v1

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

TASI SGAMBELLURI
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

MICHELLE WRIGHT
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

MELINDA SULIT
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

JONATHON HOLM
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

GARBRIELLE SMITH
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

BARBARA LUJAN
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

ANDREW BORJA
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

XEROX CORPORATION
PO BOX  66050
DALLAS TX 75266-0000

PROMETI, LLC
PO BOX 326175
HAGATNA GU 96910-0000

MICHAEL PHILLIPS
410 W. OBRIEN DRIVE
HAGATNA GU 96910-0000

MICHAEL BEST & FRIEDRICH, LLP
1700 SOUTH MAIN STREET, STE 1000
SALT LAKE CITY UT 84101-0000

LMHS
80 WASHINGTON ST. BUILDING S
NORWELL MA 02061-0000

IT&E
PO BOX 24881
BARRIGADA GU 96921-0000

ISLAND CHOICE, INC.
190 W. MARINE CROPS, DRIVE STE 6
DEDEO GU 96929-0000

GUAM WATERWORKS AUTHORITY
PO BOX 3010
BARRIGADA GU 96913-0000

GUAM POWER AUTHORITY
PO BOX 2977
HAGATNA GU 96932-0000

FINRA
PO BOX 418911
BOSTON MA 02241-8911

CANADA
OPENTEXT INC.
275 FRANK TOMPA DR.
WATERLOO ON N2L0A1

FINRA: ATTN CORPORATE SERVICE COMPANY
RA
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808-1674

GUAM DEPARTMENT OF REVENUE AND TAX
PO BOX 23607
BARRIGADA GU 96921-3607

**Exhibit A-1**

23197453.v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF GUAM

IN RE:

Asia Pacific Financial Management Group, Inc.

CASE NO: 23-00005

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 11

On 10/5/2023, a copy of the following documents, described below,

First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc., Dated September 15, 2023 with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code

Order Regarding Fixing Deadlines Under Bankruptcy Rule 3017.2

Ballot for Accepting or Rejecting First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc., Dated September 15, 2023 with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code  143

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 10/5/2023

Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Andrew C. Helman
Dentons
1 City Center, Suite 11100
Portland, ME  04101

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

TASI SGAMBELLURI
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

MICHELLE WRIGHT
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

MELINDA SULIT
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

JONATHON HOLM
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

GARBRIELLE SMITH
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

BARBARA LUJAN
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

ANDREW BORJA
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

XEROX CORPORATION
PO BOX  66050
DALLAS TX 75266-0000

PROMETI, LLC
PO BOX 326175
HAGATNA GU 96910-0000

MICHAEL PHILLIPS
410 W. OBRIEN DRIVE
HAGATNA GU 96910-0000

MICHAEL BEST & FRIEDRICH, LLP
1700 SOUTH MAIN STREET, STE 1000
SALT LAKE CITY UT 84101-0000

LMHS
80 WASHINGTON ST. BUILDING S
NORWELL MA 02061-0000

IT&E
PO BOX 24881
BARRIGADA GU 96921-0000

ISLAND CHOICE, INC.
190 W. MARINE CROPS, DRIVE STE 6
DEDEO GU 96929-0000

GUAM WATERWORKS AUTHORITY
PO BOX 3010
BARRIGADA GU 96913-0000

GUAM POWER AUTHORITY
PO BOX 2977
HAGATNA GU 96932-0000

FINRA
PO BOX 418911
BOSTON MA 02241-8911

CANADA
OPENTEXT INC.
275 FRANK TOMPA DR.
WATERLOO ON N2L0A1

FINRA: ATTN CORPORATE SERVICE COMPANY
RA
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808-1674

GUAM DEPARTMENT OF REVENUE AND TAX
PO BOX 23607
BARRIGADA GU 96921-3607

JOYCE C.H. TANG
CIVILLE & TANG, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

ANDREW C. HELMAN (admitted *pro hac vice*)
DENTONS BINGHAM GREENEBAUM LLP
One City Center, Suite 11100
Portland, Maine 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

*Counsel to Asia Pacific Financial Management Group, Inc.*

Dated: September 15, 2023

---

JOYCE C.H. TANG
CIVILLE & TANG, PLLC
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
EMAIL: jtang@civilletang.com

ANDREW C. HELMAN (admitted *pro hac vice*)
DENTONS BINGHAM GREENEBAUM LLP
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL: andrew.helman@dentons.com

*Counsel for the Debtor*

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM
BANKRUPTCY DIVISION

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.,[1] | Chapter 11 |
| Debtor. | FIRST AMENDED PLAN OF REORGANIZATION OF ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC. DATED SEPTEMBER 15, 2023, WITH INCORPORATED ADEQUATE DISCLOSURES UNDER SECTION 1190(1) OF THE BANKRUPTCY CODE. |

Pursuant to section 1189 of the Bankruptcy Code, Asia Pacific Financial Management Group, Inc., the debtor in the above-captioned chapter 11 case, hereby submits this *First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated September 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code*, to all of the known creditors and holders of interests of Asia Pacific.[2] Asia Pacific seeks confirmation of the Plan pursuant to section 1191(a) of the Bankruptcy Code, or, if necessary, under section 1191(b) of the Bankruptcy Code. Asia Pacific also contends that the Plan provides adequate disclosures in accordance with section 1190(1) of the Bankruptcy Code and that no separate disclosure statement is required.

---

[1] The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910.

[2] Capitalized terms not otherwise defined in the body of the Plan shall have the meaning given to them in Article I of the Plan.

22898651.v7

2

## TABLE OF CONTENTS

ARTICLE I:       Definitions.................................................................................................. 5

ARTICLE II:      Background and Disclosures under Section 1190 of the Bankruptcy
                 Code, and Additional Information Regarding Confirmation......................... 10

ARTICLE III:     Classification of Claims and Interests.......................................................... 17

ARTICLE IV:      Treatment of Claims and Interests................................................................ 17

ARTICLE V:       Allowance and Disallowance of Claims........................................................ 19

ARTICLE VI:      Interests to be Retained and Rights to be Exercised ..................................... 20

ARTICLE VII:     Means of Financing the Plan; Plan Distributions; Remedies; and Other
                 Relief Afforded under the Plan .................................................................... 20

ARTICLE VIII:    Approval of Settlement and Settlement Agreement ....................................... 23

ARTICLE IX:      Executory Contracts and Unexpired Leases .................................................. 26

ARTICLE X:       Effect of Confirmation, Discharge and Injunction......................................... 26

ARTICLE XI:      Retention of Jurisdiction.............................................................................. 28

ARTICLE XII:     General Provisions ...................................................................................... 29

ARTICLE XIII:    Modification of the Plan .............................................................................. 30

ARTICLE XIV:     Conditions Precedent to Effective Date ........................................................ 31

3

22898651.v7

---

**EXHIBITS**[3]

| Exhibit Number | Description |
|---|---|
| 1 | Pro Forma |
| 2 | Liquidation Analysis |
| 3 | Cash Projection |
| 4 | Rejected Contract Schedule |

---

[3]  Asia Pacific reserves the right to amend these exhibits.

22898651.v7

4

# ARTICLE I

## Definitions

The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1 "Administrative Claim" shall mean an expense of the kind described in section 503(b) of the Bankruptcy Code.

1.2 "Allowed" shall mean, with respect to any Claim, the status of the Claim, such that: (a) upon expiration of the Claims Objection Deadline, the Claim, whether filed or scheduled, has not been disputed, or (b) with respect to Disputed Claims, a Final Order allowing the Claim has been entered or Asia Pacific and the Claimant have reached agreement on the amount of the Claim.

1.3 "Allowed Amount" of a Claim shall mean, for the purposes of the Plan: (a) the amount of the Claim listed in Asia Pacific's Schedules if: (i) the Claim is not scheduled as disputed, contingent, or unliquidated by Asia Pacific, (ii) no objection to that amount is filed by the Claims Objection Deadline, and (iii) the Holder of the Claim has not timely filed a properly prepared proof of claim in an amount different from that scheduled by Asia Pacific; (b) the amount set forth by the Holder of a Claim in a timely filed and properly prepared proof of Claim if that amount differs from the amount scheduled by Asia Pacific and no objection to the amount stated in the proof of claim is filed by the Claims Objection Deadline; or (c) the amount of such Claim established by a Final Order of the Bankruptcy Court if: (i) such amount set forth is contingent or disputed, (ii) an objection to that amount is filed on or before the Claims Objection Deadline, or (iii) if the amount set forth by the Holder of such Claim in a timely filed, properly prepared proof of claim differs from the amount scheduled by Asia Pacific and an objection is filed to the proof of claim prior to the Claims Objection Deadline.

1.4 "Asia Pacific" shall mean Asia Pacific Financial Management Group, Inc., including as a debtor and debtor in possession in the Chapter 11 Case, and its capacity as a reorganized debtor after the Confirmation Date.

1.5 "Assets" shall mean all property of the Estate under section 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate. In the event that the Plan is confirmed under section 1129(b) of the Bankruptcy Code, Assets shall include the property of Asia Pacific to the extent provided for by section 1186 of the Bankruptcy Code.

1.6 "Bankruptcy Code" shall mean title 11 of the United States Code, as in effect with respect to the Chapter 11 Case on the Petition Date. All Bankruptcy Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.7 "Cash" shall mean payment, including by check, issued by or on behalf of Asia Pacific with respect to any payment of funds required to be made pursuant to the Plan.

1.8 "Causes of Action" shall mean: (a) Chapter 5 Claims; (b) any other causes of action of the Estate as of the Effective Date; (c) in the event the Plan is confirmed under section 1191(b) of the Bankruptcy Code, any other causes of action of Asia Pacific; and (d) any and all proceeds, whether in the form of cash or otherwise, from any recoveries on or settlements of such causes of action.

1.9 "Chapter 5 Claims" shall mean any and all causes of action belonging to Asia Pacific or the Estate, whether arising before or after the Petition Date and whether arising under state or federal law, constituting causes of action under section 544 to 553 of the Bankruptcy Code (including, but not limited to, any state fraudulent conveyance statute by virtue of section 544 of the Bankruptcy Code).

1.10 "Chapter 11 Case" shall mean Asia Pacific's chapter 11 case pending as Case No. 23-00005 before the Bankruptcy Division of the District Court of Guam.

1.11 "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.12 "Claimant" shall mean any individual or entity making or holding a Claim against Asia Pacific of the Estate.

1.13 "Claims Objection Deadline" shall mean, with respect to Claims not subject to the Post-Petition Bar Date, the date that is 30 calendar days after the Confirmation Date. The failure to object to a Claim by the Claims Objection Deadline shall not constitute a waiver, acceptance, or release of any Claim or Cause of Action against a creditor, including any Cause of Action based on a creditor receiving preferential or fraudulent transfers under sections 547 or 548 of the Bankruptcy Code. For the avoidance of doubt, as to

1.14 "Classified Claims" shall mean these Claims classified in Article III of this Plan and not described in section 3.1 of Article III.

1.15 "Confirmation Date" shall mean the date on which the Confirmation Order becomes a Final Order in the Chapter 11 Case.

1.16 "Confirmation Hearing" shall mean the hearing held by the Court to consider confirmation of the Plan, as the same may be amended, and as contemplated by section 1128(a) of the Bankruptcy Code.

1.17 "Confirmation Order" shall mean the Final Order entered by the Court confirming the Plan.

1.18 "Contracts" shall mean all of Asia Pacific's executory contracts and unexpired leases, within the meaning of section 365 of the Bankruptcy Code, and as reflected and identified in the Contract Schedule.

1.19 "Court" shall mean the Bankruptcy Division of the District Court of Guam.

1.20 "Cure Amount Claims" shall mean the amount required to be paid to cure a Contract pursuant to section 365 of the Bankruptcy Code, as reflected in the column labeled "Cure Amount Claim" on the Contract Schedule.

1.21 "Disallowed" when used with respect to a Claim shall mean a Claim that, pursuant to a Final Order, is not Allowed.

1.22 "Disputed Claim" shall mean any Claim listed as disputed in Asia Pacific's bankruptcy Schedules filed in this Chapter 11 Case or as to which an objection has been timely filed by the Claims Objection Deadline.

1.23 "Effective Date" shall mean the calendar day that is 14 days after entry of the Confirmation Order, which date is December [*], 2023, provided that the conditions precedent to the Effective Date in Article XIII of the Plan shall have been met or waived by Asia Pacific on or before such date.

1.24 "Employee Benefit Plans and Programs" shall mean all health, welfare, compensation, and retirement (including any cash balance or pension) plan that Asia Pacific maintains or is the administrator with respect to employees.

1.25 "Encumbrances" shall mean all Liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.26 "Estate" shall mean the bankruptcy estate of Asia Pacific, as it was created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, including as such Estate may be continued or preserved under the Plan.

1.27 "Final Order" shall mean an order of a court of competent jurisdiction with respect to which all periods for taking appeal from such order or any order of an appellate court relating to such order have expired with no appeal pending and no stay of such order being then in effect.

1.28 "Bar Date" shall mean the deadline for filing proofs of claim for all creditors, including other governmental units. Such date was July 5, 2023.

1.29 "Holder" shall mean a creditor holding, including by assignment, a Claim or Interest against Asia Pacific and/or the Estate.

1.30 "Interests" shall mean the equity or ownership interests of any person or entity in Asia Pacific.

1.31 "IRS" shall mean the Internal Revenue Service.

1.32 "Lien" shall mean any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge, or assessment, of every kind, nature, and description, against, in or upon Assets, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown, and, without limiting the foregoing, shall include the meaning set forth in section 101(37) of the Bankruptcy Code.

1.33 "Liquidation Analysis" shall mean the hypothetical liquidation analysis required by section 1190(1)(B) of the Bankruptcy Code.

1.34 "Notice of the Effective Date" shall mean notice filed with the Court that the Effective Date has occurred.

1.35 "Petition Date" shall mean April 26, 2023.

1.36 "Phillips Claim" shall mean the Claim filed with the Court on June 23, 2023 at Proof of Claim 1-1 in the amount of $4,316,108.11.

1.37 "Plan" shall mean this First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated September 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code, as it may be amended or modified from time to time, together with all exhibits, schedules, and other attachments thereto, and including the Confirmation Order, as the same may be amended or modified from time to time, all of which are incorporated herein by reference.

1.38 "Post-Petition Bar Date" shall mean the date that is 60 days after the Effective Date and shall be the deadline to file final applications for Professional Fees and Expenses, Subchapter V fees and expenses, any other Administrative Claims, and Rejection Damages Claims, except as may otherwise be provided in this Plan.

1.39 "Priority Claim" shall mean an Unsecured Claim, other than an Administrative Claim, granted a priority under section 507 of the Bankruptcy Code.

1.40 "Pro Rata" means proportionate, so that, for example, the ratio of the consideration distributed on account of an Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such class of Claims to the amount of all Allowed Claims in the class.

1.41 "Professional Fees and Expenses" shall mean all Allowed Administrative Claims of any professionals retained in the Chapter 11 Case under section 327 of the Bankruptcy Code for fees and expenses incurred on or before the Confirmation Date.

1.42 "Projected Net Disposable Income" shall mean, in accordance with section 1191(d) of the Bankruptcy Code, the income that is received by Asia Pacific and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of Asia Pacific, which such necessary payments shall include, but not be limited to, payments to the Holders of Allowed Administrative Claims in accordance with this Plan, as well as maintaining appropriate cash reserves, all as reflected in the Pro Forma.

1.43 "Rejection Damages Claim" shall mean any timely filed Claim for amounts due as a result of the rejection by Asia Pacific of any Contract under section 365 of the Bankruptcy Code or amounts designated under the column entitled "Rejection Damages Claim" on the Contract Schedule.

1.44 "Secured Claim" shall mean a Claim arising on or before the Petition Date to the extent such Claim is secured by a valid and perfected Lien on the Assets, which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code.

1.45 "Subchapter V Trustee" shall mean Kathlyn Selleck, in her capacity the Subchapter V Trustee in the Chapter 11 Case pursuant to section 1183 of the Bankruptcy Code.

1.46 "Subchapter V Trustee Claim" shall mean the Allowed Claim of the Subchapter V Trustee for compensation.

1.47 "Substantial Consummation" shall mean (i) the Effective Date has occurred, and (ii) Asia Pacific has begun making the distributions required under the Plan as of the Effective Date (excluding Allowed Professional Fees and Expenses and the Allowed Subchapter V Trustee Claim).

1.48 "Unclassified Claims" shall mean Claims described in section 3.1 of Article III of the Plan and which are not classified in Article III.

1.49 "Unsecured Claim" shall mean a Claim that is: (a) not an Unclassified Claim; and (b) not secured by a valid Lien on Assets of Asia Pacific which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code, and shall include deficiency Claims related to Holders of Allowed Secured Claims.

## ARTICLE II

**Background and Disclosures under Section 1190 of the Bankruptcy Code, and Additional Information Regarding Confirmation**

2.1 History of Asia Pacific's Business Operations, as Required by Section 1190(1)(A) of the Bankruptcy Code

Asia Pacific was formed in 1993 as a corporation organized under the laws of the Territory of Guam. Asia Pacific is headquartered in Guam. Asia Pacific's ownership is as of the Petition Date was as follows: Sandra McKeever (CEO) – 83.75%; Melinda Sulit (CFO) – 10.00%; and Jonathan Ulloa (Financial Advisor) – 6.25%. Asia Pacific provides professional investment advisory services to help businesses and individuals engage in financial planning to meet their respective goals. More specifically, Asia Pacific serves the following constituencies:

• Business Clients: The Debtor assists businesses with strategies for asset protection, cash management, employee retention, adequacy of insurance, adequacy of financing, and retirement and succession planning.

• Individuals: The Debtor provides individuals advisory services that include planning for retirement, college expenses, and for other specialized savings and investment goals. The Debtor also assists retirees preserve wealth to create sustainable income throughout retirement.

• Multigenerational Families: The Debtor assists families in planning for the growth, preservation, and transfer of wealth.

• Widows and Widowers: The Debtor advises individuals regarding life insurance proceeds, Social Security, and retitling financial accounts following the death of a spouse.

As of the Petition Date, Asia Pacific had approximately 2,400 clients (the "Clients"), predominantly residents of Guam and Micronesia, with about $206 million in assets under management ("AUM").

As of the Petition Date, Asia Pacific was and is registered and licensed with the Securities and Exchange Commission (the "SEC") as both a registered investment advisor and a broker-dealer. By virtue of Asia Pacific's status as a broker-dealer, Asia Pacific was and is also a member of the Financial Industry Regulatory Authority, Inc. ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). While there are some differences in the scope of services that investment advisors and broker-dealers provide, both are able to serve as wealth and financial planning advisors, though the manner in which they are paid and duties to investors are different. Investment advisors are typically paid a fee based on a percentage of total assets under management, whereas broker-dealers are typically paid a commission on a per-trade basis. Investment advisors typically have fiduciary duties to clients and do not have to be members of

FINRA, whereas broker-dealers do not have fiduciary duties, are required to engage in a suitability analysis for each proposed transaction, and are members of FINRA.

Asia Pacific maintains licensure as an investment advisor and broker-dealer, though all or virtually all of Asia Pacific's services are in its capacity as an investment advisor. Asia Pacific does not have custody of Client accounts, nor is property of Clients entrusted to Asia Pacific for the purpose of effecting securities transactions. **As a result, this Plan does not alter or change the rights of any Clients in and to their own funds or property and such funds and property shall not be used for debt repayment under this plan.** Asia Pacific is generally paid based on a percentage of assets under management.

Asia Pacific obtains third-party custody services from RBC Clearing & Custody, a division of RBC Capital Markets, LLC ("**RBC**"), and other firms. Historically, Asia Pacific has used RBC's broker-dealer platform, with RBC acting as custodian and clearing broker executing any trades. This required maintaining a broker-dealer license even though Asia Pacific's services are all or nearly all as an investment advisor and clients do not entrust property to Asia Pacific for the purpose of effecting securities transactions. Asia Pacific had initially selected the broker-dealer platform on the belief that it provided access to a broader range of potential services or transactions that Asia Pacific could offer to its Clients. At this point, Asia Pacific is in the process of transitioning its Clients from RBC's broker-dealer platform to RBC's investment advisor platform, which will not require maintaining a broker-dealer license but will still permit Asia Pacific to provide advisory services. As of the filing of this Plan, a majority of Asia Pacific's Clients have made this transition and completed necessary documentation. Asia Pacific intends to continue this transition for the balance of its Clients in the ordinary course of business post-petition. As previously disclosed in the Chapter 11 Case, Asia Pacific further intends to file a Form BDW with appropriate authorities to withdraw its broker-dealer license in the ordinary course of business before confirmation of this Plan. In addition, Asia Pacific also works with Clients who maintain their custodial accounts with other custodial firms, including SEI Investments, MG Trust, Benefits Trust, Lincoln Financial, ASC Trust, and Interactive Brokers.

**2.2    Summary of Largest Prepetition Claims and Circumstances Leading Up to the Chapter 11 Filing, and the Chapter 11 Case**

Prior to the Petition Date, Asia Pacific engaged in transactions with parties that resulted in Asia Pacific incurring certain debt obligations. The largest of those prepetition Claims and Liens is held by Michael Phillips ("Mr. Phillips"). Accordingly, Asia Pacific filed its bankruptcy petition in order to reorganize its business and is proposing a debt-repayment plan in accordance with the provisions of subchapter V of chapter 11 of the Bankruptcy Code. Asia Pacific determined that it needed to take this step following assertion of claims by a former client, Mr. Phillips, that resulted in an arbitration award (the "**Award**") from a FINRA arbitration panel totaling approximately $3.041 million which Mr. Phillips asserts is in the amount of approximately $4.3 million when interest is added. *See* Proof of Claim 1-1. The claims arose out of a client relationship that existed between Mr. Phillips and Asia Pacific from 2009 to 2020, when Mr. Phillips discontinued his business relationship with Asia Pacific. The events Mr. Phillips complained of pertain to an individual who stopped providing services to clients of Asia Pacific in March 2020 and who is no longer located in Guam.

---

Upon commencement of this Chapter 11 Case, Asia Pacific maintained that it is not liable to Mr. Phillips by virtue of the Award and Mr. Phillips allegations related thereto. To that end, Asia Pacific filed a motion to vacate (the "**Motion to Vacate**") in the Superior Court of Guam prior to commencing the Chapter 11 Case. However, due to the risks and uncertainty involved in litigation and the existential threat to Asia Pacific's business presented by the prospect of a judgment entered against Asia Pacific based on the Award, Asia Pacific determined that proceeding with the Chapter 11 Case was the most appropriate course of action to stabilize its business and ensure that it continued as a going concern.

During the Chapter 11 Case, Mr. Phillips filed a motion to, among other things, convert the Chapter 11 Case to a case under chapter 7 or to dismiss this Chapter 11 Case [ECF 85] (the "**Motion to Dismiss**"). Asia Pacific disputes the allegations made in the Motion to Dismiss, and does not agree that dismissal, conversion, or any other relief requested in the Motion to Dismiss is appropriate or in the best interest of creditors. Mr. Phillips also asserted in multiple filings that any Claim he holds in the Chapter 11 Case should be excepted from discharge under section 523 of the Bankruptcy Code. Asia Pacific likewise disputes this claim for a variety of reasons, including because courts are nearly unanimous that the section 523(a) exceptions to discharge do not apply to corporate debtors, including corporate debtors who have elected to proceed under subchapter V.[4]

Based on the allegations made by Mr. Phillips, the risks associated with them, and the costs attendant with fully litigating such contested matters, Asia Pacific and Mr. Phillips agreed to enter into mediation during the Chapter 11 Case in an effort to resolve the disputes between them in a cost effective manner that would be beneficial to and in the best interest of creditors and the estate. This mediation was conducted by the Honorable Daniel P. Collins, a bankruptcy judge for the United States Bankruptcy Court for the District of Arizona, and began on July 29, 2023 (the "**Mediation**"). After conducting three Mediation sessions, Asia Pacific and Mr. Phillips agreed to a global settlement of all disputes between them on August 15, 2023 (the "**Settlement**"). The terms of the Settlement, as read into the record of the Chapter 11 Case, are sealed by order of the Court [D.E. 132]. The Settlement is further memorialized in an agreement between Asia Pacific and Mr. Phillips (the "**Settlement Agreement**"). Consistent with the Court's order sealing the settlement proceedings and the desires of Asia Pacific and Mr. Phillips, all terms of the Settlement and Settlement Agreement, except for terms related to payments under the Settlement, are not incorporated into this Plan. Asia Pacific intends that the Settlement Agreement shall be filed with the Court under seal.

---

[4]    See, e.g., Gaske v. Satellite Rests. Crabcake Factor USA (In re Satellite Rests. Inc. Crabcake Factory USA), 626 B.R. 871 (Bankr. D. Md. 2021); Catt v. Rtech Fabrications, LLC (In re Rtech Fabrications, LLC), 635 B.R. 559 (Bankr. D. Idaho 2021); Jennings v. Lapeer Aviation, Inc. (In re Lapeer Aviation, Inc.), No. 21-31500, Adv. No. 22-3002, 2022 WL 1110072 (Bankr. E.D. Mich. Apr. 13, 2022); Avion Funding, LLC v. GFS Indus., LLC (In re GFS Indus., LLC), 647 B.R. 337 (Bankr. W.D. Tex. 2022); Kidwell, et al. v. Hall (In re Hall), No. 22-01326, Adv. No. 22-00062, 2023 WL 2927164 (Bankr. M.D. Fla. Apr. 13, 2023); BenShot, LLC v. 2 Monkey Trading, LLC (In re 2 Monkey Trading, LLC), No. 22-04099, Adv. No. 23-00007, 2023 WL 3145124 (Bankr. M.D. Fla. Apr. 28, 2023).[4] Shortly before the filing of this Plan, the Bankruptcy Appellate Panel for the Ninth Circuit issued a decision consistent with these authorities and held that the exceptions to discharge do not apply to corporate debtors proceeding under subchapter V. Lafferty v. Off-Spec Solutions et al. (In re Off-Spec Solutions, LLC), BAP No. ID-23-1020-GCB (9th Cir. B.A.P. Jul. 6, 2023).

22898651.v7

22898651.v7

## 2.3    Brief Summary of Asia Pacific's Reorganization Summary

As a small business debtor proceeding under the Small Business Reorganization Act, Asia Pacific seeks to reorganize through this Plan by restructuring its debt obligations so that Asia Pacific will achieve sufficient cash flow from business operations and other available funds to satisfy operational expenses and payment obligations under the Plan. Asia Pacific has prepared projections regarding post-confirmation revenue and expenses for a 36-month time period attached as **Exhibit 1** (defined above as the "Pro Forma"). The Pro Forma contains the Asia Pacific's Projected Disposable Income. Asia Pacific has also attached its Liquidation Analysis as **Exhibit 2** containing the Debtor's anticipated liquidation value (the "Liquidation Value"). As reflected in the Pro Forma and the Liquidation Analysis, the Liquidation Value exceeds the Projected Disposable Income.

Pursuant to the Settlement, Asia Pacific has agreed to pay Mr. Phillips $900,000.00 (the "Settlement Amount") in settlement of the Phillips Claim and related disputes. The Settlement Amount will be paid to Mr. Phillips in two lump sum payments: (a) $800,000.00, to be paid on the later date of the Effective Date of this Plan or November 1, 2023 (the "First Settlement Payment"); and (b) $100,000.00, to be paid on or before December 31, 2024 (the "Second Settlement Payment"). Asia Pacific proposes to pay the First Settlement Payment as part of the payments to be made to Class One Claimants (as further described herein) pursuant to this Plan. The Settlement includes certain releases of Claims between Asia Pacific and Mr. Phillips, including a release by Mr. Phillips of any Claims against Asia Pacific, including Asia Pacific's principals, employees, and shareholders. Asia Pacific makes not admission of liability or wrongdoing in connection with the Settlement. Further information regarding the Settlement and approval of the Settlement and Settlement Agreement upon confirmation of this Plan is included herein, *infra* Art. VIII.

If the Holders of Claims accept this Plan in accordance with section 1126 of the Bankruptcy Code, then all Allowed Unsecured Claims will share ratably in a payment of $812,373.10, and the Holders of Allowed Claims of a higher priority will be paid in full in Cash. If this Plan is not accepted in accordance with section 1126 of the Bankruptcy Code, Asia Pacific will make distributions of Cash to the Holders of all Allowed Claims in an amount not less than what such party would receive in a hypothetical liquidation.

Asia Pacific believes that the proposed amount to be paid on account of Allowed Unsecured Claims represents a significant improvement in recovery for Claimants with Unsecured Claims. In the previous version of the Plan filed by Asia Pacific (Docket No. 120] Allowed Unsecured Claims were proposed to receive a payment equal to Pro Rata distribution of Asia Pacific's Projected Disposable Income or Liquidation Value. Under such a Plan, Claimants would have received a distribution equal to approximately 0.82% – 2.55% of their Unsecured Claims. Under the present Plan, Asia Pacific anticipates that Claimants with unsecured Claims will receive approximately 18.53% of their Unsecured Claims.

As discussed below, Asia Pacific's Cash Projection (**Exhibit 3**) demonstrates that Asia Pacific has adequate financial resources to make such payments when and as required. This

---

includes by virtue of a shareholder loan to be used to provide sufficient liquidity in the month that plan payments will be made.

## 2.4    Liquidation Analysis, as Required by Section 1190(1)(B) of the Bankruptcy Code

The alternative to the Plan is the liquidation of the Assets in a proceeding under chapter 7 of the Bankruptcy Code and the distribution of the net proceeds thereof to administrative, priority, and unsecured creditors, in the order of priority and manner provided under the Bankruptcy Code. In general, this would require that administrative expense creditors, including administrative expense creditors in the Chapter 11 Case and in the chapter 7 case (with the latter having priority) be paid first, then priority creditors, with the balance, if any, distributed to unsecured creditors on a Pro Rata basis.

Asia Pacific's Assets include certain personal property, as identified in Asia Pacific's Schedules and Statement of Financial Affairs, including Cash, investments, and accounts receivable. Asia Pacific does not own any real property. Although it is impossible to determine the exact liquidation value of the Assets, for purposes of this Liquidation Analysis, Asia Pacific estimates that a liquidation of all Assets (excluding Causes of Action and Chapter 5 Claims) would produce values set forth in the Liquidation Analysis.

By way of additional information, Asia Pacific states as follows:

• **Client List**: Asia Pacific does not believe the Client List has any value in a hypothetical liquidation because (A) there is no contractual requirement that any Client continue to do business with Asia Pacific; (B) the good will value of Asia Pacific and individual investment advisor representatives is integral to the relationship that Asia Pacific has with each Client and would not transfer with a sale of the Client List; and (C) to the extent that there are non-competition provisions in contracts with Asia Pacific's registered representative investment advisors, such provisions are generally unenforceable under Guam law because they are located in personal services contracts. Without waiving any rights, the Liquidation Analysis contains a range of value for the Client List reflecting a maximum potential liquidation value.

• **Chapter 5 Claims**: No recovery or related litigation costs have been attributed to any potential Chapter 5 Claims due to potential defenses to such actions, the costs of such litigation, the lack of any sufficient source of post-conversion funding for speculative litigation, uncertainty about the outcome of such litigation, and anticipated disputes in these matters.[5] This could make any recovery worse in total due to higher professional fees to redistribute amongst creditors.

• **Cash**: Asia Pacific's estimate of cash includes all sources of funds known to be available to it.

---

5    For example, the majority of potential Chapter 5 Claims are payments made to investment advisor representatives providing services to Asia Pacific. Asia Pacific believes such payments were generally made when and as required under such contracts and that reasonably equivalent value was provided for such services.

• **Distribution of Net Proceeds:** The Liquidation Analysis assumes that gross proceeds of Assets would be distributed in accordance with section 726 of the Bankruptcy Code in accordance with the mandatory order of priorities and with appropriate fees and expenses to wind down Asia Pacific's business, as indicated in the Liquidation Analysis.

The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code because any Holder of an Allowed Claim who has not accepted the Plan will receive value, as of the Effective Date, that is at least as much as the Holder of such Allowed Claim would receive in a hypothetical liquidation on the same date.

2.5    Feasibility Analysis, as Required by Section 1190(1)(C) of the Bankruptcy Code

Section 1190(1)(C) of the Bankruptcy Code requires Asia Pacific to provide "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." Further, section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors.

**Exhibit 3** contains Asia Pacific's Cash Projections demonstrating that the Plan is feasible based on projected revenue, operating expenses, other necessary and standard expenses (including those permissible under section 1191(d) of the Bankruptcy Code), and Asia Pacific's restructured payment obligations under the Plan. The Cash Projections demonstrate that Asia Pacific has sufficient liquidity to fund obligations under this Plan when and as proposed.

In addition, the Pro Forma (**Exhibit 1**) constitutes Asia Pacific's projections based on historic and anticipated future operations, including after consultation with Asia Pacific's advisors, and Asia Pacific has attempted to provide as accurate information as possible. Premised on the Pro Forma, the Plan is not likely to be followed by the liquidation of the Assets or the need for further financial reorganization, and the reorganized entity is able and likely to make the payments required by this Plan.

2.6    Disclosure regarding Status of Claim Objections

Asia Pacific is continuing to evaluate potential objections to Claims consistent with the deadlines and requirements in this Plan. Asia Pacific is also considering the cost to the Estate of prosecuting an objection balanced against the benefit if such objection is sustained. Asia Pacific reserves the right to initiate any objection to a Claim in the future in accordance with the provisions of this Plan.

2.7    Voting to Accept or Reject the Plan

If you are entitled to vote, enclosed with this Plan is a ballot for your use in voting to accept or reject the Plan. Asia Pacific encourages you to vote to accept the Plan. In order for your vote

to count, your properly completed and executed ballot must be received no later than **11:59 p.m. on November 3, 2023**, at the office of Asia Pacific's local counsel in Guam:

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

Ballots may be sent by any method, including e-mail, that causes them to be timely delivered.

The Court shall conduct the Confirmation Hearing regarding confirmation of the Plan on **November 21, 2023, at 8:00 a.m. (CHST), at 520 W. Soledad Avenue, 4th Floor, Hagåtña, Guam**, or as the Court directs and as will be indicated in the applicable notice of hearing that you will receive. The Confirmation Hearing may be continued by the Court from time to time, including on the record in open court. All objections to the Plan must be Filed no later than **November 3, 2023** (the "Confirmation Objection Deadline").

EACH CREDITOR SHOULD NOTE THAT IF ANY CLASS OF CLAIMS SHOULD FAIL TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, THE BANKRUPTCY COURT MAY NONETHELESS ENTER AN ORDER CONFIRMING THE PLAN. THE REQUIREMENTS FOR OBTAINING SUCH AN ORDER ALLOW THE BANKRUPTCY COURT TO ENTER SUCH AN ORDER IF, AFTER NOTICE AND A HEARING, THE BANKRUPTCY COURT FINDS THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO ANY IMPAIRED CLASS OF CLAIMS OR INTERESTS WHICH HAS NOT ACCEPTED THE PLAN. IF ANY CLASS OF CLAIMS FAILS TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, ASIA PACIFIC SHALL SEEK SUCH AN ORDER CONFIRMING THE PLAN NOTWITHSTANDING THE FAILURE OF AN IMPAIRED CLASS TO ACCEPT THE PLAN.

2.8    Tax Consequences of the Plan

The federal, state, and local tax consequences of the Plan may be complex and, in some cases, uncertain. Such consequences may also vary, based upon the individual circumstances of each Holder of a Claim or interest. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN. THIS PLAN MAY NOT BE RELIED UPON FOR, AND SHALL NOT BE DEEMED TO CONSTITUTE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN.

Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any distributions under the Plan.

# ARTICLE III

## Classification of Claims and Interests

Each Holder of: (a) a Claim against Asia Pacific and/or the Estate of whatever nature, whether or not scheduled and whether unliquidated, absolute, or contingent, including all Claims arising from the rejection of leases and Executory Contracts; or (b) any Interests in Asia Pacific, shall be bound by the provisions of the Plan, and all such Claims and Interests are hereby classified as follows:

3.1 **Unclassified Claims** shall consist of: (A) all Allowed Administrative Claims, including, without limitation, Allowed Professional Fees and Expenses; and (B) the Allowed Subchapter V Trustee Claim. Unclassified claims are not being restructured and, therefore, are not entitled to vote on the Plan. The Bankruptcy Code requires that, to the extent Allowed, such Unclassified Claims must be paid in full upon the date when a chapter 11 plan becomes effective, unless otherwise agreed.

3.2 **Class One** shall consist of all Allowed Unsecured Claims, including, without limitation, (i) the Phillips Claim, and any (ii) any Rejection Damages Claims. There are no known Rejection Damages Claims at this time.

3.3 **Class Two** shall consist of the Interests in Asia Pacific as of the Petition Date.

**If you believe that you hold a Claim or Interest that is not provided for property in this Plan, then you must timely file an Objection to confirmation or the Court may approve the proposed treatment of your Claim or Interest or lack of any treatment for such Claim or Interest.**

# ARTICLE IV

## Treatment of Claims and Interests

A. **Unclassified Claims**

4.1 **Unclassified Claims.** Unclassified Claims are unimpaired and subject to the following treatment.

(A) All Allowed Administrative Claims shall be paid in full in Cash, unless payment terms are subject to a separate Order of the Bankruptcy Court: (a) on the later of the Effective Date or within 14 calendar days after the date on which each such Claim is Allowed, or as soon as is reasonably practicable thereafter; or (b) in accordance with such terms as may be agreed upon by Asia Pacific and each such Holder of an Allowed Administrative Claim. Except as provided for in subparagraph (B) of this

---

Section 4.1, any party in interest asserting an Administrative Claim shall be required to file a motion or application seeking allowance of such Administrative Claim no later than the Post-Petition Bar Date, subject to the Bankruptcy Court's ordinary notice and objection procedures.

(B) This subparagraph provides the treatment for Holders of Claims for administrative costs or expenses that are incurred in the ordinary course of Asia Pacific's operations and that allowable under section 503(b) of the Bankruptcy Code (each an "Ordinary Course Administrative Claim"). The term Ordinary Course Administrative Claim does not include Claims relating to the costs of curing a default under an executory contract or unexpired lease to be assumed by Asia Pacific, Professional Fees and Expenses, or the Subchapter V Trustee Claim. Each Ordinary Course Administrative Claim, unless disputed by Asia Pacific, shall be satisfied by Asia Pacific under the terms and conditions of the particular transaction giving rise to that Ordinary Course Administrative Claim (including historic practice between the parties), without any further action by the Holder of such Ordinary Course Administrative Claim. Asia Pacific will include a list of all unpaid Ordinary Course Administrative Claims with its Notice of the Effective Date (as that term is defined in this Plan) and shall pay such Ordinary Course Administrative Claims in the ordinary course of business without the Holders of such Ordinary Course Administrative Claims being required to seek relief from the Court.

B. **Classified Claims**

The treatment of classified Claims under the Plan shall be as follows:

4.2 **Class One — Allowed Unsecured Claims. The Claims in Class One are impaired and entitled to vote on the Plan, pursuant to section 1126 of the Bankruptcy Code.** In full and final satisfaction of the Allowed Claims in Class One, Asia Pacific shall provide the following treatment to the Holders of each Allowed Claim in Class One: (A) in the event that Class One accepts the Plan, then Asia Pacific shall provide a single payment to each Holder of an Allowed Claim in Class One equal to a Pro Rata distribution of $812,373.10; or (B) in the event that Class One does not accept the Plan, then Asia Pacific shall pay the Holder of each Allowed Claim in Class One a Pro Rata distribution, not to exceed 100% of any Allowed Claim, of the net Liquidation Value set forth in the Liquidation Analysis. Except as otherwise agreed between Asia Pacific and the Holder of any Allowed Claim, payments shall be made as follows:

In the event that this Plan is accepted by Class One, then the payments provided for herein shall be made on the later date of the Effective Date or November 1, 2023; or

22989651.v7

22989651.v7

In the event that this Plan is not accepted by Class One, then the payments provided for herein shall be made within 14 days all Objections to Claims are resolved by entry of a Final Order or agreement of the applicable parties or as soon as is reasonably practicable thereafter.

The Class One Claims shall not accrue or be paid interest.

4.3  **Class Two – Interests in Asia Pacific.  The Interests in Class Two are unimpaired and are not entitled to vote on the Plan, pursuant to section 1126(f) of the Bankruptcy Code.**  The Holders of Interests in Class Two as of the Petition Date shall retain their Interests under this Plan.  All Interests shall be reinstated and, to the extent necessary, these certain Amended and Restated Articles of Incorporation of Asia Pacific Financial Management Group, Inc., (as the same may have been or may be amended from time to time) are assumed and reinstated.

## ARTICLE V

### Allowance and Disallowance of Claims

5.1  **Prepetition Claims and Amendments.**  Each Claim as to which a proof of claim is required to be filed on or before the Bar Date as to which a proof of claim was not filed on or before such Bar Date shall not under any circumstances become an Allowed Claim, except as may otherwise be provided for herein.  In no event shall the Allowed Amount of any Claim against Asia Pacific exceed the amount set forth in a proof of claim filed on or before the Bar Date, as each is applicable, unless the claimant, in its proof of claim, expressly reserved the right to amend such proof of claim.

5.2  **Objections.**  Any and all Claims (other than Claims subject to the Post-Petition Bar Date), which have **not** been scheduled by Asia Pacific as contingent, unliquidated, or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be Allowed in full, unless an objection to such Claim or interest is filed on or before the Claims Objection Deadline — provided, however, that the Phillips Claim shall be Allowed immediately upon the Effective Date.  Claims have been objected to and not Allowed shall have no right to vote with respect to acceptance or rejection of this Plan, except as otherwise ordered by the Court.

5.3  **Bar Date for Objection to Post-Petition Claims.**  Any Claim entitled to priority under section 507(a)(2) of the Bankruptcy Code arising before the Confirmation Date and still outstanding 60 days thereafter shall forever be barred, **unless** it is the subject of a motion or, in the case of a Claim for Professional Fees and Expenses, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-Petition Bar Date or such other date as is provided by order upon motion of Asia Pacific, **except** that Claims for Professional Fees and Expenses, as well as the Subchapter V Trustee Claim, shall be Allowed only by order of the Bankruptcy Court.

22898651.v7

## ARTICLE VI

### Interests to be Retained and Rights to be Exercised

6.1  **Preservation of All Causes of Action.**  Except as otherwise provided in the Plan, or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b), Asia Pacific and/or the Estate shall retain and preserve and shall be vested with, retain, and may enforce and prosecute any claims or Causes of Action that Asia Pacific and/or the Estate may have against any person or entity that constitute a Cause of Action.  Asia Pacific shall have standing as a representative of the Estate for the purposes of investigating, pursuing, prosecuting, settling, collecting, liquidating, and/or recovering any assets, claims or causes of action that constitute Causes of Action.

## ARTICLE VII

### Means of Financing the Plan; Plan Distributions; Remedies; and Other Relief Afforded under the Plan

7.1  **Financing of Plan Obligations.**  The payments required under the Plan shall be made primarily from the following sources:  (a) cash on hand; (b) the proceeds generated from the ongoing operation of Asia Pacific's businesses; (c) a shareholder loan, as reflected in the Cash Projections; (d) the proceeds of any Causes of Action and Claims which Asia Pacific and/or the Estate have brought and/or may elect to bring, including without limitation, any proceeds of such Causes of Action; and (e) the proceeds of the sale of the Assets.  Please see the Cash Projections for further information.

7.2  **Manner of Distribution.**  Any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, ACH, or by wire transfer (or by any manner agreed to between Asia Pacific and the Holder of an Allowed Claim) and shall be made in United States funds.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

7.3  **De Minimis Distributions.**  "De Minimis Distributions" shall refer to any distribution to a Holder of an Allowed Claim or Interest under the Plan of less than $100.00.  All De Minimis Distributions shall be held by Asia Pacific for the benefit of the Holders of Allowed Claims or Interests entitled to De Minimis Distributions.  If the aggregate amount of De Minimis Distributions exceeds $100.00, Asia Pacific shall distribute such De Minimis Distributions to such Holder of the Allowed Claim or Interest, and De Minimis Distributions shall be retained by Asia Pacific in the event that the De Minimis Distributions does not exceed $100.00.

7.4  **Delivery of Distributions.**  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by Asia Pacific: (i) at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holder if no motion

22898651.v7

requesting payment or proof of claim is filed or Asia Pacific has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to Asia Pacific after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by Asia Pacific if no proof of claim has been filed and Asia Pacific has not received a written notice of a change of address.

7.5 **Undeliverable Distributions.** If payment or distribution to any Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, Asia Pacific shall file with the Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of 90 days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the Holder shall be distributed to the Holders in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

7.6 **Time Bar to Cash Payments.** Checks issued by Asia Pacific in respect of distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within 120 days of the date of their issuance, and Asia Pacific shall have no obligation to reissue such check after the 120-day deadline.

7.7 **Plan Defaults and Remedies.** In the event any party claims that Asia Pacific is in default of any obligation of Asia Pacific under the terms of the Plan, including any claim that Asia Pacific failed to make any payment required by the terms of the Plan, such party shall provide Asia Pacific with written notice setting forth, in specific terms, the alleged default. A copy of such notice shall also be provided to Asia Pacific's counsel at jtang@civilleang.com and andrew.helman@dentons.com and sent by United States Mail, postage prepaid, as follows:

To Asia Pacific:

Sandra McKeever
Asia Pacific Financial Management Group, Inc.
145 Aspinall Avenue
Hagåtña, GU 96910

To Counsel:

Joyce C.H. Tang
Civille & Tang, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, GU 90910

and

Andrew C. Helman
Dentons Bingham Greenebaum, LLP
One City Center, Suite 11100
Portland, ME 04101

22989651.v7

All such notices shall be deemed received on the date sent by electronic mail, provided a return receipt is received, or three days after placed in the United States Mail. Asia Pacific shall have 15 business days from receipt of such notice to cure the default. In the event that Asia Pacific fails to cure the default within the 15-business-day period, the party claiming the default shall be free to pursue its remedies against Asia Pacific under applicable non-bankruptcy law, and Asia Pacific shall have the right to assert as a defense that no default occurred. No default shall be deemed to exist under the Plan until such time as: (i) the written notice has been provided as required herein, and (ii) Asia Pacific has failed to respond or cure the default as provided for by the terms herein.

7.8 **Setoffs and Recoupments.** Asia Pacific may, pursuant to sections 502(h), 553, and 558, or applicable non-bankruptcy law, but shall not be required to, offset against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever that Asia Pacific may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by Asia Pacific and/or the Estate of any right of offset or recoupment that Asia Pacific and/or the Estate may have against the Holder of such Claim, nor of any other claim or Cause of Action.

7.9 **Distributions in Satisfaction; Allocation.** Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and interests in Asia Pacific and/or the Estate and/or the Assets of Asia Pacific and/or the Estate, whether known or unknown, arising or existing prior to the Effective Date.

7.10 **Cancellation of Notes and Instruments.** As of the Effective Date, all notes, agreements, and securities evidencing Claims and Interests and the rights thereunder of the Holders thereof, shall, with respect to Asia Pacific, be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against Asia Pacific and/or the Estate, and such Liens shall be discharged automatically and without further action by Asia Pacific upon the Effective Date, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Plan, provided, however, that Asia Pacific shall be authorized, but not required, to file or record such notice(s) of discharge to reflect the relief in the Plan after the Effective Date. The foregoing sentence shall not apply to any Contract assumed pursuant to the Contracts Schedule nor to contravene any other express provision of the Plan.

7.11 **No Interest on Claims.** Unless otherwise specifically provided for in the Plan or the Confirmation Order, or a postpetition agreement in writing between Asia Pacific and a Holder of a Claim and approved by an order of the Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any claim which is not an Allowed Claim (a "Disputed Claim") in respect of the period from the Confirmation Date to the date the first distribution is made when and if such Disputed Claim becomes an Allowed Claim. No payments shall be made to the Holder of a Disputed Claim

22989651.v7

until such time as the Disputed Claim becomes an Allowed Claim, at which time Asia Pacific shall begin to make payments to the Holder of the Allowed Claim from the date the Disputed Claim is deemed an Allowed Claim in accordance with the terms of the Plan.

7.12 **Cram Down**. In the event that any class Allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the Plan, Asia Pacific shall move the Court to confirm the Plan pursuant to section 1191(b) of the Bankruptcy Code.

7.13 **Settlement of Claims**. Asia Pacific may enter into settlement agreements with one or more of the Holders of Claims against Asia Pacific or the Estate, provided that the settlement provides a net benefit to Asia Pacific, in its sole business judgment, and helps foster performance under the Plan. Asia Pacific shall be authorized to enter into the foregoing arrangements after the Effective Date without further order of the Court.

7.14 **Asia Pacific Shall Directly Make All Distributions Required Under the Plan.** Notwithstanding the provisions of section 1194(b) of the Bankruptcy Code, and in the absence of a subsequent order of the Court to the contrary, all payments provided for under the Plan and made hereunder shall be made by Asia Pacific and not by the Subchapter V Trustee. In the event that the Court orders Asia Pacific to make distributions through the Subchapter V Trustee, the Subchapter V Trustee's compensation and commission for effecting such distributions shall be determined by further order of the Court after an opportunity for notice and hearing to Asia Pacific and all other parties in interest.

7.15 **Internal Revenue Service**. As of the filing of the Plan, Asia Pacific is current with filing all payroll tax returns and payment of the required taxes under the payroll tax returns. Asia Pacific also has filed all federal income tax returns as of the filing of the Plan, subject to any applicable extensions. Following the Effective Date, Asia Pacific shall: (i) make all required federal tax deposits for all payroll tax returns as they come due under applicable non-bankruptcy law; and (ii) file all required federal tax returns on or before the date such returns are due under applicable non-bankruptcy law (including any extensions). In the event that Asia Pacific fails to comply with (i) and (ii) after the Effective Date, then Asia Pacific shall be obligated to rectify such discrepancies through applicable non-bankruptcy channels within the IRS, and Asia Pacific shall be subject to collection actions by the IRS pursuant to applicable non-bankruptcy. The foregoing obligations include any future tax liabilities that may arise after the Effective Date in the event of an examination or audit of a tax return. In the event that a tax liability arises after the Effective Date from an examination or audit of a tax return for any prepetition time period, then Asia Pacific shall address such audit or examination results through non-bankruptcy channels within the IRS.

**ARTICLE VIII**

**Approval of Settlement and Settlement Agreement**

8.1 **Settlement with Michael Phillips**. Pursuant to section 1123 and Bankruptcy Rule 9019, the Plan incorporates a Settlement of both the Phillips Claim against Asia Pacific and of Asia Pacific's Causes of Action against Michael Phillips to achieve an economic and efficient

resolution of this Chapter 11 Case. The Settlement, as read into the record of the Chapter 11 Case and as further memorialized in the Settlement Agreement, are further described in sections 2.2 and 2.3 of this Plan. The terms of the Settlement are sealed by order of the Court [D.E. 132], except for terms related to payment under this Plan. Pursuant to the Settlement, Asia Pacific has agreed to pay Mr. Phillips $900,000.00 (the "**Settlement Amount**") in settlement of the Phillips Claim and related disputes, including the "Released Claims" as defined in the Settlement Agreement.[6] Such "Released Claims" include (A) any and all claims that Mr. Phillips may have against Ms. Sandra McKeever and, among others, any current or former director, officer, or employee, or investment advisor of Asia Pacific and (B) and claims that Asia Pacific or Ms. McKeever may have against Mr. Phillips, his assigns, representatives, agents, heirs, and attorneys. The Settlement Amount will be paid to Mr. Phillips in two lump sum payments: (a) $800,000.00, to be paid on the later date of the Effective Date of this Plan or November 1, 2023;[7] and (b) $100,000.00, to be paid on or before December 31, 2024.

The entry of the Confirmation Order shall constitute the Court's approval under Bankruptcy Rule 9019 of the Settlement and Settlement Agreement between Asia Pacific and Mr. Phillips, including the granting of releases comprising the "Released Claims".[8] The Bankruptcy Court's findings shall constitute its determination that such compromise and settlement is in the best interests of Asia Pacific, its Estate, Asia Pacific's creditors, and other parties-in-interest, and is fair, equitable, and within the range of reasonableness.

8.2 **Approval of the Settlement Upon Confirmation of the Plan.** Settlements between a debtor in possession and a third party affecting the property of a debtor's estate are subject to court approval. *See Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F. 3d 1036, 1039 (9th Cir. 2016) ("[S]ettlement between an estate and its creditors must be approved by the bankruptcy court under Rule 9019."). Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019. "Compromises and settlements are favored in bankruptcy." 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2023) (citing *Marcakis v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993)).

To be approved, a proposed settlement must be the product of good faith negotiation between the settling parties, and must be "fair and equitable." *Martin v. Kelly (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). A court need not conduct "an exhaustive investigation or mini-trial on the merits of a settlement[.]" *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). "[T]he court's proper role is 'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *Id.* (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493, 496–97 (Bankr. S.D.N.Y. 1991)). In making these

---

6 A copy of the Settlement Agreement will be filed with the Court under seal. As noted, the Settlement has been ordered sealed by the Court [D.E. 132].

7 In the event that the Plan is not accepted and Asia Pacific will pay the Settlement Amount to Mr. Phillips on the terms set forth in the Settlement and Settlement Agreement.

8 There are no non-consensual third-party releases included in the Settlement. All releases are fully consensual among the affected parties.

## ARTICLE IX

## Executory Contracts and Unexpired Leases

9.1 **Assumption/Rejection of Certain Executory Contract and Unexpired Leases.** As of the Effective Date, all Contracts of Asia Pacific shall be assumed except for those set forth on the Rejected Contract Schedule attached as **Exhibit 3**, which shall be rejected. Asia Pacific has not identified any amounts comprising Cure Amount Claims and, therefore, no Cure Amount Claims are proposed or required to be paid for assumption to occur as of the Effective Date, except as otherwise ordered by the Bankruptcy Court.[9] Among the Contracts assumed are contracts with Asia Pacific's registered investment advisor representatives on terms consistent with Asia Pacific's longstanding pre-bankruptcy practices and Asia Pacific's investment advisory agreements with its Clients, to the extent not previously terminated in accordance with applicable non-bankruptcy law. Assumption of such contracts is necessary for continuing business operations.

9.2 **Rejection Damages Claims.** Any Claim for damages arising from the rejection or deemed rejection of any Contract must be filed on or before the Post-Petition Bar Date or by such other date and time specified by the Court. If no such Claim is timely filed, then such Claim shall be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be classified as Allowed Unsecured Claims under Class One of the Plan.

## ARTICLE X

## Effect of Confirmation, Discharge and Injunction

10.1 **Discharge.** If the Plan is confirmed under section 1119(a), on the Confirmation Date of this Plan, Asia Pacific shall be discharged from any debt, Claim, or other obligation that arose before entry of the Confirmation Order, subject to the occurrence of the Effective Date, to the extent specified in section 1141(d) of the Bankruptcy Code. If, however, the Plan is confirmed under section 1191(b), as soon as practicable after completion by Asia Pacific of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by Asia Pacific after the order for relief, the Court shall grant Asia Pacific a discharge of all debts and Claims provided in section 1141(d)(1)(A), and all other debts and Claims Allowed under section 503 of the Bankruptcy Code and provided for in this Plan, except any debt or Claim on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the Court.

10.2 **Injunction.** Except as otherwise expressly provided in this Plan, the documents executed pursuant to this Plan or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in Asia Pacific, the Assets, or the Estate that arose prior to the Confirmation Date (including, but not limited to, federal, state and other governmental units

determinations, a court must consider the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *A&C Props.*, 784 F.2d at 1381.

Section 1123(b) of the Bankruptcy Code sets out certain permissive provisions that may be included in a chapter 11 plan, including "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. §§ 1123(b)(3)(A) & (b)(6). Settlements under section 1123(b) are evaluated by the same standard applied by courts under Bankruptcy Rule 9019. *See, e.g., In re NII Holdings, Inc.*, 536 B.R. 61, 98 (Bankr. S.D.N.Y. 2015).

Asia Pacific submits that in this case the Settlement and Settlement Agreement meet the standard for approval under Bankruptcy Rule 9019 and should be approved. The Settlement was negotiated in good faith in the Mediation. The Settlement is fair and equitable, is in the best interest of creditors and the estate, and is a reasonable and economical resolution of the disputes between Asia Pacific and Mr. Phillips. In reaching the Settlement, Asia Pacific carefully evaluated its probability of success if its various disputes with Mr. Phillips were fully litigated to conclusion, as well as the likelihood that such litigation would come at the cost of considerable time, expense, and continued interruption to Asia Pacific and its business.

Although Asia Pacific believes that it has strong positions with respect to issues including the Motion to Vacate, Motion to Dismiss, dischargeability of Claims pursuant to section 523 of the Bankruptcy Code, and the Liquidation Value of its business, continued litigation of each these issues is inherently uncertain. If Asia Pacific is ultimately unsuccessful litigating one or more of these issues, then the result could have negative impacts on Asia Pacific's business and ability to continue serving its Clients. What is more, even a successful resolution of these issues would likely involve several months of protracted and contentious discovery, motions practice, and trial preparation, and would significantly increase Asia Pacific's legal and administrative costs in in connection with this Chapter 11 Case. Further, the Chapter 11 Case has placed a significant burden on Asia Pacific and its officers and employees, who have been required to commit substantial time and energy to various issues that have arisen during the Chapter 11 Case. Asia Pacific determined that reaching a consensual resolution of disputes with Mr. Phillips as contemplated by the Settlement would ultimately minimize costs and business interruptions by permitting Asia Pacific to emerge from bankruptcy more quickly than otherwise able.

Lastly, Asia Pacific believes that no creditors or other parties in interest will be harmed by the Settlement. Indeed, as a result of the Settlement, Holders of Unsecured Claims are set to receive distributions under the Plan that are larger than the distributions initially proposed by Asia Pacific. Accordingly, Asia Pacific believes that creditors and the estate will receive substantial benefits as a result of the Settlement, and requests that the Settlement and Settlement Agreement be approved pursuant to Bankruptcy Rule 9019 upon confirmation of the Plan.

---

[9] Asia Pacific reserves the right to amend the Rejected Contract Schedule according to section 1193 of the Bankruptcy Code.

22898651.v7

22898651.v7

or agents working on any of their behalf, and any federal or state official, employee, or other entity acting in an individual or official capacity on behalf of any federal, state or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against Asia Pacific or the Estate, or any Assets of Asia Pacific of the Estate; (ii) enforcing, attaching, executing, collecting, perfecting, or enforcing in any manner, directly or indirectly, any judgment, award, decree, or order against Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or Encumbrance of any kind against Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan, including the Settlement Agreement. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IX shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of Asia Pacific under this Plan. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against Asia Pacific or any Assets of Asia Pacific based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan.

10.3  **Term of Injunctions.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, shall remain in full force and effect until the entry of the Confirmation Order and occurrence of the Effective Date.

10.4  **Exculpation.**  Neither Asia Pacific, nor any of its respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in relation to the Chapter 11 Case, including in the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this section shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI

### Retention of Jurisdiction

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the Court shall retain jurisdiction with respect to the following matters after the Confirmation Date:

a)  To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or Interest, including, without limitation, any Administrative or Priority Claim;

b)  To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

c)  To liquidate damages in connection with any disputed, contingent, or unliquidated Claims;

d)  To adjudicate all Claims to, or ownership of any Assets of, Asia Pacific or in any proceeds thereof arising prior to and after the Effective Date;

e)  To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken prior to the Effective Date;

f)  To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

g)  To hear and determine any and all Causes of Action;

h)  To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses, the Subchapter V Trustee Claim, and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

i)  To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

j)  To adjudicate any motions to turn over Assets to Asia Pacific;

k)  To adjudicate any and all controversies and disputes arising under or in connection with, the Plan or any order or document entered or approved by the Court in connection with Asia Pacific, the Chapter 11 Case, or any controversy or dispute which may affect Asia Pacific's ability to implement or fund the Plan; and

To hear and determine such other matters as the Court in its reasonable discretion shall deem appropriate.

## ARTICLE XII

### General Provisions

12.1    **Construction**.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretation of this Plan.

12.2    **Severability**.  Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.3    **Controlling Documents**.  In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with the provisions of any other agreement, document, or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.

12.4    **Governing Law**.  Except to the extent that the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other controlling federal statutes or laws, are applicable, the rights and obligations arising under this Plan and any documents, instruments or agreements executed in connection with this Plan (except as otherwise indicated in such documents, instruments and agreements), shall be governed by, and construed and enforced in accordance with, the internal laws of the Territory of Guam.

12.5    **Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or interest in, Asia Pacific and its respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.  The rights, benefits, and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for Asia Pacific under chapters 7 or 11 of the Bankruptcy Code).

12.6    **The Assets**.  On the Effective Date, the Assets shall vest in Asia Pacific in accordance with section 1141(b) of the Bankruptcy Code.  On and after the Confirmation Date, and subject to compliance with the terms of this Plan, Asia Pacific may, without further approval of the Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of it a public or private sale any of the Assets for the purpose of liquidating and converting such Assets to Cash, making distributions, and fully consummating the Plan.

22898651.v7

12.7    **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any leases or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to any of the Assets, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any tax to the fullest extent Allowed under section 1146 of the Bankruptcy Code.

12.8    **Further Assurances and Cooperation**.  Asia Pacific, and each person required or contemplated by this Plan to execute and deliver a written instrument, agreement, or document, shall execute and deliver such instrument, agreement or document in form and substance satisfactory to Asia Pacific and shall perform all other and further reasonable acts requested by Asia Pacific, in order to permit the purposes and intents of this Plan to be consummated.

12.9    **Termination of Subchapter V Trustee**.  The service of the Subchapter V Trustee shall terminate upon Substantial Consummation of the Plan, except that the United States Trustee may reappoint a trustee as needed for performance of duties under section 1183(b)(3)(C) and section 1185(a) of the Bankruptcy Code.  Not later than 14 days after Substantial Consummation, Asia Pacific shall file with the Court and serve on the Subchapter V Trustee and the United States Trustee notice of such Substantial Consummation, occurrence of the Effective Date, and termination of the Subchapter V Trustee's services.

12.10    **Closing of Chapter 11 Case**.  The Chapter 11 Case shall be deemed closed at such time as the order closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code has been entered by the Court.

12.11    **Management Post-Confirmation**.  Upon confirmation of the Plan, Asia Pacific's existing management team shall continue to operate the businesses and control the Assets of Asia Pacific on a day-to-day basis.  Nothing in this Plan shall prohibit or limit the ability of Asia Pacific to change members of its management team or make other operational or management changes in the ordinary course.

12.12    **Employee Benefit Plans and Programs**.  Entry of the Confirmation Order shall, to the extent necessary, authorize Asia Pacific to maintain or, to the extent necessary, assume and perform all obligations with respect to any Employee Benefit Plans and Programs.

12.13    **No Admissions**.  Notwithstanding anything herein to the contrary, nothing contained in the Plan or any exhibits hereto shall be deemed an admission by Asia Pacific or the Estate with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

22898651.v7

# ARTICLE XIII

## Modification of the Plan

Asia Pacific may modify the Plan in accordance with section 1193 of the Bankruptcy Code and other applicable law.

# ARTICLE XIV

## Conditions Precedent to Effective Date

14.1 **Conditions Precedent**. Subject to Article 14.2, the Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions precedent have occurred: (i) the Confirmation Order is a Final Order; and (ii) Asia Pacific has begun making the distributions required under the Plan as of the Effective Date (excluding Allowed Professional Fees and Expenses and the Allowed Subchapter V Trustee Claim). In the event that the conditions precedent in Article 13.1 have not been met by the Confirmation Date or waived by Asia Pacific, then the Effective Date shall occur immediately upon satisfaction of such conditions thereafter.

14.2 **Waiver**. Asia Pacific may, in its discretion, waive some or all of the conditions precedent to the Effective Date set forth in Article 14.1. Notice of any such waiver shall be filed on the docket in the Chapter 11 Case.

31

Respectfully submitted,

**ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.**

/s/ Sandra McKeever
By: Sandra McKeever
Its: CEO and Authorized Representative

Through its counsel:

/s/ Andrew C. Helman

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
254 Commercial Street, Suite 245
Portland, Maine 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

Dated: September 15, 2023

32

22898651v7

22898651v7

EXHIBIT 1

(Pro Forma)

| Asia Pacific - 3-Year Proforma | | | |
|---|---|---|---|
| | 2024 | 2025 | 2026 |
| **Revenues** | | | |
| Investment Advisory Fees | 1,952,335.46 | 2,011,049.52 | 2,011,049.52 |
| Other Income | 4,800.00 | 4,800.00 | 4,800.00 |
| **Total Revenues** | **1,957,135.46** | **2,015,849.52** | **2,015,849.52** |
| **Operating Expenses** | | | |
| FINRA Commissions | 1,186,141.52 | 1,221,725.76 | 1,221,725.76 |
| Employee Compensation & Benefits | 441,126.96 | 441,126.96 | 441,126.96 |
| Other Operating Expenses | 197,480.00 | 197,480.00 | 197,480.00 |
| Contingency Reserve | 25,000.00 | 25,000.00 | 25,000.00 |
| Occupancy and Equipment | 62,400.00 | 62,400.00 | 62,400.00 |
| Taxes and License | 18,300.00 | 18,300.00 | 18,300.00 |
| Depreciation | 24,000.00 | 24,000.00 | 24,000.00 |
| Technology and Communications | 6,060.00 | 6,060.00 | 6,060.00 |
| **Total Operating Expenses** | **1,960,508.48** | **1,996,092.72** | **1,996,092.72** |
| **Net Income/Loss** | **(3,373.02)** | **19,756.80** | **19,756.80** |

| Sources and Uses for Plan Payments and Disposable Income |
|---|

**Sources of Funds for Plan Payments**

Projected Disposable Income (Net Income 2024, 2025, 2026)        36,140.58

**Projected Disposable Income insufficient to provide dividend to Allowed Class 2 Claims due to administrative expenses.**

2308651.v6

# EXHIBIT 2
## (Liquidation Analysis)

## PROPOSED LIQUIDATION ANALYSIS
### Hypothetical Liquidation Date of November 1, 2023

| | Note | Low | Proceeds High | Average |
|---|---|---|---|---|
| **Assets for Liquidation** | | | | |
| Cash | | 100,000.00 | 250,000.00 | 175,000.00 |
| RBC Investment Account | | 340,000.00 | 385,000.00 | 362,500.00 |
| Accounts Receivable | Investment Advisory Fees | 150,000.00 | 198,000.00 | 174,000.00 |
| Client List | | 1.00 | 67,107.51 | 33,554.26 |
| **Sub-Total (Gross Proceeds from Liquidation)** | | **590,001.00** | **900,107.51** | **745,054.26** |
| **Administrative Expenses** | | | | |
| Trustee Fee | 11 U.S.C. s. 326 | 40,250.00 | 55,400.00 | 47,825.00 |
| Counsel for Trustee | | 15,000.00 | 35,000.00 | 25,000.00 |
| Wind Down Fees | Please see details below | 90,000.00 | 140,000.00 | 115,000.00 |
| Contingency Reserve | | 15,000.00 | 20,000.00 | 17,500.00 |
| Capital Gain Tax on RBC account liquidation | | 7,000.00 | 7,500.00 | 7,250.00 |
| Chapter 11 Administrative Expenses | | | | |
| Subchapter V Trustee | | 8,500.00 | 15,000.00 | 11,750.00 |
| RRIA Payable | Balance from reduced RRIA Payments during the case | 112,000.00 | 120,000.00 | 116,000.00 |
| RRIA Contractual Payments | Amounts owed as of hypothetical conversion | 90,909.00 | 119,999.88 | 105,454.44 |
| Open Payroll/PTO (1 pay period) | Includes projected open payroll and priority/post-petition PTO | 18,000.00 | 26,000.00 | 22,000.00 |
| Open Operating Expenses/Costs | | 15,000.00 | 20,000.00 | 17,500.00 |
| Professional Fees Dentons * | | 150,000.00 | 215,000.00 | 182,500.00 |
| Professional Fees Civile & Tang* | | 30,000.00 | 50,000.00 | 40,000.00 |
| **Sub Total (Administrative Expenses)** | | **591,659.00** | **823,899.88** | **707,779.44** |
| **Total (Net Proceeds Available to Creditors)** | | **(1,658.00)** | **76,207.63** | **37,274.82** |

\* Estimated amount without factoring in further significant disputes. Professional fees to be paid pursuant to the Bankruptcy Code. All rights reserved.

| WIND DOWN FEES | |
|---|---|
| Tail Coverage Insurance | 6,000.00 |
| Destruction of Physical Records | 20,000.00 |
| Destruction of Electronic Records | 15,000.00 |
| Post-conversion rent | 6,800.00 |
| Taxes | 25,000.00 |
| Registration Terminations FINRA/SEC | 5,000.00 |
| 401(k) and Pension Plan Termination | 7,000.00 |
| Personnel to assist wind-down) | 15,000.00 |
| Office Utilities | 1,700.00 |
| **TOTAL** | **101,500.00** |

23000387-v1
23000387-v4

22898651.v6

EXHIBIT 3

(Cash Projection)

## Asia Pacific – 2023 CASH PROJECTIONS

| | September | October | November | December |
|---|---|---|---|---|
| Ending Cash Balance as of August 31st BOH Acct | 361,333.00 | | | |
| Ending RBC Reserve Account Balance as of August 31st | 378,425.00 | | | |
| **Revenues** | | | | |
| Investment Advisory Fees | | | | |
| Other Income | 25,000.00 | 210,000.00 | 285,000.00 | 25,000.00 |
| **Total Revenues** | 25,000.00 | 210,000.00 | 285,000.00 | 25,000.00 |
| **Operating Expenses** | | | | |
| RRIA Commissions | 35,000.00 | 45,100.00 | 61,100.00 | 16,100.00 |
| Pension Plan | | | | |
| Employee Compensation & Benefits | 37,582.00 | 37,582.00 | 37,582.00 | 37,582.00 |
| Other Operating Expenses | 10,841.00 | 10,841.00 | 10,841.00 | 10,841.00 |
| Occupancy and Equipment | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 |
| Taxes and License | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Technology and Communications | 545.00 | 545.00 | 545.00 | 545.00 |
| Sub V Trustee Fees and Contingency Reserve | 6,000.00 | | | |
| **Total Operating Expenses** | 97,368.00 | 101,468.00 | 117,468.00 | 72,468.00 |
| **Net Income/Loss** | (72,368.00) | 108,532.00 | 167,532.00 | (47,468.00) |
| Cash Projection for November 1st | | | 943,454.00 | |
| **Plan Payments (projected payment date)** | | | | |
| Unclassified Claims | | | | |
| Professional Fees (Dentons and Civille & Tang)* | | | 180,000.00 | |
| Subchapter V Trustee* | | | 11,750.00 | |
| RRIA Payable | | | 25,000.00 | |
| Allowed Class 1 Claims (Pro Rata Share of Liquidation Value)** | | | 813,580.41 | |
| **Total Plan Payments** | | | 1,030,330.41 | |
| Shareholder Loan (cash)*** | | | 90,000.00 | 50,000.00 |
| Shareholder Loan (deferred RRIA Payments)*** | | | 388,200.00 | |
| **Projected Monthly Cash Position (includes cash and cash equivalents)** | 667,390.00 | 775,922.00 | 3,123.59 | 5,655.59 |

*This cash projection is subject to modifications if additional information becomes available.*

† Estimated amount from Liquidation Analysis without factoring in further significant disputes. Professional fees to be paid pursuant to the Bankruptcy Code and may differ. All rights reserved to professionals.

* Estimated dividend of about 18.5%. Projected Disposable Income produced zero recovery for Allowed Class 1 Claims. Distribution exceeds liquidation value.

*** Shareholder loan to be repaid on terms to be negotiated between the shareholder and Asia Pacific; Loan comprised of cash and deferred payments to shareholder.

22989651.v6

**EXHIBIT 4**

(Rejected Contracts)

**RESERVED**

22898651.v6

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Telephone: (671) 472-8868/69
Email: *jtang@civilletang.com*

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
254 Commercial Street, Suite 245
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*

*Counsel for the Debtor*

### THE DISTRICT COURT OF GUAM

| | |
|---|---|
| In re | Bankruptcy Case No. 23-00005<br>Chapter 11 |
| ASIA PACIFIC FINANCIAL<br>MANAGEMENT GROUP, INC., [1] | **ORDER REGARDING FIXING OF DEADLINES UNDER BANKRUPTCY RULE 3017.2** |
| Debtor. | |

Following a status conference held on September 27, 2023, at which Asia Pacific Financial Management Group, Inc. (the "Debtor"), Creditor Michael F. Phillips ("Mr. Phillips"), and the United States Trustee (the "UST" and together with the Debtor and Mr. Phillips, the "Parties") appeared, the court enters this Order setting plan confirmation deadlines under Rule 3017.2 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"):

On September 15, 2023, the Debtor filed its *First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. dated September 15, 2023 with Incorporated Adequate Disclosures under Section 1190(1) of the Bankruptcy Code* [ECF No. 137] (the "Plan"). Bankruptcy Rules 2002(b), 3017.2, and 3018 and Bankruptcy Local Rules the ("Local Rules") 3018-1 and 3020-1 govern, among other things, service of a proposed plan, notice to creditors of

---

[1] The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910

a confirmation hearing regarding a plan, deadlines for filing written objections to a plan, and service thereof.

1.      **Deadline to Serve the Plan and to Provide Notice of Plan-Related Deadlines**

The Debtor shall serve holders of claims or interests entitled to vote on the Plan: (i) a copy of the Plan, with the relevant deadlines from this order having been inserted; (ii) a ballot substantially in the form proposed by the Debtor; and (iii) a copy of this order, no later than **October 6, 2023**.  The Debtor shall file a certificate of such service no later than **October 13, 2023**.

Except as provided in the following paragraph, the Debtor shall serve holders of claims or interests that are unclassified or otherwise not entitled to vote on the Plan: (i) a copy of the Plan, with the relevant deadlines from this order having been inserted; and (ii) a copy of this order, no later than **October 6, 2023**.  The Debtor shall file a certificate of such service no later than **October 13, 2023**.

The Debtor shall provide clients on its amended Schedule G: (i) a copy of this order no later than **October 6, 2023**; and (ii) notice of the date of the confirmation hearing and deadline to object to the Plan, which notice may be provided by letter.  The Debtor shall file a certificate of such service no later than **October 13, 2023**.

2.      **Deadlines for Receipt of Ballots and Certification of the Voting Results**

Holders of claims and interests may accept or reject the Plan by submitting ballots to the Debtor's counsel such that they are received no later than **November 3, 2023**.  The Debtor shall file a ballot tabulation report, as required by Local Rule 3018-1(c), no later than **November 10, 2023**.

3.      **Deadline for Objections to Confirmation and Motions under Rule 3018**

The deadline for filing and serving written objections to confirmation of the Plan is **November 3, 2023**.

23138923.v3

The deadline for motions under Rule 3018 of the Federal Rules of Bankruptcy Procedure shall be **November 8, 2023**, with any objections due by **November 15, 2023**.

4.      **Confirmation Hearing**

A hearing on confirmation of the Plan will be held on **November 21, 2023, at 8:00 a.m. (CHST)**, at the District Court of Guam, 4th Floor, U.S. Courthouse, 520 West Soledad Avenue, Hagatna, Guam 96910.  If the Debtor intends to offer testimony in support of confirmation, then any affidavit that may serve as the direct testimony of a witness shall be filed no later than **November 15, 2023**.

6.      **Additional Information**

Persons wishing to obtain additional information about the procedure for voting or the packet of materials they may have received in conjunction with the Plan may contact:

<div align="center">

Andrew C. Helman
Dentons Bingham Greenebaum, LLP
One City Center, Suite
11100 Portland, ME 04101

-or-

Joyce C.H. Tang
Civille & Tang, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, GU 90910

</div>

7.      **Alteration of Deadlines**

The deadlines established by this order may be altered by the court on motion and after notice and opportunity for hearing.

/s/ Frances M. Tydingco-Gatewood
    Chief Judge
Dated: Oct 04, 2023

23138923.v3

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.,[1] | Chapter 11 |
| Debtor. | **BALLOT FOR ACCEPTING OR REJECTING FIRST AMENDED PLAN OF REORGANIZATION OF ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC. DATED SEPTEMBER 15, 2023, WITH INCORPORATED ADEQUATE DISCLOSURES UNDER SECTION 1190(1) OF THE BANKRUPTCY CODE** |

**Submitted by (Name of Creditor)**: _____

**Date**: _____

       The *First Amended Plan of Reorganization of Asia Pacific Financial Management Group dated September 15, 2023 with Incorporated Adequate Disclosures under Section 1190(1) of the Bankruptcy Code* [Docket No. 135] (the "Plan"), filed by Asia Pacific Financial Management Group on September 15, 2023, shall be confirmed by the Bankruptcy Court and made binding on you under 11 U.S.C. § 1191(a) if it is accepted by the holders of two-thirds in the amount and more than one-half in number of claims in each impaired class voting on the Plan.  If the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if it finds the requirements of 11 U.S.C. § 1191(b) have been satisfied.  **If you want your vote to count, you must complete and return this ballot to:**

<div align="center">

JOYCE C.H. TANG
CIVILLE & TANG, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email:  jtang@civilletang.com

</div>

**This ballot must be received no later than November 3, 2023**.

---

[1]       The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272.  The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910.

**<u>BALLOT</u>**:     The undersigned, a creditor of Asia Pacific Financial Management in the unpaid principal amount of $_____, [Fill in Amount of Claim]

[Check the Appropriate Box]

**[    ] Accepts the Plan**

**[    ] Rejects the Plan**

CREDITOR: _____

BY: _____

TITLE: _____

ADDRESS: _____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF GUAM

IN RE:

Asia Pacific Financial Management Group, Inc.

CASE NO: 23-00005

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11

On 10/5/2023, I did cause a copy of the following documents, described below,

First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc., Dated September 15, 2023 with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code

Order Regarding Fixing Deadlines Under Bankruptcy Rule 3017.2

Ballot for Accepting or Rejecting First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc., Dated September 15, 2023 with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code  143

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 10/5/2023

/s/ Andrew C. Helman
Andrew C. Helman

Dentons
1 City Center, Suite 11100
Portland, ME  04101
207.523.8290
samantha.hayes@dentons.com

**Exhibit B**

23197453.v1

6

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

AB RISK SOLUTIONS
718 NORTH MARINE CORPS DRIVE
SUITE 306
BARRIGADA GU 96913-0000

DOCUSIGN
221 MAIN STREET, SUITE 1000
SAN FRANCISCO CA 94105-0000

G4S SECURITY SYSTEMS (GUAM), INC.
J&G COMMERCIAL PLAZA, BLDG. STE.101
130 EAST MARINE CORPS DRIVE
HAGATNA GU 96910-0000


CANADA
GLOBAL RELAY
220 CAMBIE STREET, 2ND FLOOR
VANCOOUVER BC V6B 2M9

GUAM MINI STORAGE
380-G EAST HARMON INDUSTRIAL PARK
HAGATNA GU 96910-0000

IT&E
PO BOX 24881
BARRIGADA GU 96921-0000


JONATHAN ULLOA
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

JONATHON HOLM
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

MG TRUST
717 17TH STREET
SUITE 1300
DENVER  CO 00008-0202


MICROSOFT CORPORATION
ONE MICROSOFT WAY
REDMOND WA 98052-0000

MIDLAND NATIONAL LIFE INSURANCE CO.
PO BOX 10385
DES MOINES IA 50306-0000

MORNINGSTAR INVESTOR INC.
22 W. WASHINGTON ST.
CHICAGO IL 60602-0000


PACIFIC DATA SYSTEMS
121 ROBAT STREET, STE 101
HAGATNA GU 96910-0000

QUINTIN GUILLERMO
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

RBC CLEARING AND CUSTODY
250 NICOLLET MALL
MINNEAPOLIS MN 55401-1931


REDTAIL
3131 FITE CIR
SACRAMENTO CA 95827-0000

SANDRA MCKEEVER
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

SOPHIE BRINDEJONC, CFP®, AIF
145 ASPINALL AVENUE
HAGATNA GU 96910-0000


ST. PAUL FIRE & MARINE INSURANCE
385 WASHINGTON ST.
ST. PAUL MN 00005-5102

THAD JONES
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

UDP CORPORATION
145 ASPINALL AVENUE
HAGATNA GU 96910-0000


XEROX CORPORATION
PO BOX 660501
DALLAS TX 75266-0000

ZIX CORP
2711 NORTH HASKELL AVE
SUITE 2200
DALLAS TX 75204-0000

ZOOM
55 ALMADEN BLVD
SAN JOSE CA 95113-0000


BANK OF HAWAII
134 W. SOLEDAD AVE FL 2
HAGATNA GU 96910-5057

FIRST HAWAIIAN BANK
HWY 8 400 SUITE 101
MONGMONG-TOTO-MAITE GU 96910

SECURITIES INVESTOR PROTECTION CORP
1667 K ST. N.W.
SUITE 1000
WASHINGTON  DC 20006-1620

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.


SECURITIES AND EXCHANGE COMMISSION
100 F STREET N.E.
WASHINGTON  DC 20549-2000

CURTIS CHING, OFFICE OF THE U.S.
TRUSTEE
300 ALA MOANA BOULEVARD
ROOM 4108
HONOLULU HI 96850-4108

KATHYLN SELLECK
PO BOX 315396
TAMUNING GU 96931-3296


NEIL J. VERBRUGGE, OFFICE OF THE U.S.
TRUSTEE
300 ALA MOANA BOULEVARD
ROOM 4108
HONOLULU HI 96850-4108

**Exhibit B-1**

23197453.v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF GUAM

IN RE:

Asia Pacific Financial Management Group, Inc.

CASE NO: 23-00005

**CERTIFICATE OF SERVICE**
**DECLARATION OF MAILING**

Chapter: 11

On 10/5/2023, a copy of the following documents, described below,

First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc., Dated September 15, 2023 with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code

Order Regarding Fixing of Deadlines Under Bankruptcy Rule 3017.2 143

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 10/5/2023

Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Andrew C. Helman
Dentons
1 City Center, Suite 11100
Portland, ME  04101

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

AB RISK SOLUTIONS
718 NORTH MARINE CORPS DRIVE
SUITE 306
BARRIGADA GU 96913-0000

DOCUSIGN
221 MAIN STREET, SUITE 1000
SAN FRANCISCO CA 94105-0000

G4S SECURITY SYSTEMS (GUAM), INC.
J&G COMMERCIAL PLAZA, BLDG. STE.101
130 EAST MARINE CORPS DRIVE
HAGATNA GU 96910-0000

CANADA

GLOBAL RELAY
220 CAMBIE STREET, 2ND FLOOR
VANCOOUVER BC V6B 2M9

GUAM MINI STORAGE
380-G EAST HARMON INDUSTRIAL PARK
HAGATNA GU 96910-0000

IT&E
PO BOX 24881
BARRIGADA GU 96921-0000

JONATHAN ULLOA
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

JONATHON HOLM
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

MG TRUST
717 17TH STREET
SUITE 1300
DENVER  CO 00008-0202

MICROSOFT CORPORATION
ONE MICROSOFT WAY
REDMOND WA 98052-0000

MIDLAND NATIONAL LIFE INSURANCE CO.
PO BOX 10385
DES MOINES IA 50306-0000

MORNINGSTAR INVESTOR INC.
22 W. WASHINGTON ST.
CHICAGO IL 60602-0000

PACIFIC DATA SYSTEMS
121 ROBAT STREET, STE 101
HAGATNA GU 96910-0000

QUINTIN GUILLERMO
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

RBC CLEARING AND CUSTODY
250 NICOLLET MALL
MINNEAPOLIS MN 55401-1931

REDTAIL
3131 FITE CIR
SACRAMENTO CA 95827-0000

SANDRA MCKEEVER
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

SOPHIE BRINDEJONC, CFP®, AIF
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

ST. PAUL FIRE & MARINE INSURANCE
385 WASHINGTON ST.
ST. PAUL MN 00005-5102

THAD JONES
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

UDP CORPORATION
145 ASPINALL AVENUE
HAGATNA GU 96910-0000

XEROX CORPORATION
PO BOX 660501
DALLAS TX 75266-0000

ZIX CORP
2711 NORTH HASKELL AVE
SUITE 2200
DALLAS TX 75204-0000

ZOOM
55 ALMADEN BLVD
SAN JOSE CA 95113-0000

BANK OF HAWAII
134 W. SOLEDAD AVE FL 2
HAGATNA GU 96910-5057

FIRST HAWAIIAN BANK
HWY 8 400 SUITE 101
MONGMONG-TOTO-MAITE GU 96910

SECURITIES INVESTOR PROTECTION CORP
1667 K ST. N.W.
SUITE 1000
WASHINGTON  DC 20006-1620

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.


SECURITIES AND EXCHANGE COMMISSION
100 F STREET N.E.
WASHINGTON  DC 20549-2000

CURTIS CHING, OFFICE OF THE U.S.
TRUSTEE
300 ALA MOANA BOULEVARD
ROOM 4108
HONOLULU HI 96850-4108

KATHYLN SELLECK
PO BOX 315396
TAMUNING GU 96931-3296


NEIL J. VERBRUGGE, OFFICE OF THE U.S.
TRUSTEE
300 ALA MOANA BOULEVARD
ROOM 4108
HONOLULU HI 96850-4108

Dated: September 15, 2023

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
One City Center, Suite 11100
Portland, Maine 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

*Counsel to Asia Pacific Financial Management Group, Inc.*

2

---

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
EMAIL: jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL: andrew.helman@dentons.com

*Counsel for the Debtor*

## IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.,[1] | Chapter 11 |
| Debtor. | **FIRST AMENDED PLAN OF REORGANIZATION OF ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC. DATED SEPTEMBER 15, 2023, WITH INCORPORATED ADEQUATE DISCLOSURES UNDER SECTION 1190(1) OF THE BANKRUPTCY CODE.** |

Pursuant to section 1189 of the Bankruptcy Code, Asia Pacific Financial Management Group, Inc., the debtor in the above-captioned chapter 11 case, hereby submits this *First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated September 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code*, to all of the known creditors and holders of interests of Asia Pacific.[2] Asia Pacific seeks confirmation of the Plan pursuant to section 1191(a) of the Bankruptcy Code, or, if necessary, under section 1191(b) of the Bankruptcy Code. Asia Pacific also contends that the Plan provides adequate disclosures in accordance with section 1190(1) of the Bankruptcy Code and that no separate disclosure statement is required.

---

[1] The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910.

[2] Capitalized terms not otherwise defined in the body of the Plan shall have the meaning given to them in Article I of the Plan.

22898651.v7

22898651.v7

# TABLE OF CONTENTS

ARTICLE I:        Definitions................................................................5

ARTICLE II:       Background and Disclosures under Section 1190 of the Bankruptcy
                  Code, and Additional Information Regarding Confirmation..................10

ARTICLE III:      Classification of Claims and Interests....................................17

ARTICLE IV:       Treatment of Claims and Interests........................................17

ARTICLE V:        Allowance and Disallowance of Claims....................................19

ARTICLE VI:       Interests to be Retained and Rights to be Exercised ......................20

ARTICLE VII:      Means of Financing the Plan; Plan Distributions; Remedies; and Other
                  Relief Afforded under the Plan ...........................................20

ARTICLE VIII:     Approval of Settlement and Settlement Agreement ......................23

ARTICLE IX:       Executory Contracts and Unexpired Leases ...............................26

ARTICLE X:        Effect of Confirmation, Discharge and Injunction........................26

ARTICLE XI:       Retention of Jurisdiction.................................................28

ARTICLE XII:      General Provisions.......................................................29

ARTICLE XIII:     Modification of the Plan .................................................30

ARTICLE XIV:      Conditions Precedent to Effective Date ..................................31

3

22898651.v7

---

**EXHIBITS**[3]

| Exhibit Number | Description |
|---|---|
| 1 | Pro Forma |
| 2 | Liquidation Analysis |
| 3 | Cash Projection |
| 4 | Rejected Contract Schedule |

---

[3] Asia Pacific reserves the right to amend these exhibits.

22898651.v7

4

# ARTICLE I

## Definitions

The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1 "Administrative Claim" shall mean an expense of the kind described in section 503(b) of the Bankruptcy Code.

1.2 "Allowed" shall mean, with respect to any Claim, the status of the Claim, such that: (a) upon expiration of the Claims Objection Deadline, the Claim, whether filed or scheduled, has not been disputed, or (b) with respect to Disputed Claims, a Final Order allowing the Claim has been entered or Asia Pacific and the Claimant have reached agreement on the amount of the Claim.

1.3 "Allowed Amount" of a Claim shall mean, for the purposes of the Plan: (a) the amount of the Claim listed in Asia Pacific's Schedules if: (i) the Claim is not scheduled as disputed, contingent, or unliquidated by Asia Pacific, (ii) no objection to that amount is filed by the Claims Objection Deadline, and (iii) the Holder of the Claim has not timely filed a properly prepared proof of claim in an amount different from that scheduled by Asia Pacific; (b) the amount set forth by the Holder of a Claim in a timely filed and properly prepared proof of Claim if that amount differs from the amount scheduled by Asia Pacific and no objection to the amount stated in the proof of claim is filed by the Claims Objection Deadline; or (c) the amount of such Claim established by a Final Order of the Bankruptcy Court if: (i) such Claim is scheduled by Asia Pacific as contingent or disputed, (ii) an objection to that amount is filed on or before the Claims Objection Deadline, or (iii) if the amount set forth by the Holder of such Claim in a timely filed, properly prepared proof of claim differs from the amount scheduled by Asia Pacific and an objection is filed to the proof of claim prior to the Claims Objection Deadline.

1.4 "Asia Pacific" shall mean Asia Pacific Financial Management Group, Inc., including as a debtor and debtor in possession in the Chapter 11 Case, and its capacity as a reorganized debtor after the Confirmation Date.

1.5 "Assets" shall mean all property of the Estate under section 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate. In the event that the Plan is confirmed under section 1129(b) of the Bankruptcy Code, Assets shall include the property of Asia Pacific to the extent provided for by section 1186 of the Bankruptcy Code.

22898651.v7

1.6 "Bankruptcy Code" shall mean title 11 of the United States Code, as in effect with respect to the Chapter 11 Case on the Petition Date. All Bankruptcy Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.7 "Cash" shall mean payment, including by check, issued by or on behalf of Asia Pacific with respect to any payment of funds required to be made pursuant to the Plan.

1.8 "Causes of Action" shall mean: (a) Chapter 5 Claims; (b) any other causes of action of the Estate as of the Effective Date; (c) in the event the Plan is confirmed under section 1191(b) of the Bankruptcy Code, any other causes of action of Asia Pacific; and (d) any and all proceeds, whether in the form of cash or otherwise, from any recoveries on or settlements of such causes of action.

1.9 "Chapter 5 Claims" shall mean any and all causes of action belonging to Asia Pacific or the Estate, whether arising before or after the Petition Date and whether arising under state or federal law, constituting causes of action under section 544 to 553 of the Bankruptcy Code (including, but not limited to, any state fraudulent conveyance statute by virtue of section 544 of the Bankruptcy Code).

1.10 "Chapter 11 Case" shall mean Asia Pacific's chapter 11 case pending as Case No. 23-00005 before the Bankruptcy Division of the District Court of Guam.

1.11 "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.12 "Claimant" shall mean any individual or entity making or holding a Claim against Asia Pacific or the Estate.

1.13 "Claims Objection Deadline" shall mean, with respect to Claims not subject to the Post-Petition Bar Date, the date that is 30 calendar days after the Confirmation Date. The failure to object to a Claim by the Claims Objection Deadline shall not constitute a waiver, acceptance, or release of any Claim or Cause of Action against a creditor, including any Cause of Action based on a creditor receiving preferential or fraudulent transfers under sections 547 or 548 of the Bankruptcy Code. For the avoidance of doubt, as to

1.14 "Classified Claims" shall mean these Claims classified in Article III of this Plan and not described in section 3.1 of Article III.

1.15 "Confirmation Date" shall mean the date on which the Confirmation Order becomes a Final Order in the Chapter 11 Case.

1.16 "Confirmation Hearing" shall mean the hearing held by the Court to consider confirmation of the Plan, as the same may be amended, and as contemplated by section 1128(a) of the Bankruptcy Code.

22898651.v7

1.17 "Confirmation Order" shall mean the Final Order entered by the Court confirming the Plan.

1.18 "Contracts" shall mean all of Asia Pacific's executory contracts and unexpired leases, within the meaning of section 365 of the Bankruptcy Code, and as reflected and identified in the Contract Schedule.

1.19 "Court" shall mean the Bankruptcy Division of the District Court of Guam.

1.20 "Cure Amount Claims" shall mean the amount required to be paid to cure a Contract pursuant to section 365 of the Bankruptcy Code, as reflected in the column labeled "Cure Amount Claim" on the Contract Schedule.

1.21 "Disallowed" when used with respect to a Claim shall mean a Claim that, pursuant to a Final Order, is not Allowed.

1.22 "Disputed Claim" shall mean any Claim listed as disputed in Asia Pacific's bankruptcy Schedules filed in this Chapter 11 Case or as to which an objection has been timely filed by the Claims Objection Deadline.

1.23 "Effective Date" shall mean the calendar day that is 14 days after entry of the Confirmation Order, which date is December [*], 2023, provided that the conditions precedent to the Effective Date in Article XIII of the Plan shall have been met or waived by Asia Pacific on or before such date.

1.24 "Employee Benefit Plans and Programs" shall mean all health, welfare, compensation, and retirement (including any cash balance or pension) plan that Asia Pacific maintains or is the administrator with respect to employees.

1.25 "Encumbrances" shall mean all Liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.26 "Estate" shall mean the bankruptcy estate of Asia Pacific, as it was created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, including as such Estate may be continued or preserved under the Plan.

1.27 "Final Order" shall mean an order of a court of competent jurisdiction with respect to which all periods for taking appeal from such order or any order of an appellate court relating to such order have expired with no appeal pending and no stay of such order being then in effect.

1.28 "Bar Date" shall mean the deadline for filing proofs of claim for all creditors, including other governmental units. Such date was July 5, 2023.

1.29 "Holder" shall mean a creditor holding, including by assignment, a Claim or Interest against Asia Pacific and/or the Estate.

1.30 "Interests" shall mean the equity or ownership interests of any person or entity in Asia Pacific.

1.31 "IRS" shall mean the Internal Revenue Service.

1.32 "Lien" shall mean any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge, or assessment, of every kind, nature, and description, against, in or upon Assets, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown, and, without limiting the foregoing, shall include the meaning set forth in section 101(37) of the Bankruptcy Code.

1.33 "Liquidation Analysis" shall mean the hypothetical liquidation analysis required by section 1190(1)(B) of the Bankruptcy Code.

1.34 "Notice of the Effective Date" shall mean notice filed with the Court that the Effective Date has occurred.

1.35 "Petition Date" shall mean April 26, 2023.

1.36 "Phillips Claim" shall mean the Claim filed with the Court on June 23, 2023 at Proof of Claim 1-1 in the amount of $4,316,108.11.

1.37 "Plan" shall mean this *First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated September 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code*, as it may be amended or modified from time to time, together with all exhibits, schedules, and other attachments thereto, and including the Confirmation Order, as the same may be amended or modified from time to time, all of which are incorporated herein by reference.

1.38 "Post-Petition Bar Date" shall mean the date that is 60 days after the Effective Date and shall be the deadline to file final applications for Professional Fees and Expenses, Subchapter V fees and expenses, any other Administrative Claims, and Rejection Damages Claims, except as may otherwise be provided in this Plan.

1.39 "Priority Claim" shall mean an Unsecured Claim, other than an Administrative Claim, granted a priority under section 507 of the Bankruptcy Code.

1.40 "Pro Rata" means proportionate, so that, for example, the ratio of the consideration distributed on account of an Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such class of Claims to the amount of all Allowed Claims in the class.

22989651.v7
22989651.v7

22898651.v7

1.41 "Professional Fees and Expenses" shall mean Allowed Administrative Claims of any professionals retained in the Chapter 11 Case under section 327 of the Bankruptcy Code for fees and expenses incurred on or before the Confirmation Date.

1.42 "Projected Net Disposable Income" shall mean, in accordance with section 1191(d) of the Bankruptcy Code, the income that is received by Asia Pacific and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of Asia Pacific, which such necessary payments shall include, but not be limited to, payments to the Holders of Allowed Administrative Claims in accordance with this Plan, as well as maintaining appropriate cash reserves, all as reflected in the Pro Forma.

1.43 "Rejection Damages Claim" shall mean any timely filed Claim for amounts due as a result of the rejection by Asia Pacific of any Contract under section 365 of the Bankruptcy Code or amounts designated under the column entitled "Rejection Damages Claim" on the Contract Schedule.

1.44 "Secured Claim" shall mean a Claim arising on or before the Petition Date to the extent such Claim is secured by a valid and perfected Lien on the Assets, which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code.

1.45 "Subchapter V Trustee" shall mean Kathlyn Selleck, in her capacity the Subchapter V Trustee in the Chapter 11 Case pursuant to section 1183 of the Bankruptcy Code.

1.46 "Subchapter V Trustee Claim" shall mean the Allowed Claim of the Subchapter V Trustee for compensation.

1.47 "Substantial Consummation" shall mean (i) the Effective Date has occurred, and (ii) Asia Pacific has begun making the distributions required under the Plan as of the Effective Date (excluding Allowed Professional Fees and Expenses and the Allowed Subchapter V Trustee Claim).

1.48 "Unclassified Claims" shall mean Claims described in section 3.1 of Article III of the Plan and which are not classified in Article III.

1.49 "Unsecured Claim" shall mean a Claim that is: (a) not an Unclassified Claim; and (b) not secured by a valid Lien on Assets of Asia Pacific which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code, and shall include deficiency Claims related to Holders of Allowed Secured Claims.

# ARTICLE II

## Background and Disclosures under Section 1190 of the Bankruptcy Code, and Additional Information Regarding Confirmation

2.1 History of Asia Pacific's Business Operations, as Required by Section 1190(1)(A) of the Bankruptcy Code

Asia Pacific was formed in 1993 as a corporation organized under the laws of the Territory of Guam. Asia Pacific is headquartered in Guam. Asia Pacific's ownership as of the Petition Date was as follows: Sandra McKeever (CEO) – 83.75%; Melinda Sulit (CFO) – 10.00%; and Jonathan Ulloa (Financial Advisor) – 6.25%. Asia Pacific provides professional investment advisory services to help businesses and individuals engage in financial planning to meet their respective goals. More specifically, Asia Pacific serves the following constituencies:

• Business Clients: The Debtor assists businesses with strategies for asset protection, cash management, employee retention, adequacy of insurance, adequacy of financing, and retirement and succession planning.

• Individuals: The Debtor provides individuals advisory services that include planning for retirement, college expenses, and for other specialized savings and investment goals. The Debtor also assists retirees preserve wealth to create sustainable income throughout retirement.

• Multigenerational Families: The Debtor assists families in planning for the growth, preservation, and transfer of wealth.

• Widows and Widowers: The Debtor advises individuals regarding life insurance proceeds, Social Security, and retitling financial accounts following the death of a spouse.

As of the Petition Date, Asia Pacific had approximately 2,400 clients (the "Clients"), predominantly residents of Guam and Micronesia, with about $206 million in assets under management ("AUM").

As of the Petition Date, Asia Pacific was and is registered and licensed with the Securities and Exchange Commission (the "SEC") as both a registered investment advisor and a broker-dealer. By virtue of Asia Pacific's status as a broker-dealer, Asia Pacific was and is also a member of the Financial Industry Regulatory Authority, Inc. ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). While there are some differences in the scope of services that investment advisors and broker-dealers provide, both are able to serve as wealth and financial planning advisors, though the manner in which they are paid and duties to investors are different. Investment advisors are typically paid a fee based on a percentage of total assets under management, whereas broker-dealers are typically paid a commission on a per-trade basis. Investment advisors typically have fiduciary duties to clients and do not have to be members of

22898651.v7

FINRA, whereas broker-dealers do not have fiduciary duties, are required to engage in a suitability analysis for each proposed transaction, and are members of FINRA.

Asia Pacific maintains licensure as an investment advisor and broker-dealer, though all or virtually all of Asia Pacific's services are in its capacity as an investment advisor. Asia Pacific does not have custody of Client accounts, nor is property of Clients entrusted to Asia Pacific for the purpose of effecting securities transactions. **As a result, this Plan does not alter or change the rights of any Clients in and to their own funds or property and such funds and property shall not be used for debt repayment under this plan.** Asia Pacific is generally paid based on a percentage of assets under management.

Asia Pacific obtains third-party custody services from RBC Clearing & Custody, a division of RBC Capital Markets, LLC ("RBC"), and other firms. Historically, Asia Pacific has used RBC's broker-dealer platform, with RBC acting as custodian and clearing broker executing any trades. This required maintaining a broker–dealer license even though Asia Pacific's services are all or nearly all as an investment advisor and clients do not entrust property to Asia Pacific for the purpose of effecting securities transactions. Asia Pacific had initially selected the broker-dealer platform on the belief that it provided access to a broader range of potential services or transactions that Asia Pacific could offer to Clients. At this point, Asia Pacific is in the process of transitioning its Clients from RBC's broker-dealer platform to RBC's investment advisor platform, which will not require maintaining a broker-dealer license but will still permit Asia Pacific to provide advisory services. As of the filing of this Plan, a majority of Asia Pacific's Clients have made this transition and completed necessary documentation. Asia Pacific intends to continue this transition for the balance of its Clients in the ordinary course of business post-petition. As previously disclosed in the Chapter 11 Case, Asia Pacific further intends to file a Form BDW with appropriate authorities to withdraw its broker-dealer license in the ordinary course of business before confirmation of this Plan. In addition, Asia Pacific also works with Clients who maintain their custodial accounts with other custodial firms, including SEI Investments, MG Trust, Benefits Trust, Lincoln Financial, ASC Trust, and Interactive Brokers.

2.2    Summary of Largest Prepetition Claims and Circumstances Leading Up to the Chapter 11 Filing, and the Chapter 11 Case

Prior to the Petition Date, Asia Pacific engaged in transactions with parties that resulted in Asia Pacific incurring certain debt obligations. The largest of those prepetition Claims and Liens is held by Michael Phillips ("Mr. Phillips"). Accordingly, Asia Pacific filed its bankruptcy petition in order to reorganize its business and is proposing a debt-repayment plan in accordance with the provisions of subchapter V of chapter 11 of the Bankruptcy Code. Asia Pacific determined that it needed to take this step following assertion of claims by a former client, Mr. Phillips, that resulted in an arbitration award (the "Award") from a FINRA arbitration panel totaling approximately $3.041 million which Mr. Phillips asserts is in the amount of approximately $4.3 million when interest is added. *See* Proof of Claim 1-1. The claims arise out of a client relationship that existed between Mr. Phillips and Asia Pacific from 2009 to 2020, when Mr. Phillips discontinued his business relationship with Asia Pacific. The events Mr. Phillips complained of pertain to an individual who stopped providing services to clients of Asia Pacific in March 2020 and who is no longer located in Guam.

11

22898651.v7

to Mr. Phillips by virtue of the Award and Mr. Phillips allegations related thereto. To that end, Asia Pacific filed a motion to vacate (the "Motion to Vacate") in the Superior Court of Guam prior to commencing the Chapter 11 Case. However, due to the risks and uncertainty involved in litigation and the existential threat to Asia Pacific's business presented by the prospect of a judgment entered against Asia Pacific based on the Award, Asia Pacific determined that proceeding with the Chapter 11 Case was the most appropriate course of action to stabilize its business and ensure that it continued as a going concern.

During the Chapter 11 Case, Mr. Phillips filed a motion to, among other things, convert the Chapter 11 Case to a case under chapter 7 or to dismiss this Chapter 11 Case [ECF 85] (the "Motion to Dismiss"). Asia Pacific disputes the allegations made in the Motion to Dismiss, and does not agree that dismissal, conversion, or any other relief requested in the Motion to Dismiss is appropriate or in the best interest of creditors. Mr. Phillips also asserted in multiple filings that any Claim he holds in the Chapter 11 Case should be excepted from discharge under section 523 of the Bankruptcy Code. Asia Pacific likewise disputes this claim for a variety of reasons, including because courts are nearly unanimous that the section 523(a) exceptions to discharge do not apply to corporate debtors, including corporate debtors that have elected to proceed under subchapter V.[4]

Based on the allegations made by Mr. Phillips, the risks associated with them, and the costs attendant with fully litigating such contested matters, Asia Pacific and Mr. Phillips agreed to enter into mediation during the Chapter 11 Case in an effort to resolve the disputes between them in a cost effective manner that would be beneficial to and in the best interest of creditors and the estate. This mediation was conducted by the Honorable Daniel P. Collins, a bankruptcy judge for the United States Bankruptcy Court for the District of Arizona, and lasted on July 29, 2023 (the "Mediation"). After conducting three Mediation sessions, Asia Pacific and Mr. Phillips agreed to a global settlement of all disputes between them on August 15, 2023 (the "Settlement"). The terms of the Settlement, as read into the record of the Chapter 11 Case, are sealed by order of the Court [D.E. 132]. The Settlement is further memorialized in an agreement between Asia Pacific and Mr. Phillips (the "Settlement Agreement"). Consistent with the Court's order sealing the settlement proceedings and the desires of Asia Pacific and Mr. Phillips, all terms of the Settlement are not incorporated into this Plan. Asia Pacific intends that the Settlement Agreement shall be filed with the Court under seal.

---

4    *See, e.g., Gaske v. Satellite Rests. Crabcake Factor USA (In re Satellite Rests. Inc. Crabcake Factory USA)*, 626 B.R. 871 (Bankr. D. Md. 2021); *Carr v. Rtech Fabrications, LLC (In re Rtech Fabrications, LLC)*, 635 B.R. 559 (Bankr. D. Idaho 2021); *Jennings v. Lapeer Aviation, Inc. (In re Lapeer Aviation, Inc.)*, No. 21-31500, Adv. No. 22-3002, 2022 WL 1110072 (Bankr. E.D. Mich. Apr. 13, 2022); *Avion Funding, LLC v. GFS Indus., LLC (In re GFS Indus., LLC)*, 647 B.R. 337 (Bankr. W.D. Tex. 2022); *Harris (In re Hall)*, No. 22-01326, Adv. No. 22-00062, 2023 WL 2927164 (Bankr. M.D. Fla. Apr. 13, 2023); *BenShot, LLC v. 2 Monkey Trading, LLC (In re 2 Monkey Trading, LLC)*, No. 22-04099, Adv. No. 23-00007, 2023 WL 3145124 (Bankr. M.D. Fla. Apr. 28, 2023).[4] Shortly before the filing of this Plan, the Bankruptcy Appellate Panel for the Ninth Circuit issued a decision consistent with these authorities and held that the exceptions to discharge do not apply to corporate debtors proceeding under subchapter V. *Lafferty v. Off-Spec Solutions et al. (In re Off-Spec Solutions, LLC)*, BAP No. ID-23-1020-GCB (9th Cir. B.A.P. Jul. 6, 2023).

12

22898651.v7

includes by virtue of a shareholder loan to be used to provide sufficient liquidity in the month that plan payments will be made.

## 2.4 Liquidation Analysis, as Required by Section 1190(1)(B) of the Bankruptcy Code

The alternative to the Plan is the liquidation of the Assets in a proceeding under chapter 7 of the Bankruptcy Code and the distribution of the net proceeds thereof to administrative, priority, and unsecured creditors, in the order of priority and manner provided under the Bankruptcy Code. In general, this would require that administrative expense creditors, including administrative expense creditors in the Chapter 11 Case and in the chapter 7 case (with the latter having priority) be paid first, then priority creditors, with the balance, if any, distributed to unsecured creditors on a Pro Rata basis.

Asia Pacific's Assets include certain personal property, as identified in Asia Pacific's Schedules and Statement of Financial Affairs, including Cash, investments, and accounts receivable. Asia Pacific does not own any real property. Although it is impossible to determine the exact liquidation value of the Assets, for purposes of this Liquidation Analysis, Asia Pacific estimates that a liquidation of all Assets (excluding Causes of Action and Chapter 5 Claims) would produce values set forth in the Liquidation Analysis.

By way of additional information, Asia Pacific states as follows:

• **Client List:** Asia Pacific does not believe the Client List has any value in a hypothetical liquidation because (A) there is no contractual requirement that any Client continue to do business with Asia Pacific; (B) the good will value of Asia Pacific and individual investment advisor representatives is integral to the relationship that Asia Pacific has with each Client and would not transfer with a sale of the Client List; and (C) to the extent that there are non-competition provisions in contracts with Asia Pacific's registered representative investment advisors, such provisions are generally unenforceable under Guam law because they are located in personal services contracts. Without waiving any rights, the Liquidation Analysis contains a range of value for the Client List reflecting a maximum potential liquidation value.

• **Chapter 5 Claims:** No recovery or related litigation costs have been attributed to any potential Chapter 5 Claims due to potential defenses to such actions, the costs of such litigation, the lack of any sufficient source of post-conversion funding for speculative litigation, uncertainty about the outcome of such litigation, and anticipated disputes in these matters.[5] This could make any recovery worse in total due to higher professional fees to redistribute amongst creditors.

• **Cash:** Asia Pacific's estimate of cash includes all sources of funds known to be available to it.

---

[5] For example, the majority of potential Chapter 5 Claims are payments made to investment advisor representatives providing services to Asia Pacific. Asia Pacific believes such payments were generally made when and as required under such contracts and that reasonably equivalent value was provided for such services.

14

22898651.v7

## 2.3 Brief Summary of Asia Pacific's Reorganization Summary

As a small business debtor proceeding under the Small Business Reorganization Act, Asia Pacific seeks to reorganize through this Plan by restructuring its debt obligations so that Asia Pacific will achieve sufficient cash flow from business operations and other available funds to satisfy operational expenses and payment obligations under the Plan. Asia Pacific has prepared projections regarding post-confirmation revenue and expenses for a 36-month time period attached as **Exhibit 1** (defined above as the "Pro Forma"). The Pro Forma contains the Asia Pacific's Projected Disposable Income. Asia Pacific has also attached its Liquidation Analysis as **Exhibit 2** containing the Debtor's anticipated liquidation value (the "Liquidation Value"). As reflected in the Pro Forma and the Liquidation Analysis, the Liquidation Value exceeds the Projected Disposable Income.

Pursuant to the Settlement, Asia Pacific has agreed to pay Mr. Phillips $900,000.00 (the "Settlement Amount") in settlement of the Phillips Claim and related disputes. The Settlement Amount will be paid to Mr. Phillips in two lump sum payments: (a) $800,000.00, to be paid on the later date of the Effective Date of this Plan or November 1, 2023 (the "First Settlement Payment"); and (b) $100,000.00, to be paid on or before December 31, 2024 (the "Second Settlement Payment"). Asia Pacific proposes to pay the First Settlement Payment as part of the payments to be made to Class One Claimants (as further described herein) pursuant to this Plan. The Settlement includes certain releases of Claims between Asia Pacific and Mr. Phillips, including a release by Mr. Phillips of any Claims against Asia Pacific, including Asia Pacific's principals, employees, and shareholders. Asia Pacific makes not admission of liability or wrongdoing in connection with the Settlement. Further information regarding the Settlement and approval of the Settlement and Settlement Agreement upon confirmation of this Plan is included herein, infra Art. VIII.

If the Holders of Claims accept this Plan in accordance with section 1126 of the Bankruptcy Code, then all Allowed Unsecured Claims will share ratably in a payment of $812,373.10, and the Holders of Allowed Claims of a higher priority will be paid in full in Cash. If this Plan is not accepted in accordance with section 1126 of the Bankruptcy Code, Asia Pacific will make distributions of Cash to the Holders of all Allowed Claims in an amount not less than what such party would receive in a hypothetical liquidation.

Asia Pacific believes that the proposed amount to be paid on account of Allowed Unsecured Claims represents a significant improvement in recovery for Claimants with Unsecured Claims. In the previous version of the Plan filed by Asia Pacific (Docket No. 120) Allowed Unsecured Claims were proposed to receive a payment equal to Pro Rata distribution of Asia Pacific's Projected Disposable Income or of its Liquidation Value. Under such a Plan, Claimants would have received a distribution equal to approximately 0.82% – 2.55% of their Unsecured Claims. Under the present Plan, Asia Pacific anticipates that Claimants with unsecured Claims will receive approximately 18.53% of their Unsecured Claims.

As discussed below, Asia Pacific's Cash Projection (**Exhibit 3**) demonstrates that Asia Pacific has adequate financial resources to make such payments when and as required. This

13

22898651.v7

- **Distribution of Net Proceeds:** The Liquidation Analysis assumes that gross proceeds of Assets would be distributed in accordance with section 726 of the Bankruptcy Code in accordance with the mandatory order of priorities and with appropriate fees and expenses to wind down Asia Pacific's business, as indicated in the Liquidation Analysis.

The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code because any Holder of an Allowed Claim who has not accepted the Plan will receive value, as of the Effective Date, that is at least as much as the Holder of such Allowed Claim would receive in a hypothetical liquidation on the same date.

2.5     Feasibility Analysis, as Required by Section 1190(1)(C) of the Bankruptcy Code

Section 1190(1)(C) of the Bankruptcy Code requires Asia Pacific to provide "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." Further, section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors.

**Exhibit 3** contains Asia Pacific's Cash Projections demonstrating that the Plan is feasible based on projected revenue, operating expenses, other necessary and standard expenses (including those permissible under section 1191(d) of the Bankruptcy Code), and Asia Pacific's restructured payment obligations under the Plan. The Cash Projections demonstrate that Asia Pacific has sufficient liquidity to fund obligations under this Plan when and as proposed.

In addition, the Pro Forma (**Exhibit 1**) constitutes Asia Pacific's projections based on historic and anticipated future operations, including after consultation with Asia Pacific's advisors, and Asia Pacific has attempted to provide as accurate information as possible. Premised on the Pro Forma, the Plan is not likely to be followed by the liquidation of the Assets or the need for further financial reorganization, and the reorganized entity is able and likely to make the payments required by this Plan.

2.6     Disclosure regarding Status of Claim Objections

Asia Pacific is continuing to evaluate potential objections to Claims consistent with the deadlines and requirements in this Plan. Asia Pacific is also considering the cost to the Estate of prosecuting an objection balanced against the benefit if such objection is sustained. Asia Pacific reserves the right to initiate any objection to a Claim in the future in accordance with the provisions of this Plan.

2.7     Voting to Accept or Reject the Plan

If you are entitled to vote, enclosed with this Plan is a ballot for your use in voting to accept or reject the Plan. Asia Pacific encourages you to vote to accept the Plan. In order for your vote

22989651.v7

---

to count, your properly completed and executed ballot must be received no later than **11:59 p.m. on November 3, 2023,** at the office of Asia Pacific's local counsel in Guam:

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

Ballots may be sent by any method, including e-mail, that causes them to be timely delivered.

The Court shall conduct the Confirmation Hearing regarding confirmation of the Plan on **November 21, 2023, at 8:00 a.m. (CHST), at 520 W. Soledad Avenue, 4th Floor, Hagåtña, Guam,** or as the Court directs and as will be indicated in the applicable notice of hearing that you will receive. The Confirmation Hearing may be continued by the Court from time to time, including on the record in open court. All objections to the Plan must be Filed no later than **November 3, 2023** (the "Confirmation Objection Deadline").

**EACH CREDITOR SHOULD NOTE THAT IF ANY CLASS OF CLAIMS SHOULD FAIL TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, THE BANKRUPTCY COURT MAY NONETHELESS ENTER AN ORDER CONFIRMING THE PLAN. THE REQUIREMENTS FOR OBTAINING SUCH AN ORDER ALLOW THE BANKRUPTCY COURT TO ENTER SUCH AN ORDER IF, AFTER NOTICE AND A HEARING, THE BANKRUPTCY COURT FINDS THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO ANY IMPAIRED CLASS OF CLAIMS OR INTERESTS WHICH HAS NOT ACCEPTED THE PLAN. IF ANY CLASS OF CLAIMS FAILS TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, ASIA PACIFIC SHALL SEEK SUCH AN ORDER CONFIRMING THE PLAN NOTWITHSTANDING THE FAILURE OF AN IMPAIRED CLASS TO ACCEPT THE PLAN.**

2.8     Tax Consequences of the Plan

The federal, state, and local tax consequences of the Plan may be complex and, in some cases, uncertain. Such consequences may also vary based upon the individual circumstances of each Holder of a Claim or Interest. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN. THIS PLAN MAY NOT BE RELIED UPON FOR, AND SHALL NOT BE DEEMED TO CONSTITUTE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN. Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any distributions under the Plan.

22989651.v7

## Classification of Claims and Interests

Each Holder of: (a) a Claim against Asia Pacific and/or the Estate of whatever nature, whether or not scheduled and whether unliquidated, absolute, or contingent, including all Claims arising from the rejection of leases and Executory Contracts; or (b) any Interests in Asia Pacific, shall be bound by the provisions of the Plan, and all such Claims and Interests are hereby classified as follows:

3.1 **Unclassified Claims** shall consist of: (A) all Allowed Administrative Claims, including, without limitation, Allowed Professional Fees and Expenses; and (B) the Allowed Subchapter V Trustee Claim. Unclassified claims are not being restructured and, therefore, are not entitled to vote on the Plan. The Bankruptcy Code requires that, to the extent Allowed, such Unclassified Claims must be paid in full upon the date when a chapter 11 plan becomes effective, unless otherwise agreed.

3.2 **Class One** shall consist of all Allowed Unsecured Claims, including, without limitation, (i) the Phillips Claim, and any (ii) any Rejection Damages Claims. There are no known Rejection Damages Claims at this time.

3.3 **Class Two** shall consist of the Interests in Asia Pacific as of the Petition Date.

**If you believe that you hold a Claim or Interest that is not provided for property in this Plan, then you must timely file an Objection to confirmation or the Court may approve the proposed treatment of your Claim or Interest or lack of any treatment for such Claim or Interest.**

## ARTICLE IV

### Treatment of Claims and Interests

A. **Unclassified Claims**

4.1 **Unclassified Claims.** Unclassified Claims are unimpaired and subject to the following treatment.

(A) All Allowed Administrative Claims shall be paid in full in Cash, unless payment terms are subject to a separate Order of the Bankruptcy Court: (a) on the later of the Effective Date or within 14 calendar days after the date on which each such Claim is Allowed, or as soon as is reasonably practicable thereafter; or (b) in accordance with such terms as may be agreed upon by Asia Pacific and each such Holder of an Allowed Administrative Claim. Except as provided for in subparagraph (B) of this

22989651.v7

---

Section 4.1, any party in interest asserting an Administrative Claim shall be required to file a motion or application seeking allowance of such Administrative Claim no later than the Post-Petition Bar Date, subject to the Bankruptcy Court's ordinary notice and objection procedures.

(B) This subparagraph provides the treatment for Holders of Claims for administrative costs or expenses that are incurred in the ordinary course of Asia Pacific's operations and that allowable under section 503(b) of the Bankruptcy Code (each an "Ordinary Course Administrative Claim"). The term Ordinary Course Administrative Claim does not include Claims relating to the costs of curing a default under an executory contract or unexpired lease to be assumed by Asia Pacific, Professional Fees and Expenses, or the Subchapter V Trustee Claim. Each Ordinary Course Administrative Claim, unless disputed by Asia Pacific, shall be satisfied by Asia Pacific under the terms and conditions of the particular transaction giving rise to that Ordinary Course Administrative Claim (including historic practice between the parties), without any further action by the Holder of such Ordinary Course Administrative Claim. Asia Pacific will include a list of all unpaid Ordinary Course Administrative Claims with its Notice of the Effective Date (as that term is defined in this Plan) and shall pay such Ordinary Course Administrative Claims in the ordinary course of business without the Holders of such Ordinary Course Administrative Claims being required to seek relief from the Court.

B. **Classified Claims**

The treatment of classified Claims under the Plan shall be as follows:

4.2 **Class One — Allowed Unsecured Claims.** **The Claims in Class One are impaired and entitled to vote on the Plan, pursuant to section 1126 of the Bankruptcy Code.** In full and final satisfaction of the Allowed Claims in Class One, Asia Pacific shall provide the following treatment to the Holders of each Allowed Claim in Class One: (A) in the event that Class One accepts the Plan, then Asia Pacific shall provide a single payment to each Holder of an Allowed Claim in Class One equal to a Pro Rata distribution of $812,373.10; or (B) in the event that Class One does not accept the Plan, then Asia Pacific shall pay the Holder of each Allowed Claim in Class One a Pro Rata distribution, not to exceed 100% of any Allowed Claim, of the net Liquidation Value set forth in the Liquidation Analysis. Except as otherwise agreed between Asia Pacific and the Holder of any Allowed Claim, payments shall be made as follows:

In the event that this Plan is accepted by Class One, then the payments provided for herein shall be made on the later date of the Effective Date or November 1, 2023; or

22989651.v7

In the event that this Plan is not accepted by Class One, then the payments provided for herein shall be made within 14 days all Objections to Claims are resolved by entry of a Final Order or agreement of the applicable parties or as soon as is reasonably practicable thereafter.

The Class One Claims shall not accrue or be paid interest.

4.3    **Class Two — Interests in Asia Pacific.**   **The Interests in Class Two are unimpaired and are not entitled to vote on the Plan, pursuant to section 1126(f) of the Bankruptcy Code.** The Holders of Interests in Class Two as of the Petition Date shall retain their Interests under this Plan. All Interests shall be reinstated and, to the extent necessary, those certain Amended and Restated Articles of Incorporation of Asia Pacific Financial Management Group, Inc., (as the same may have been or may be amended from time to time) are assumed and reinstated.

**ARTICLE V**

**Allowance and Disallowance of Claims**

5.1    **Prepetition Claims and Amendments.** Each Claim as to which a proof of claim is required to be filed on or before the Bar Date as to which a proof of claim was not filed on or before such Bar Date shall not under any circumstances become an Allowed Claim, except as may otherwise be provided for herein. In no event shall the Allowed Amount of any Claim against Asia Pacific exceed the amount set forth in a proof of claim filed on or before the Bar Date, as each is applicable, unless the claimant, in its proof of claim, expressly reserved the right to amend such proof of claim.

5.2    **Objections.** Any and all Claims (other than Claims subject to the Post-Petition Bar Date), which have **not** been scheduled by Asia Pacific as contingent, unliquidated, or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be Allowed in full, unless an objection to such Claim or interest is filed on or before the Claims Objection Deadline — provided, however, that the Phillips Claim shall be Allowed immediately upon the Effective Date. Claims have been objected to and not Allowed shall have no right to vote with respect to acceptance or rejection of this Plan, except as otherwise ordered by the Court.

5.3    **Bar Date for Objection to Post-Petition Claims.** Any Claim entitled to priority under section 507(a)(2) of the Bankruptcy Code arising before the Confirmation Date and still outstanding 60 days thereafter shall forever be barred, **unless** it is the subject of a motion or, in the case of a Claim for Professional Fees and Expenses, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date. Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-Petition Bar Date or such other date as is provided by order upon motion of Asia Pacific, **except** that Claims for Professional Fees and Expenses, as well as the Subchapter V Trustee Claim, shall be Allowed only by order of the Bankruptcy Court.

**ARTICLE VI**

**Interests to be Retained and Rights to be Exercised**

6.1    **Preservation of All Causes of Action.** Except as otherwise provided in the Plan, or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b), Asia Pacific and/or the Estate shall retain and preserve and shall be vested with, retain, and may enforce and prosecute any claims or Causes of Action that Asia Pacific and/or the Estate may have against any person or entity that constitute a Cause of Action. Asia Pacific shall have standing as a representative of the Estate for the purposes of investigating, pursuing, prosecuting, setting, collecting, liquidating, and/or recovering any assets, claims or causes of action that constitute Causes of Action.

**ARTICLE VII**

**Means of Financing the Plan; Plan Distributions; Remedies; and Other Relief Afforded under the Plan**

7.1    **Financing of Plan Obligations.** The payments required under the Plan shall be made primarily from the following sources: (a) cash on hand; (b) the proceeds generated from the ongoing operation of Asia Pacific's businesses; (c) a shareholder loan, as reflected in the Cash Projections; (d) the proceeds of any Causes of Action and Claims which Asia Pacific and/or the Estate have brought and/or may elect to bring, including without limitation, any proceeds of such Causes of Action; and (e) the proceeds of the sale of the Assets. Please see the Cash Projections for further information.

7.2    **Manner of Distribution.** Any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, ACH, or by wire transfer (or by any manner agreed to between Asia Pacific and the Holder of an Allowed Claim) and shall be made in United States funds. Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

7.3    **De Minimis Distributions.** "De Minimis Distributions" shall refer to any distribution to a Holder of an Allowed Claim or Interest under the Plan of less than $100.00. All De Minimis Distributions shall be held by Asia Pacific for the benefit of the Holders of Allowed Claims or Interests entitled to De Minimis Distributions. If the aggregate amount of De Minimis Distributions exceeds $100.00, Asia Pacific shall distribute such De Minimis Distributions to such Holder of the Allowed Claim or Interest, and the De Minimis Distributions shall be retained by Asia Pacific in the event that the De Minimis Distributions does not exceed $100.00.

7.4    **Delivery of Distributions.** Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by Asia Pacific: (i) at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holder if no motion

requesting payment or proof of claim is filed or Asia Pacific has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to Asia Pacific after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by Asia Pacific if no proof of claim has been filed and Asia Pacific has not received a written notice of a change of address.

7.5 **Undeliverable Distributions.** If payment or distribution to any Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, Asia Pacific shall file with the Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of 90 days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the Holder shall be distributed to the Holders in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

7.6 **Time Bar to Cash Payments.** Checks issued by Asia Pacific in respect of distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within 120 days of the date of their issuance, and Asia Pacific shall have no obligation to reissue such check after the 120-day deadline.

7.7 **Plan Defaults and Remedies.** In the event any party claims that Asia Pacific is in default of any obligation of Asia Pacific under the terms of the Plan, including any claim that Asia Pacific failed to make any payment required by the terms of the Plan, such party shall provide Asia Pacific with written notice setting forth, in specific terms, the alleged default. A copy of such notice shall also be provided to Asia Pacific's counsel at jtang@civilletang.com and andrew.helman@dentons.com and sent by United States Mail, postage prepaid, as follows:

To Asia Pacific:

Sandra McKeever
Asia Pacific Financial Management Group, Inc.
145 Aspinall Avenue
Hagåtña, GU 96910

To Counsel:

Joyce C.H. Tang
Civille & Tang, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, GU 90910

and

Andrew C. Helman
Dentons Bingham Greenebaum, LLP
One City Center, Suite 11100
Portland, ME 04101

22981651.v7

All such notices shall be deemed received on the date sent by electronic mail, provided a return receipt is received, or three days after placed in the United States Mail. Asia Pacific shall have 15 business days from receipt of such notice to cure the default. In the event that Asia Pacific fails to cure the default within the 15-business-day period, the party claiming the default shall be free to pursue its remedies against Asia Pacific under applicable non-bankruptcy law, and Asia Pacific shall have the right to assert as a defense that no default occurred. No default shall be deemed to exist under the Plan until such time as: (i) the written notice has been provided as required herein, and (ii) Asia Pacific has failed to respond or cure the default as provided for by the terms herein.

7.8 **Setoffs and Recoupments.** Asia Pacific may, pursuant to sections 502(h), 553, and 558, or applicable non-bankruptcy law, but shall not be required to, offset against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever that Asia Pacific may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by Asia Pacific and/or the Estate of any right of offset or recoupment that Asia Pacific and/or the Estate may have against the Holder of such Claim, nor of any other claim or Cause of Action.

7.9 **Distributions in Satisfaction; Allocation.** Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and interests in Asia Pacific and/or the Estate and/or the Assets of Asia Pacific and/or the Estate, whether known or unknown, arising or existing prior to the Effective Date.

22981651.v7

7.10 **Cancellation of Notes and Instruments.** As of the Effective Date, all notes, agreements, and securities evidencing Claims and Interests and the rights thereunder of the Holders thereof, shall, with respect to Asia Pacific, be cancelled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against Asia Pacific and/or the Estate, and such Liens shall be discharged automatically and without further action by Asia Pacific upon the Effective Date, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Plan, provided, however, that Asia Pacific shall be authorized, but not required, to file or record such notice(s) of discharge to reflect the relief in the Plan after the Effective Date. The foregoing sentence shall not apply to any Contract assumed pursuant to the Contracts Schedule nor to contravene any other express provision of the Plan.

7.11 **No Interest on Claims.** Unless otherwise specifically provided for in the Plan or the Confirmation Order, or a postpetition agreement in writing between Asia Pacific and a Holder of a Claim and approved by an order of the Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any claim which is not an Allowed Claim (a "Disputed Claim") in respect of the period from the Confirmation Date to the date the first distribution is made when and if such Disputed Claim becomes an Allowed Claim. No payments shall be made to the Holder of a Disputed Claim

22981651.v7

7.12  **Cram Down.** In the event that any class Allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the Plan, Asia Pacific shall move the Court to confirm the Plan pursuant to section 1191(b) of the Bankruptcy Code.

7.13  **Settlement of Claims.** Asia Pacific may enter into settlement agreements with one or more of the Holders of Claims against Asia Pacific or the Estate, provided that the settlement provides a net benefit to Asia Pacific, in its sole business judgment, and helps foster performance under the Plan. Asia Pacific shall be authorized to enter into the foregoing arrangements after the Effective Date without further order of the Court.

7.14  **Asia Pacific Shall Directly Make All Distributions Required Under the Plan.** Notwithstanding the provisions of section 1194(b) of the Bankruptcy Code, and in the absence of a subsequent order of the Court to the contrary, all payments provided for under the Plan and made hereunder shall be made by Asia Pacific and not by the Subchapter V Trustee. In the event that the Court orders Asia Pacific to make distributions through the Subchapter V Trustee, the Subchapter V Trustee's compensation and commission for effecting such distributions shall be determined by further order of the Court after an opportunity for notice and hearing to Asia Pacific and all other parties in interest.

7.15  **Internal Revenue Service.** As of the filing of the Plan, Asia Pacific is current with filing all payroll tax returns and payment of the required taxes under the payroll tax returns. Asia Pacific also has filed all federal income tax returns as of the filing of the Plan, subject to any applicable extensions. Following the Effective Date, Asia Pacific shall: (i) make all required federal tax deposits for all payroll tax returns as they come due under applicable non-bankruptcy law; and (ii) file all required federal tax returns on or before the date such returns are due under applicable non-bankruptcy law (including any extensions). In the event that Asia Pacific fails to comply with (i) and (ii) after the Effective Date, then Asia Pacific shall be obligated to rectify such discrepancies through applicable non-bankruptcy channels within the IRS, and Asia Pacific shall be subject to collection actions by the IRS pursuant to applicable non-bankruptcy. The foregoing obligations include any future tax liabilities that may arise after the Effective Date in the event of an examination or audit of a tax return. In the event that a tax liability arises after the Effective Date from an examination or audit of a tax return for any prepetition time period, then Asia Pacific shall address such audit or examination results through non-bankruptcy channels within the IRS.

**ARTICLE VIII**

**Approval of Settlement and Settlement Agreement**

8.1  **Settlement with Michael Phillips.** Pursuant to section 1123 and Bankruptcy Rule 9019, the Plan incorporates a Settlement of both the Phillips Claim against Asia Pacific and of Asia Pacific's Causes of Action against Michael Phillips to achieve an economic and efficient

resolution of this Chapter 11 Case. The Settlement, as read into the record of the Chapter 11 Case and as further memorialized in the Settlement Agreement, are further described in sections 2.2 and 2.3 of this Plan. The terms of the Settlement are sealed by order of the Court [D.E. 132], except for terms related to payment under this Plan. Pursuant to the Settlement, Asia Pacific has agreed to pay Mr. Phillips $900,000.00 (the "Settlement Amount")[6] in settlement of the Phillips Claim and related disputes, including the "Released Claims" as defined in the Settlement Agreement.[6] Such "Released Claims" include (A) any and all claims that Mr. Phillips may have against Ms. Sandra McKeever and, among others, any current or former director, officer, or employee, or investment advisor of Asia Pacific and (B) and claims that Asia Pacific or Ms. McKeever may have against Mr. Phillips, his assigns, representatives, agents, heirs, and attorneys. The Settlement Amount will be paid to Mr. Phillips in two lump sum payments: (a) $800,000.00, to be paid on the later date of the Effective Date of this Plan or November 1, 2023;[7] and (b) $100,000.00, to be paid on or before December 31, 2024.

The entry of the Confirmation Order shall constitute the Court's approval under Bankruptcy Rule 9019 of the Settlement and Settlement Agreement between Asia Pacific and Mr. Phillips, including the granting of releases comprising the "Released Claims.[8]" The Bankruptcy Court's findings shall constitute its determination that such compromise and settlement is in the best interests of Asia Pacific, its Estate, Asia Pacific's creditors, and other parties-in-interest, and is fair, equitable, and within the range of reasonableness.

8.2  **Approval of the Settlement Upon Confirmation of the Plan.** Settlements between a debtor in possession and a third party affecting the property of a debtor's estate are subject to court approval. *See Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F. 3d 1036, 1039 (9th Cir. 2016) ("[S]ettlement between an estate and its creditors must be approved by the bankruptcy court under Rule 9019."). Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019. "Compromises and settlements are favored in bankruptcy." 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2023) (citing *Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993)).

To be approved, a proposed settlement must be the product of good faith negotiation between the settling parties, and must be "fair and equitable." *Martin v. Kelly (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). A court need not conduct "an exhaustive investigation or mini-trial on the merits of a settlement[.]" *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). "[T]he court's proper role is 'to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *Id.* (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493, 496–97 (Bankr. S.D.N.Y. 1991)). In making these

---

6  A copy of the Settlement Agreement will be filed with the Court under seal. As noted, the Settlement has been ordered sealed by the Court [D.E. 132].

7  In the event that the Plan is not accepted and Asia Pacific will pay the Settlement Amount to Mr. Phillips on the terms set forth in the Settlement and Settlement Agreement.

8  There are no non-consensual third-party releases included in the Settlement. All releases are fully consensual among the affected parties.

determinations, a court must consider the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *A&C Props.*, 784 F.2d at 1381.

Section 1123(b) of the Bankruptcy Code sets out certain permissive provisions that may be included in a chapter 11 plan, including "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. §§ 1123(b)(3)(A) & (b)(6). Settlements under section 1123(b) are evaluated by the same standard applied by courts under Bankruptcy Rule 9019. *See, e.g., In re NII Holdings, Inc.*, 536 B.R. 61, 98 (Bankr. S.D.N.Y. 2015).

Asia Pacific submits that in this case the Settlement and Settlement Agreement meet the standard for approval under Bankruptcy Rule 9019 and should be approved. The Settlement was negotiated in good faith in the Mediation. The Settlement is fair and equitable, is in the best interest of creditors and the estate, and is a reasonable and economical resolution of the disputes between Asia Pacific and Mr. Phillips. In reaching the Settlement, Asia Pacific carefully evaluated its probability of success if its various disputes with Mr. Phillips were fully litigated to conclusion, as well as the likelihood that such litigation would come at the cost of considerable time, expense, and continued interruption to Asia Pacific and its business.

Although Asia Pacific believes that it has strong positions with respect to issues including the Motion to Vacate, Motion to Dismiss, dischargeability of Claims pursuant to section 523 of the Bankruptcy Code, and the Liquidation Value of its business, continued litigation of each these issues is inherently uncertain. If Asia Pacific is ultimately unsuccessful litigating one or more of these issues, then the result could have negative impacts on Asia Pacific's business and ability to continue serving its Clients. What is more, even a successful resolution of these issues would likely involve several months of protracted and contentious discovery, motions practice, and trial preparation, and would significantly increase Asia Pacific's legal and administrative costs in in connection with this Chapter 11 Case. Further, the Chapter 11 Case has placed a significant burden on Asia Pacific and its officers and employees, who have been required to commit substantial time and energy to various issues that have arisen during the Chapter 11 Case. Asia Pacific determined that reaching a consensual resolution of disputes with Mr. Phillips as contemplated by the Settlement would ultimately minimize costs and business interruptions by permitting Asia Pacific to emerge from bankruptcy more quickly than otherwise able.

Lastly, Asia Pacific believes that no creditors or other parties in interest will be harmed by the Settlement. Indeed, as a result of the Settlement, Holders of Unsecured Claims are set to receive distributions under the Plan that are larger than the distributions initially proposed by Asia Pacific. Accordingly, Asia Pacific believes that creditors and the estate will receive substantial benefits as a result of the Settlement, and requests that the Settlement and Settlement Agreement be approved pursuant to Bankruptcy Rule 9019 upon confirmation of the Plan.

**ARTICLE IX**

**Executory Contracts and Unexpired Leases**

9.1    **Assumption/Rejection of Certain Executory Contract and Unexpired Leases.** As of the Effective Date, all Contracts of Asia Pacific shall be assumed except for those set forth on the Rejected Contract Schedule attached as **Exhibit 3**, which shall be rejected. Asia Pacific has not identified any amounts comprising Cure Amount Claims and, therefore, no Cure Amount Claims are proposed or required to be paid for assumption to occur as of the Effective Date, except as otherwise ordered by the Bankruptcy Court.[9] Among the Contracts assumed are contracts with Asia Pacific's registered investment advisor representatives on terms consistent with Asia Pacific's longstanding pre-bankruptcy practices and Asia Pacific's investment advisory agreements with its Clients, to the extent not previously terminated in accordance with applicable non-bankruptcy law. Assumption of such contracts is necessary for continuing business operations.

9.2    **Rejection Damages Claims.** Any Claim for damages arising from the rejection or deemed rejection of any Contract must be filed on or before the Post-Petition Bar Date or by such other date and time specified by the Court. If no such Claim is timely filed, then such Claim shall be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be classified as Allowed Unsecured Claims under Class One of the Plan.

**ARTICLE X**

**Effect of Confirmation, Discharge and Injunction**

10.1    **Discharge.** If the Plan is confirmed under section 1191(a), on the Confirmation Date of this Plan, Asia Pacific shall be discharged from any debt, Claim, or other obligation that arose before entry of the Confirmation Order, subject to the occurrence of the Effective Date, to the extent specified in section 1141(d) of the Bankruptcy Code. If, however, the Plan is confirmed under section 1191(b), as soon as practicable after completion by Asia Pacific of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by Asia Pacific after the order for relief, the Court shall grant Asia Pacific a discharge of all debts and Claims provided in section 1141(d)(1)(A), and all other debts and Claims Allowed under section 503 of the Bankruptcy Code and provided for in this Plan, except any debt or Claim on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the Court.

10.2    **Injunction.** Except as otherwise expressly provided in this Plan, the documents executed pursuant to this Plan or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in Asia Pacific, the Assets, or the Estate that arose prior to the Confirmation Date (including, but not limited to, federal, state and other governmental units

_____

[9]    Asia Pacific reserves the right to amend the Rejected Contract Schedule according to section 1193 of the Bankruptcy Code.

or agents working on any of their behalf, and any federal or state official, employee, or other entity acting in an individual or official capacity on behalf of any federal, state or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against Asia Pacific or the Estate, or any Assets of Asia Pacific of the Estate; (ii) enforcing, attaching, executing, collecting, perfecting, or enforcing, directly or indirectly, any judgment, award, decree, or order against Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or Encumbrance of any kind against Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan, including the Settlement Agreement. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IX shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of Asia Pacific under this Plan. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against Asia Pacific or any Assets of Asia Pacific based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan.

10.3 **Term of Injunctions.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, shall remain in full force and effect until the entry of the Confirmation Order and occurrence of the Effective Date.

10.4 **Exculpation.** Neither Asia Pacific, nor any of its respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in relation to the Chapter 11 Case, including in the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this section shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI

### Retention of Jurisdiction

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the Court shall retain jurisdiction with respect to the following matters after the Confirmation Date:

a) To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or Interest, including, without limitation, any Administrative or Priority Claim;

b) To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

c) To liquidate damages in connection with any disputed, contingent, or unliquidated Claims;

d) To adjudicate all Claims to, or ownership of any Assets of, Asia Pacific or in any proceeds thereof arising prior to and after the Effective Date;

e) To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken prior to the Effective Date;

f) To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

g) To hear and determine any and all Causes of Action;

h) To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses, the Subchapter V Trustee Claim, and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

i) To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

j) To adjudicate any motions to turn over Assets to Asia Pacific;

k) To adjudicate any and all controversies and disputes arising under or in connection with the Plan or any order or document entered or approved by the Court in connection with Asia Pacific, the Chapter 11 Case, or any controversy or dispute which may affect Asia Pacific's ability to implement or fund the Plan; and

l) To hear and determine such other matters as the Court in its reasonable discretion shall deem appropriate.

## ARTICLE XII

## General Provisions

12.1 **Construction.** The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretation of this Plan.

12.2 **Severability.** Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.3 **Controlling Documents.** In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with the provisions of any other agreement, document, or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.

12.4 **Governing Law.** Except to the extent that the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other controlling federal statutes or laws, are applicable, the rights and obligations arising under this Plan and any documents, instruments or agreements executed in connection with this Plan (except as otherwise indicated in such documents, instruments and agreements), shall be governed by, and construed and enforced in accordance with, the internal laws of the Territory of Guam.

12.5 **Binding Effect.** Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or interest in, Asia Pacific and its respective successors and assigns, whether or not the Claim or interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan. The rights, benefits, and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for Asia Pacific under chapters 7 or 11 of the Bankruptcy Code).

12.6 **The Assets.** On the Effective Date, the Assets shall vest in Asia Pacific in accordance with section 1141(b) of the Bankruptcy Code. On and after the Confirmation Date, and subject to compliance with the terms of this Plan, Asia Pacific may, without further approval of the Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of it a public or private sale any of the Assets for the purpose of liquidating and converting such Assets to Cash, making distributions, and fully consummating the Plan.

29

22898651.v7

12.7 **Exemption from Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any leases or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to any of the Assets, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any tax to the fullest extent Allowed under section 1146 of the Bankruptcy Code.

12.8 **Further Assurances and Cooperation.** Asia Pacific, and each person required or contemplated by this Plan to execute and deliver a written instrument, agreement, or document, shall execute and deliver such instrument, agreement or document in form and substance satisfactory to Asia Pacific and shall perform all other and further reasonable acts requested by Asia Pacific, in order to permit the purposes and intents of this Plan to be consummated.

12.9 **Termination of Subchapter V Trustee.** The service of the Subchapter V Trustee shall terminate upon Substantial Consummation of the Plan, except that the United States Trustee may reappoint a trustee as needed for performance of duties under section 1183(b)(3)(C) and section 1185(a) of the Bankruptcy Code. Not later than 14 days after Substantial Consummation, Asia Pacific shall file with the Court and serve on the Subchapter V Trustee and the United States Trustee notice of such Substantial Consummation, occurrence of the Effective Date, and termination of the Subchapter V Trustee's services.

12.10 **Closing of Chapter 11 Case.** The Chapter 11 Case shall be deemed closed at such time as the order closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code has been entered by the Court.

12.11 **Management Post-Confirmation.** Upon confirmation of the Plan, Asia Pacific's existing management team shall continue to operate the businesses and control the Assets of Asia Pacific on a day-to-day basis. Nothing in this Plan shall prohibit or limit the ability of Asia Pacific to change members of its management team or make other operational or management changes in the ordinary course.

12.12 **Employee Benefit Plans and Programs.** Entry of the Confirmation Order shall, to the extent necessary, authorize Asia Pacific to maintain or, to the extent necessary, assume and perform all obligations with respect to any Employee Benefit Plans and Programs.

12.13 **No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan or any exhibits hereto shall be deemed an admission by Asia Pacific or the Estate with respect to any matter set forth herein, including, without limitation, liability on any Claim or interest or the propriety of the classification of any Claim or interest.

30

22898651.v7

# ARTICLE XIII

## Modification of the Plan

Asia Pacific may modify the Plan in accordance with section 1193 of the Bankruptcy Code and other applicable law.

# ARTICLE XIV

## Conditions Precedent to Effective Date

14.1    **Conditions Precedent**. Subject to Article 14.2, the Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions precedent have occurred: (i) the Confirmation Order is a Final Order; and (ii) Asia Pacific has begun making the distributions required under the Plan as of the Effective Date (excluding Allowed Professional Fees and Expenses and the Allowed Subchapter V Trustee Claim). In the event that the conditions precedent in Article 13.1 have not been met by the Confirmation Date or waived by Asia Pacific, then the Effective Date shall occur immediately upon satisfaction of such conditions thereafter.

14.2    **Waiver**. Asia Pacific may, in its discretion, waive some or all of the conditions precedent to the Effective Date set forth in Article 14.1. Notice of any such waiver shall be filed on the docket in the Chapter 11 Case.

Dated: September 15, 2023

Respectfully submitted,

**ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.**

*/s/ Sandra McKeever*

By: Sandra McKeever
Its: CEO and Authorized Representative

Through its counsel:

*/s/ Andrew C. Helman*

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
254 Commercial Street, Suite 245
Portland, Maine 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

22898651v7

22898651v7

**EXHIBIT 1**

(Pro Forma)

| Asia Pacific - 3-Year Proforma | 2024 | 2025 | 2026 |
|---|---|---|---|
| **Revenues** | | | |
| Investment Advisory Fees | 1,952,335.46 | 2,011,049.52 | 2,011,049.52 |
| Other Income | 4,800.00 | 4,800.00 | 4,800.00 |
| **Total Revenues** | **1,957,135.46** | **2,015,849.52** | **2,015,849.52** |
| **Operating Expenses** | | | |
| RIA/IA Commissions | 1,186,141.52 | 1,221,725.76 | 1,221,725.76 |
| Employee Compensation & Benefits | 441,126.96 | 441,126.96 | 441,126.96 |
| Other Operating Expenses | 197,480.00 | 197,480.00 | 197,480.00 |
| Contingency Reserve | 25,000.00 | 25,000.00 | 25,000.00 |
| Occupancy and Equipment | 62,400.00 | 62,400.00 | 62,400.00 |
| Taxes and License | 18,300.00 | 18,300.00 | 18,300.00 |
| Depreciation | 24,000.00 | 24,000.00 | 24,000.00 |
| Technology and Communications | 6,060.00 | 6,060.00 | 6,060.00 |
| **Total Operating Expenses** | **1,960,508.48** | **1,996,092.72** | **1,996,092.72** |
| **Net Income/Loss** | **(3,373.02)** | **19,756.80** | **19,756.80** |

**Sources and Uses for Plan Payments and Disposable Income**

Sources of Funds for Plan Payments

Projected Disposable Income (Net Income 2024, 2025, 2026)    36,140.58

Projected Disposable Income insufficient to provide dividend to Allowed Class 2 Claims due to administrative expenses.

Case 23-00005    Document 144    Filed 10/13/23    Page 58 of 116

# EXHIBIT 2
## (Liquidation Analysis)

### PROPOSED LIQUIDATION ANALYSIS
Hypothetical Liquidation Date of November 1, 2023

| | Note | Low | Proceeds High | Average |
|---|---|---|---|---|
| **Assets for Liquidation** | | | | |
| Cash | | 100,000.00 | 250,000.00 | 175,000.00 |
| RBC Investment Account | | 340,000.00 | 385,000.00 | 362,500.00 |
| Accounts Receivable | Investment Advisory Fees | 150,000.00 | 198,000.00 | 174,000.00 |
| Client List | | 1.00 | 67,107.51 | 33,554.26 |
| **Sub-Total (Gross Proceeds from Liquidation)** | | **590,001.00** | **900,107.51** | **745,054.26** |
| **Administrative Expenses** | | | | |
| Trustee Fee | 11 U.S.C. s. 326 | 40,250.00 | 55,400.00 | 47,825.00 |
| Counsel for Trustee | | 15,000.00 | 35,000.00 | 25,000.00 |
| Wind Down Fees | Please see details below | 90,000.00 | 140,000.00 | 115,000.00 |
| Contingency Reserve | | 15,000.00 | 20,000.00 | 17,500.00 |
| Capital Gain Tax on RBC account liquidation | | 7,000.00 | 7,500.00 | 7,250.00 |
| **Chapter 11 Administrative Expenses** | | | | |
| Subchapter V Trustee | | 8,500.00 | 15,000.00 | 11,750.00 |
| RMA Payable | Balance from reduced RMA Payments during the case | 112,000.00 | 120,000.00 | 116,000.00 |
| RMA Contractual Payments | Amounts owed as of hypothetical conversion | 90,909.00 | 119,999.88 | 105,454.44 |
| Open Payroll/PTO (1 pay period) | Includes projected open payroll and priority/post-petition PTO | 18,000.00 | 26,000.00 | 22,000.00 |
| Open Operating Expenses/Costs | | 15,000.00 | 20,000.00 | 17,500.00 |
| Professional Fees Dentons* | | 150,000.00 | 215,000.00 | 182,500.00 |
| Professional Fees Civile & Tang* | | 30,000.00 | 50,000.00 | 40,000.00 |
| **Sub-Total (Administrative Expenses)** | | **591,659.00** | **823,899.88** | **707,779.44** |
| **Total (Net Proceeds Available to Creditors)** | | **(1,658.00)** | **76,207.63** | **37,274.82** |

| WIND DOWN FEES | |
|---|---|
| Tail Coverage Insurance | 6,000.00 |
| Destruction of Physical Records | 20,000.00 |
| Destruction of Electronic Records | 15,000.00 |
| Post-conversion rent | 6,800.00 |
| Taxes | 25,000.00 |
| Registration Terminations | 5,000.00 |
| FINRA/SEC | |
| 401(k) and Pension Plan Termination | 7,000.00 |
| Personnel to assist wind-down) | 15,000.00 |
| Office Utilities | 1,700.00 |
| **TOTAL** | **101,500.00** |

* Estimated amount without factoring in further significant disputes. Professional fees to be paid pursuant to the Bankruptcy Code. All rights reserved.

23000307-v.1
23000307-v.4

22898651.v6

EXHIBIT 3

(Cash Projection)

## Asia Pacific – 2023 CASH PROJECTIONS

| | September | October | November | December |
|---|---|---|---|---|
| Ending Cash Balance as of August 31st BOH Acct | 361,333.00 | | | |
| Ending RBC Reserve Account Balance as of August 31st | 378,425.00 | | | |
| **Revenues** | | | | |
| Investment Advisory Fees | 25,000.00 | 210,000.00 | 285,000.00 | 25,000.00 |
| Other Income | | | | |
| **Total Revenues** | 25,000.00 | 210,000.00 | 285,000.00 | 25,000.00 |
| **Operating Expenses** | | | | |
| RRIA Commissions | 35,000.00 | 45,100.00 | 61,100.00 | 16,100.00 |
| Pension Plan | | | | |
| Employee Compensation & Benefits | 37,582.00 | 37,582.00 | 37,582.00 | 37,582.00 |
| Other Operating Expenses | 10,841.00 | 10,841.00 | 10,841.00 | 10,841.00 |
| Occupancy and Equipment | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 |
| Taxes and License | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Technology and Communications | 545.00 | 545.00 | 545.00 | 545.00 |
| Sub V Trustee Fees and Contingency Reserve | 6,000.00 | | | |
| **Total Operating Expenses** | 97,368.00 | 101,468.00 | 117,468.00 | 72,468.00 |
| **Net Income/Loss** | (72,368.00) | 108,532.00 | 167,532.00 | (47,468.00) |
| **Cash Projection for November 1st** | | | 943,454.00 | |
| **Plan Payments (projected payment date)** | | | | |
| Unclassified Claims | | | | |
| Professional Fees (Dentons and Civille & Tang)* | | | 180,000.00 | |
| Subchapter V Trustee* | | | 11,750.00 | |
| RRIA Payable | | | 25,000.00 | |
| Allowed Class 1 Claims (Pro Rata Share of Liquidation Value)** | | | 813,580.41 | |
| **Total Plan Payments** | | | 1,030,330.41 | |
| Shareholder Loan (cash)*** | | | | 50,000.00 |
| Shareholder Loan (deferred RRIA Payments)*** | | | 90,000.00 | 388,200.00 |
| **Projected Monthly Cash Position (includes cash and cash equivalents)** | 667,390.00 | 775,922.00 | 3,123.59 | 5,655.59 |

*This cash projection is subject to modifications if additional information becomes available.*

* Estimated amount from Liquidation Analysis without factoring in further significant disputes. Professional fees to be paid pursuant to the Bankruptcy Code and may differ. All rights reserved to professionals.

* Estimated dividend of about 18.5%. Projected Disposable Income produced zero recovery for Allowed Class 1 Claims. Distribution exceeds liquidation value.

*** Shareholder loan to be repaid on terms to be negotiated between the shareholder and Asia Pacific. Loan comprised of cash and deferred payments to shareholder.

23980267-1 / 23980267-v4
22989651.v6

**EXHIBIT 4**

(Rejected Contracts)

**RESERVED**

22898651.v6

22898651.v6

JOYCE C.H. TANG
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Telephone: (671) 472-8868/69
Email: *jtang@civilletang.com*

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
254 Commercial Street, Suite 245
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*

*Counsel for the Debtor*

<div align="center">

**THE DISTRICT COURT OF GUAM**

</div>

| | |
|---|---|
| In re | Bankruptcy Case No. 23-00005<br>Chapter 11 |
| ASIA PACIFIC FINANCIAL<br>MANAGEMENT GROUP, INC., [1]<br><br><div align="center">Debtor.</div> | **ORDER REGARDING FIXING OF DEADLINES UNDER BANKRUPTCY RULE 3017.2** |

      Following a status conference held on September 27, 2023, at which Asia Pacific Financial Management Group, Inc. (the "Debtor"), Creditor Michael F. Phillips ("Mr. Phillips"), and the United States Trustee (the "UST" and together with the Debtor and Mr. Phillips, the "Parties") appeared, the court enters this Order setting plan confirmation deadlines under Rule 3017.2 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"):

      On September 15, 2023, the Debtor filed its *First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. dated September 15, 2023 with Incorporated Adequate Disclosures under Section 1190(1) of the Bankruptcy Code* [ECF No. 137] (the "Plan"). Bankruptcy Rules 2002(b), 3017.2, and 3018 and Bankruptcy Local Rules the ("Local Rules") 3018-1 and 3020-1 govern, among other things, service of a proposed plan, notice to creditors of

---

[1]     The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910

<div align="center">1</div>

a confirmation hearing regarding a plan, deadlines for filing written objections to a plan, and service thereof.

**1.      Deadline to Serve the Plan and to Provide Notice of Plan-Related Deadlines**

The Debtor shall serve holders of claims or interests entitled to vote on the Plan: (i) a copy of the Plan, with the relevant deadlines from this order having been inserted; (ii) a ballot substantially in the form proposed by the Debtor; and (iii) a copy of this order, no later than **October 6, 2023**.  The Debtor shall file a certificate of such service no later than **October 13, 2023**.

Except as provided in the following paragraph, the Debtor shall serve holders of claims or interests that are unclassified or otherwise not entitled to vote on the Plan: (i) a copy of the Plan, with the relevant deadlines from this order having been inserted; and (ii) a copy of this order, no later than **October 6, 2023**.  The Debtor shall file a certificate of such service no later than **October 13, 2023**.

The Debtor shall provide clients on its amended Schedule G: (i) a copy of this order no later than **October 6, 2023**; and (ii) notice of the date of the confirmation hearing and deadline to object to the Plan, which notice may be provided by letter.  The Debtor shall file a certificate of such service no later than **October 13, 2023**.

**2.      Deadlines for Receipt of Ballots and Certification of the Voting Results**

Holders of claims and interests may accept or reject the Plan by submitting ballots to the Debtor's counsel such that they are received no later than **November 3, 2023**.  The Debtor shall file a ballot tabulation report, as required by Local Rule 3018-1(c), no later than **November 10, 2023**.

**3.      Deadline for Objections to Confirmation and Motions under Rule 3018**

The deadline for filing and serving written objections to confirmation of the Plan is **November 3, 2023**.

23138923.v3

The deadline for motions under Rule 3018 of the Federal Rules of Bankruptcy Procedure shall be **November 8, 2023**, with any objections due by **November 15, 2023**.

**4. Confirmation Hearing**

A hearing on confirmation of the Plan will be held on **November 21, 2023, at 8:00 a.m. (CHST)**, at the District Court of Guam, 4th Floor, U.S. Courthouse, 520 West Soledad Avenue, Hagatna, Guam 96910.  If the Debtor intends to offer testimony in support of confirmation, then any affidavit that may serve as the direct testimony of a witness shall be filed no later than **November 15, 2023**.

**6. Additional Information**

Persons wishing to obtain additional information about the procedure for voting or the packet of materials they may have received in conjunction with the Plan may contact:

<div align="center">

Andrew C. Helman
Dentons Bingham Greenebaum, LLP
One City Center, Suite
11100 Portland, ME 04101

-or-

Joyce C.H. Tang
Civille & Tang, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, GU 90910

</div>

**7. Alteration of Deadlines**

The deadlines established by this order may be altered by the court on motion and after notice and opportunity for hearing.

/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Oct 04, 2023

3

23138923.v3

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF GUAM

IN RE:

  Asia Pacific Financial Management Group, Inc.

CASE NO: 23-00005

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11

On 10/5/2023, I did cause a copy of the following documents, described below,

First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc., Dated September 15, 2023 with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code

Order Regarding Fixing of Deadlines Under Bankruptcy Rule 3017.2 143

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 10/5/2023

/s/ Andrew C. Helman
Andrew C. Helman

Dentons
1 City Center, Suite 11100
Portland, ME 04101
207 523 8290
samantha.hayes@dentons.com

**Exhibit C**

8

CL-1000 Abante, D.

CL-1001 Abat, B.

CL-1002 Abonales, R.

CL-1003 Abrahamsen, L.

CL-1004 Acebedo, C.

CL-1005 Acebedo, R.

CL-1006 Acfalle, J.

CL-1007 Acosta, M.

CL-1008 Ada, L.

CL-1009 Ada, T.

CL-1010 Adams, D.

CL-1011 Adaniya, M.

CL-1012 Aflague, G.

CL-1013 Aflague, L.

CL-1014 Aflague, M.

CL-1015 Aguigui, M.

CL-1016 Aguilar, D.

CL-1017 Agulto, L.

CL-1018 Aguon, A.

CL-1019 Aguon, D.

CL-1020 Aguon, D.

CL-1021 Aguon, J.

CL-1022 Aguon, J.

CL-1023 Aguon, J.

CL-1024 Aguon, V.

CL-1025 Agustin, J.

CL-1026 Alarcon, E.

CL-1027 Alba, J.

CL-1028 Alba, M.

CL-1029 Alepuyo, B.

| | | |
|---|---|---|
| CL-1030 Alig, D. | CL-1031 Almonte, G. | CL-1032 Alonso, L. |
| CL-1033 Alquero, R. | CL-1034 Alteros, F. | CL-1035 Alteros, P. |
| CL-1036 Alvarez, T. | CL-1037 Alvia, K. | CL-1038 Amesbury, J. |
| CL-1039 Ampurias, H. | CL-1040 Analista, N. | CL-1041 Anderson, J. |
| CL-1042 Andres, A. | CL-1043 Andres, G. | CL-1044 Andres, G. |
| CL-1045 Andres Jr, G. | CL-1046 Angel, F. | CL-1047 Angeles, M. |
| CL-1048 Angoco, G. | CL-1049 Anicas, L. | CL-1050 Apale, L. |
| CL-1051 Aquinde, C. | CL-1052 Aquino, D. | CL-1053 Aquino, N. |
| CL-1054 Aquino, P. | CL-1055 Aquino, V. | CL-1056 Aquino, V. |
| CL-1057 Araullo, M. | CL-1058 Arce, M. | CL-1059 Arceo, M. |

CL-1060 Arciga, B.

CL-1061 Arciga, G.

CL-1062 Argueza, I.

CL-1063 Argueza, R.

CL-1064 Arii, F.

CL-1065 Arjona, J.

CL-1066 Aromin, V.

CL-1067 Arriola, K.

CL-1068 Arriola, P.

CL-1069 Artero, A.

CL-1070 Artero, E.

CL-1071 Artero, M.

CL-1072 Artero, M.

CL-1073 Atento, R.

CL-1074 Atento, R.

CL-1075 Atienza, D.

CL-1076 Atienza, L.

CL-1077 Austin, A.

CL-1078 Austria, C.

CL-1079 Austria, D.

CL-1080 Avaricio, V.

CL-1081 Avilez, E.

CL-1082 Azicate, M.

CL-1083 Babauta, C.

CL-1084 Babauta Balbin, M.

CL-1085 Bacsafra, A.

CL-1086 Badajos, M.

CL-1087 Bailey, M.

CL-1088 Bais, J.

CL-1089 Bais, M.

CL-1090 Baker, L.

CL-1091 Bala-An, R.

CL-1092 Balajadia, F.

CL-1093 Balajadia, M.

CL-1094 Balatbat, R.

CL-1095 Balauro, J.

CL-1096 Baldoz, J.

CL-1097 Baldwin, J.

CL-1098 Ballares, A.

CL-1099 Balmeo, A.

CL-1100 Bamba, P.

CL-1101 Bamba, S.

CL-1102 Barcinas, A.

CL-1103 Barcinas, L.

CL-1104 Barlongo, R.

CL-1105 Barnes, T.

CL-1106 Barnhouse, N.

CL-1107 Barrett-Pendon, K.

CL-1108 Barretto, B.

CL-1109 Bartels-Cruz, C.

CL-1110 Bautista, A.

CL-1111 Bautista, A.

CL-1112 Bautista, A.

CL-1113 Bautista, K.

CL-1114 Bautista, M.

CL-1115 Baynum, A.

CL-1116 Bayonito, L.

CL-1117 Baza, J.

CL-1118 Baza, Z.

CL-1119 Beaver, J.

CL-1120 Beem, B.

CL-1121 Beem, E.

CL-1122 Beem, K.

CL-1123 Beem, M.

CL-1124 Bejerana, S.

CL-1125 Bejerana, S.

CL-1126 Bell, C.

CL-1127 Bell, J.

CL-1128 Bellis, K.

CL-1129 Benavente, W.

CL-1130 Benavente-Blas, E.

CL-1131 Benavente-Grecia, C.

CL-1132 Benitez, A.

CL-1133 Bennett, P.

CL-1134 Bennett, W.

CL-1135 Bevacqua, M.

CL-1136 Bez, E.

CL-1137 Biggs, J.

CL-1138 Biggs, L.

CL-1139 Bigornia, L.

CL-1140 Binondo, R.

CL-1141 Biolchino, C.

CL-1142 Biolchino, S.

CL-1143 Black, K.

CL-1144 Blas, A.

CL-1145 Blas, D.

CL-1146 Blas, E.

CL-1147 Blas, F.

CL-1148 Blas, J.

CL-1149 Blas, J.

| | | |
|---|---|---|
| CL-1150 Blas, L. | CL-1151 Blas, M. | CL-1152 Blas, M. |
| CL-1153 Blas, M. | CL-1154 Blas, P. | CL-1155 Blaz, C. |
| CL-1156 Bolanos, R. | CL-1157 Bollinger, D. | CL-1158 Bollinger, D. |
| CL-1159 Bollinger, J. | CL-1160 Bordallo, A. | CL-1161 Borja, D. |
| CL-1162 Borja, E. | CL-1163 Borja, G. | CL-1164 Borja, R. |
| CL-1165 Brady, T. | CL-1166 Brecht, C. | CL-1167 Brennan, D. |
| CL-1168 Brennan, D. | CL-1169 Brennan, D. | CL-1170 Bretana, J. |
| CL-1171 Brindejonc, D. | CL-1172 Brindejonc, P. | CL-1173 Brindejonc, S. |
| CL-1174 Bristol, K. | CL-1175 Bruce, N. | CL-1176 Buendicho, T. |
| CL-1177 Buettner, K. | CL-1178 Bungabong, C. | CL-1179 Burgess, A. |

CL-1180 Burk, B.

CL-1181 Burpee, E.

CL-1182 Butler, C.

CL-1183 Butler, G.

CL-1184 Byers, C.

CL-1185 Cabiles, C.

CL-1186 Cabiles, R.

CL-1187 Cabral, C.

CL-1188 Cabrera, C.

CL-1189 Cabrera, F.

CL-1190 Cabrera, J.

CL-1191 Cabrera, M.

CL-1192 Cabrito, R.

CL-1193 Caceres, J.

CL-1194 Caceres, V.

CL-1195 Cachola, K.

CL-1196 Cadag, J.

CL-1197 Calata, E.

CL-1198 Caldwell, M.

CL-1199 Calma, L.

CL-1200 Calma, R.

CL-1201 Calvo-Story, C.

CL-1202 Camacho, C.

CL-1203 Camacho, E.

CL-1204 Camacho, M.

CL-1205 Camacho, R.

CL-1206 Camacho, V.

CL-1207 Camacho, Y.

CL-1208 Campbell, C.

CL-1209 Campbell, E.

CL-1210 Campbell, E.

CL-1211 Candolada, R.

CL-1212 Canos, A.

CL-1213 Canos, R.

CL-1214 Carbullido, F.

CL-1215 Cardenas, J.

CL-1216 Cardinas, B.

CL-1217 Carlson, C.

CL-1218 Carlson, C.

CL-1219 Carlson, P.

CL-1220 Carpenter, J.

CL-1221 Carpenter, K.

CL-1222 Carter, M.

CL-1223 Casa, L.

CL-1224 Cassidy, S.

CL-1225 Castro, C.

CL-1226 Castro, D.

CL-1227 Castro, D.

CL-1228 Castro, J.

CL-1229 Castro, L.

CL-1230 Castro, M.

CL-1231 Castro, N.

CL-1232 Castro, N.

CL-1233 Castro, N.

CL-1234 Castro, P.

CL-1235 Castro, R.

CL-1236 Castro, R.

CL-1237 Castro, R.

CL-1238 Castro, R.

CL-1239 Castro, T.

CL-1240 Cate, J.

CL-1241 Cayton, J.

CL-1242 Cayton, J.

CL-1243 Cefre, G.

CL-1244 Cena, E.

CL-1245 Cendana, J.

CL-1246 Cepeda, A.

CL-1247 Cepeda, B.

CL-1248 Cepeda, R.

CL-1249 Cepeda, R.

CL-1250 Cepeda, S.

CL-1251 Certeza, J.

CL-1252 Chan, J.

CL-1253 Chan, L.

CL-1254 Chan, M.

CL-1255 Chang, J.

CL-1256 Chang, T.

CL-1257 Chang, Y.

CL-1258 Charfauros, J.

CL-1259 Chargualaf, J.

CL-1260 Chen, J.

CL-1261 Chiguina, J.

CL-1262 Ching, E.

CL-1263 Choi, U.

CL-1264 Chong, E.

CL-1265 Chu, A.

CL-1266 Civille, G.

CL-1267 Civille, M.

CL-1268 Claros, R.

CL-1269 Colet, V.

CL-1270 Comia, A.

CL-1271 Concepcion, P.

CL-1272 Conde, E.

CL-1273 Connelly, M.

CL-1274 Cook, J.

CL-1275 Cooper, M.

CL-1276 Cooper-Nurse, L.

CL-1277 Corpus, A.

CL-1278 Cosico, A.

CL-1279 Couch, M.

CL-1280 Cox, L.

CL-1281 Craig-Leon Guerrero, M.

CL-1282 Creelman, A.

CL-1283 Crisostomo, C.

CL-1284 Crisostomo, R.

CL-1285 Crisostomo, R.

CL-1286 Cruz, A.

CL-1287 Cruz, A.

CL-1288 Cruz, A.

CL-1289 Cruz, A.

CL-1290 Cruz, B.

CL-1291 Cruz, C.

CL-1292 Cruz, C.

CL-1293 Cruz, D.

CL-1294 Cruz, E.

CL-1295 Cruz, G.

CL-1296 Cruz, I.

CL-1297 Cruz, J.

CL-1298 Cruz, J.

CL-1299 Cruz, J.

| | | |
|---|---|---|
| CL-1300 Cruz, J. | CL-1301 Cruz, K. | CL-1302 Cruz, L. |
| CL-1303 Cruz, L. | CL-1304 Cruz, L. | CL-1305 Cruz, M. |
| CL-1306 Cruz, M. | CL-1307 Cruz, O. | CL-1308 Cruz, R. |
| CL-1309 Cruz, S. | CL-1310 Cruz, S. | CL-1311 Cruz, S. |
| CL-1312 Cruz, T. | CL-1313 Cruz, V. | CL-1314 Cruz, V. |
| CL-1315 Cueto, N. | CL-1316 Cummings, J. | CL-1317 Cummings, M. |
| CL-1318 Cunliffe, F. | CL-1319 Curtis, K. | CL-1320 Cusi, M. |
| CL-1321 Dacanay, A. | CL-1322 Dahilig, R. | CL-1323 Dasher, M. |
| CL-1324 Datugan, N. | CL-1325 Datuin, T. | CL-1326 Davis, L. |
| CL-1327 Day, L. | CL-1328 De Guzman, G. | CL-1329 De Guzman, H. |

| | | |
|---|---|---|
| CL-1330 De Jesus, M. | CL-1331 De Juan, M. | CL-1332 De La Pena, F. |
| CL-1333 De Quiroz, D. | CL-1334 De Roca, V. | CL-1335 De Rosas, J. |
| CL-1336 Dearth, D. | CL-1337 Deausen, R. | CL-1338 Debulgado, S. |
| CL-1339 Decipulo, L. | CL-1340 Defant, B. | CL-1341 Defensor, H. |
| CL-1342 Deinhart, S. | CL-1343 Dela Cruz, D. | CL-1344 Dela Cruz, S. |
| CL-1345 Dela Cruz, S. | CL-1346 Dela Cruz, T. | CL-1347 Dela Cruz, V. |
| CL-1348 Delfin, A. | CL-1349 Delfin, R. | CL-1350 Delgado, C. |
| CL-1351 Deliquina 401(K), G. | CL-1352 Delong, S. | CL-1353 Delos Reyes, A. |
| CL-1354 Delos Santos, H. | CL-1355 Delos Santos, L. | CL-1356 Diambra Odi, M. |
| CL-1357 Dias, S. | CL-1358 Diaz, A. | CL-1359 Diaz, A. |

| | | |
|---|---|---|
| CL-1360 Diaz, C. | CL-1361 Diaz, F. | CL-1362 Diaz, G. |
| CL-1363 Diaz, G. | CL-1364 Diaz, J. | CL-1365 Diaz, L. |
| CL-1366 Diaz, R. | CL-1367 Diego, G. | CL-1368 Diego, J. |
| CL-1369 Diego, J. | CL-1370 Diego, M. | CL-1371 Diego, P. |
| CL-1372 Dimla, R. | CL-1373 Diocena, C. | CL-1374 Dirkx, M. |
| CL-1375 Distor, M. | CL-1376 Diven, J. | CL-1377 Doctor, S. |
| CL-1378 Domaoal, R. | CL-1379 Domen, R. | CL-1380 Dominguez, A. |
| CL-1381 Dominguez, C. | CL-1382 Dominguez, T. | CL-1383 Donaldson, C. |
| CL-1384 Donaldson, G. | CL-1385 Donaldson, T. | CL-1386 Dorego, J. |
| CL-1387 Dorion, R. | CL-1388 Douglas, R. | CL-1389 Drews, D. |

CL-1390 Driscoll, M.

CL-1391 Drygas, D.

CL-1392 Drygas, K.

CL-1393 Drygas, N.

CL-1394 Duenas, A.

CL-1395 Duenas, C.

CL-1396 Duenas, F.

CL-1397 Duenas, J.

CL-1398 Duenas, J.

CL-1399 Duenas, L.

CL-1400 Duenas, M.

CL-1401 Duenas, M.

CL-1402 Duenas, M.

CL-1403 Duenas, R.

CL-1404 Duenas, R.

CL-1405 Duenas, V.

CL-1406 Duguies, M.

CL-1407 Dujon, J.

CL-1408 Dukhie, T.

CL-1409 Dungca, F.

CL-1410 Duque, M.

CL-1411 Eastlick, P.

CL-1412 Eaton, S.

CL-1413 Eay, P.

CL-1414 Eclavea, H.

CL-1415 Eclavea, V.

CL-1416 Edhlund, J.

CL-1417 Edhlund, M.

CL-1418 Edusma, K.

CL-1419 Edusma, R.

CL-1420 Egrubay, H.

CL-1421 Ellison, P.

CL-1422 Enriquez, A.

CL-1423 Enriquez, L.

CL-1424 Erickson, T.

CL-1425 Ermitano, F.

CL-1426 Erni, L.

CL-1427 Escalante, L.

CL-1428 Escano, M.

CL-1429 Escobar, R.

CL-1430 Esguerra, D.

CL-1431 Esguerra, M.

CL-1432 Esperon, L.

CL-1433 Espinosa, C.

CL-1434 Espinosa, D.

CL-1435 Espinosa, N.

CL-1436 Esteban, C.

CL-1437 Estella, V.

CL-1438 Estramadura, K.

CL-1439 Evonocreat, A.

CL-1440 Fabila, T.

CL-1441 Fedenko, E.

CL-1442 Fedenko, S.

CL-1443 Fedenko, T.

CL-1444 Fee, Y.

CL-1445 Fejarang, T.

CL-1446 Fejeran, A.

CL-1447 Fejeran, F.

CL-1448 Fejeran, J.

CL-1449 Felipe, M.

CL-1450 Felisan, S.

CL-1451 Fernandez, C.

CL-1452 Fernandez, J.

CL-1453 Fernandez, K.

CL-1454 Ferreras, A.

CL-1455 Field, N.

CL-1456 Figirliyong, D.

CL-1457 Filush, J.

CL-1458 Filush, M.

CL-1459 Fitzgerald, W.

CL-1460 Fitzpatrick, S.

CL-1461 Flis, M.

CL-1462 Flores, A.

CL-1463 Flores, A.

CL-1464 Flores, E.

CL-1465 Flores, I.

CL-1466 Flores, J.

CL-1467 Flores, J.

CL-1468 Flores, J.

CL-1469 Flores, J.

CL-1470 Flores, J.

CL-1471 Flores, J.

CL-1472 Flores, J.

CL-1473 Flores, K.

CL-1474 Flores, L.

CL-1475 Flores, N.

CL-1476 Flores, R.

CL-1477 Flores, R.

CL-1478 Flynn, K.

CL-1479 Fontbuena, J.

CL-1480 Fortes, K.

CL-1481 Fox, L.

CL-1482 Francisco, L.

CL-1483 Francisco, L.

CL-1484 Franquez, C.

CL-1485 Franquez, J.

CL-1486 Franquez, T.

CL-1487 Freeman, W.

CL-1488 Frias, G.

CL-1489 Friedman, S.

CL-1490 Fukuda, J.

CL-1491 Fukui, V.

CL-1492 Fuzimi, L.

CL-1493 Gagan, L.

CL-1494 Galang, C.

CL-1495 Galang, G.

CL-1496 Galendez, R.

CL-1497 Galon, M.

CL-1498 Galura, H.

CL-1499 Garcia, E.

CL-1500 Garcia, J.

CL-1501 Garcia, J.

CL-1502 Garcia, M.

CL-1503 Garcia, R.

CL-1504 Garcia-Pereda, M.

CL-1505 Garrido, D.

CL-1506 Garrido, E.

CL-1507 Garrido, V.

CL-1508 Gaston, K.

CL-1509 Gatuz, A.

CL-1510 Gayeta, A.

CL-1511 Gayeta, M.

CL-1512 Gaza, R.

CL-1513 Gibson, W.

CL-1514 Gillan, J.

CL-1515 Gima, W.

CL-1516 Gima, W.

CL-1517 Godwin, A.

CL-1518 Gogo, M.

CL-1519 Gogue, T.

CL-1520 Golez, M.

CL-1521 Gombar, L.

CL-1522 Gombar, L.

CL-1523 Graham, C.

CL-1524 Graves, L.

CL-1525 Greek, D.

CL-1526 Gregory, B.

CL-1527 Gregory, R.

CL-1528 Guerrero, A.

CL-1529 Guerrero, A.

CL-1530 Guerrero, A.

CL-1531 Guerrero, D.

CL-1532 Guerrero, E.

CL-1533 Guerrero, E.

CL-1534 Guerrero, J.

CL-1535 Guerrero, R.

CL-1536 Guevara, R.

CL-1537 Guieb, M.

CL-1538 Guihama, A.

CL-1539 Guile, J.

CL-1540 Guillermo, D.

CL-1541 Guinto, I.

CL-1542 Gulac, L.

CL-1543 Gumataotao, C.

CL-1544 Gumataotao, I.

CL-1545 Gumataotao, J.

CL-1546 Gumataotao, M.

CL-1547 Gumataotao, N.

CL-1548 Gurusamy, L.

CL-1549 Gurusamy, R.

CL-1550 Gutierrez, L.

CL-1551 Gutierrez, R.

CL-1552 Gutierrez-Lujan, M.

CL-1553 Guzman, A.

CL-1554 Guzman, F.

CL-1555 Guzman, J.

CL-1556 Guzman, J.

CL-1557 Guzman, M.

CL-1558 Guzman, M.

CL-1559 Guzman, S.

CL-1560 Guzman, T.

CL-1561 Hadley, A.

CL-1562 Hallera, R.

CL-1563 Halmi, X.

CL-1564 Halmi-Dulla, K.

CL-1565 Hammond, H.

CL-1566 Hardy, C.

CL-1567 Harper, C.

CL-1568 Harper, V.

CL-1569 Harrigan, B.

CL-1570 Hashizume, T.

CL-1571 Hasselback, G.

CL-1572 Hasugulayag, J.

CL-1573 Hattori, B.

CL-1574 Hattori, E.

CL-1575 Hattori, M.

CL-1576 Haun, D.

CL-1577 Hayashi, C.

CL-1578 Hazama, T.

CL-1579 Healy, J.

CL-1580 Heath, N.

CL-1581 Hernandez, E.

CL-1582 Hernandez, J.

CL-1583 Herrera, C.

CL-1584 Herrero, M.

CL-1585 Hidalgo, R.

CL-1586 High, J.

CL-1587 Hockett, J.

CL-1588 Hogan, A.

CL-1589 Hollis, J.

CL-1590 Hollister, R.

CL-1591 Holloway, L.

CL-1592 Holm, J.

CL-1593 Honculada, R.

CL-1594 Horeg, J.

CL-1595 Hoshino, E.

CL-1596 Hoya, J.

CL-1597 Hsiao, J.

CL-1598 Hsiao, J.

CL-1599 Hsiao, L.

CL-1600 Hsu, K.

CL-1601 Hunter-Anderson, R.

CL-1602 Huseby, P.

CL-1603 Iglesias, A.

CL-1604 Ignacio, A.

CL-1605 Ilao, J.

CL-1606 Illarmo, C.

CL-1607 Imamura, A.

CL-1608 Inciong, Y.

CL-1609 Indalecio, F.

CL-1610 Inocencio, G.

CL-1611 Inoue-Smith, Y.

CL-1612 Iona, I.

CL-1613 Iona, L.

CL-1614 Iriarte, C.

CL-1615 Isezaki, J.

CL-1616 Isim, R.

CL-1617 Jaleco, E.

CL-1618 Jamero, E.

CL-1619 Jereza, N.

CL-1620 Jesus, G.

CL-1621 Jewell, C.

CL-1622 Jewell, L.

CL-1623 Jia, R.

CL-1624 Jocson, J.

CL-1625 Johnson, C.

CL-1626 Johnson, D.

CL-1627 Johnson, E.

CL-1628 Johnson, G.

CL-1629 Johnson, J.

CL-1630 Johnson, K.

CL-1631 Johnson, L.

CL-1632 Johnston, R.

CL-1633 Johnston Jr., H.

CL-1634 Jones, J.

CL-1635 Jones, T.

CL-1636 Jones, T.

CL-1637 Jones-Taijeron, R.

CL-1638 Jose, J.

CL-1639 Joseph, A.

CL-1640 Joseph, J.

CL-1641 Junsay Jr., L.

CL-1642 Kahele, M.

CL-1643 Kallingal, M.

CL-1644 Kamiaz, V.

CL-1645 Kanda, I.

CL-1646 Kanda, S.

CL-1647 Kang, M.

CL-1648 Kasper, A.

CL-1649 Kelley, M.

CL-1650 Kelley, N.

CL-1651 Kelley Jr., R.

CL-1652 Kellogg, P.

CL-1653 Kennedy, J.

CL-1654 Kent, S.

CL-1655 Khosrowpanah, S.

CL-1656 Kim, C.

CL-1657 Kim, J.

CL-1658 Kim, J.

CL-1659 Kim, J.

CL-1660 Kim, J.

CL-1661 Kim, J.

CL-1662 King, S.

CL-1663 Knapp, G.

CL-1664 Knapp, L.

CL-1665 Korenko, C.

CL-1666 Koutsouros, M.

CL-1667 Kroll, M.

CL-1668 Kruckenberg, R.

CL-1669 Krusee, B.

CL-1670 Kuper, T.

CL-1671 Kushima, K.

CL-1672 Kuykendall, G.

CL-1673 Labrador, F.

CL-1674 Labrador, R.

CL-1675 Lagasca, E.

CL-1676 Lanada, A.

CL-1677 Landstrom, L.

CL-1678 Laniog, J.

CL-1679 Lansang, M.

CL-1680 Lasam, G.

CL-1681 Lastimoza, R.

CL-1682 Lauron, L.

CL-1683 Lauron, L.

CL-1684 Laurora, F.

CL-1685 Lazarte, S.

CL-1686 Lee, J.

CL-1687 Lee, M.

CL-1688 Lee, T.

CL-1689 Leon Guerrero, A.

CL-1690 Leon Guerrero, A.    CL-1691 Leon Guerrero, A.    CL-1692 Leon Guerrero, A.

CL-1693 Leon Guerrero, C.    CL-1694 Leon Guerrero, C.    CL-1695 Leon Guerrero, C.

CL-1696 Leon Guerrero, E.    CL-1697 Leon Guerrero, F.    CL-1698 Leon Guerrero, F.

CL-1699 Leon Guerrero, J.    CL-1700 Leon Guerrero, J.    CL-1701 Leon Guerrero, L.

CL-1702 Leon Guerrero, N.    CL-1703 Leon Guerrero, P.    CL-1704 Leon Guerrero, R.

CL-1705 Leon Guerrero, R.    CL-1706 Leon Guerrero, S.    CL-1707 Leon Guerrero, V.

CL-1708 Leon Guerrero, V.    CL-1709 Leon Guerrero, V.    CL-1710 Leon Guerrero, V.

CL-1711 Leon Guerrero, V.    CL-1712 Levy, L.    CL-1713 Lewis, C.

CL-1714 Leysa, I.    CL-1715 Liberty, L.    CL-1716 Liberty, S.

CL-1717 Limes, J.    CL-1718 Limtiaco, B.    CL-1719 Limtiaco, E.

CL-1720 Limtiaco, J.

CL-1721 Limtiaco, L.

CL-1722 Limtiaco, M.

CL-1723 Limtiaco, S.

CL-1724 Lin, H.

CL-1725 Lin, J.

CL-1726 Linn, P.

CL-1727 Lintag Sun, R.

CL-1728 Lizama, R.

CL-1729 Lizama, T.

CL-1730 Lizama, T.

CL-1731 Lizama, V.

CL-1732 Lizama, V.

CL-1733 Lobaton, P.

CL-1734 Lofdahl, K.

CL-1735 Lombard, G.

CL-1736 Lombard, P.

CL-1737 Long, E.

CL-1738 Long, P.

CL-1739 Long, W.

CL-1740 Lonsdale, M.

CL-1741 Loughran, V.

CL-1742 Lowe, A.

CL-1743 Lozano, J.

CL-1744 Lu, Q.

CL-1745 Lubas, D.

CL-1746 Lueke, C.

CL-1747 Lujan, A.

CL-1748 Lujan, D.

CL-1749 Lujan, J.

CL-1750 Lujan, M.

CL-1751 Lujan, M.

CL-1752 Lukas, L.

CL-1753 Lumagui, M.

CL-1754 Lup.O.La, S.

CL-1755 Lurie, A.

CL-1756 Macaraig, R.

CL-1757 Mafnas, D.

CL-1758 Mafnas, J.

CL-1759 Maghirang, H.

CL-1760 Maher, R.

CL-1761 Malilay, D.

CL-1762 Mallada, J.

CL-1763 Mallari, C.

CL-1764 Malumay, L.

CL-1765 Mamaril, S.

CL-1766 Mamay, G.

CL-1767 Manalac, R.

CL-1768 Manaloto, S.

CL-1769 Manansala, E.

CL-1770 Manapat, F.

CL-1771 Manibusan, E.

CL-1772 Manibusan, E.

CL-1773 Manibusan, J.

CL-1774 Manibusan, J.

CL-1775 Manner, H.

CL-1776 Manosa, F.

CL-1777 Manosa, F.

CL-1778 Manosa, K.

CL-1779 Mantanona, M.

CL-1780 Manzano, R.

CL-1781 Map.O.Te, B.

CL-1782 Mara, L.

CL-1783 Maravilla, C.

CL-1784 Mariano, A.

CL-1785 Mariano, D.

CL-1786 Marston Escamilla, M.

CL-1787 Marutani, D.

CL-1788 Marutani, M.

CL-1789 Marutani, M.

CL-1790 Masnayon, C.

CL-1791 Matanane Jr., G.

CL-1792 Mateo, D.

CL-1793 Mateo, R.

CL-1794 Mayers, M.

CL-1795 Mccarthy, M.

CL-1796 Mcconnell, J.

CL-1797 Mcdermott, J.

CL-1798 Mcdermott, M.

CL-1799 Mcjohn, D.

CL-1800 Mckeever, A.

CL-1801 Mckeever, D.

CL-1802 Mckeever, R.

CL-1803 Mckeever, S.

CL-1804 Mckinnon, S.

CL-1805 Mcmichael, M.

CL-1806 Mcvey, T.

CL-1807 Medez, L.

CL-1808 Megino, T.

CL-1809 Mendiola, C.

CL-1810 Mendiola, D.          CL-1811 Mendiola, D.          CL-1812 Mendiola, D.

CL-1813 Mendiola, E.          CL-1814 Mendiola, J.          CL-1815 Mendiola, J.

CL-1816 Mendiola, K.          CL-1817 Mendiola, K.          CL-1818 Mendiola, M.

CL-1819 Mendiola, P.          CL-1820 Mendoza, G.          CL-1821 Mendoza, J.

CL-1822 Mendoza, R.          CL-1823 Meneses, J.          CL-1824 Meno, B.

CL-1825 Meno, C.          CL-1826 Meno, F.          CL-1827 Mercado, M.

CL-1828 Mesa, E.          CL-1829 Mesa, G.          CL-1830 Mesa, L.

CL-1831 Mesa, S.          CL-1832 Meyer, R.          CL-1833 Milan, N.

CL-1834 Miller, M.          CL-1835 Miller, W.          CL-1836 Miyagishima, N.

CL-1837 Mochida, R.          CL-1838 Moises, A.          CL-1839 Molarte, B.

CL-1840 Monforte, J.

CL-1841 Montalbo, R.

CL-1842 Monu, S.

CL-1843 Moore, D.

CL-1844 Moots, J.

CL-1845 Moots, K.

CL-1846 Morato, H.

CL-1847 Moses, D.

CL-1848 Moyer, J.

CL-1849 Moylan, K.

CL-1850 Mudd, D.

CL-1851 Muescan, J.

CL-1852 Murphy, M.

CL-1853 Murphy, S.

CL-1854 Muth, T.

CL-1855 Mutuc, R.

CL-1856 Mutuc Jr., B.

CL-1857 Myrvold, E.

CL-1858 Nagallo, E.

CL-1859 Nakamitsu, L.

CL-1860 Nap.O.Li, E.

CL-1861 Naputi, J.

CL-1862 Naputi, L.

CL-1863 Nartia, R.

CL-1864 Naz, J.

CL-1865 Nazareno, A.

CL-1866 Nazareno, C.

CL-1867 Nazareno, M.

CL-1868 Negishi, R.

CL-1869 Nelson, M.

CL-1870 Nelson, S.

CL-1871 Nelson, T.

CL-1872 Nesmith, M.

CL-1873 Newman, O.

CL-1874 Ng, R.

CL-1875 Ng, W.

CL-1876 Ngirarois, I.

CL-1877 Nguyen, B.

CL-1878 Nishihira, F.

CL-1879 Nisperos, W.

CL-1880 Noble, K.

CL-1881 Noket, C.

CL-1882 Norte, A.

CL-1883 North, R.

CL-1884 Norton, K.

CL-1885 Novelo, A.

CL-1886 O'Daol, A.

CL-1887 Obias, G.

CL-1888 Ocamp.O.-Dela Cruz, J.

CL-1889 Ochavillo, E.

CL-1890 Ochavillo, L.

CL-1891 Ochoco, E.

CL-1892 Okada, A.

CL-1893 Okubo, K.

CL-1894 Olalia, A.

CL-1895 Ollet, M.

CL-1896 Olmo, R.

CL-1897 Olmo, R.

CL-1898 Olnagan, L.

CL-1899 Onedera, O.

CL-1900 Onedera, S.

CL-1901 Ordonez, M.

CL-1902 Oriondo Iii, S.

CL-1903 Orot, D.

CL-1904 Palacios, F.

CL-1905 Palacios, H.

CL-1906 Palisoc, M.

CL-1907 Palmares, G.

CL-1908 Palmer, G.

CL-1909 Palomo, J.

CL-1910 Pama, R.

CL-1911 Panganiban, C.

CL-1912 Pangelinan, A.

CL-1913 Pangelinan, B.

CL-1914 Pangelinan, C.

CL-1915 Pangelinan, D.

CL-1916 Pangelinan, D.

CL-1917 Pangelinan, J.

CL-1918 Pangelinan, M.

CL-1919 Pangelinan, M.

CL-1920 Paraliza, E.

CL-1921 Parducho, H.

CL-1922 Park, G.

CL-1923 Park, K.

CL-1924 Park, S.

CL-1925 Parrick, J.

CL-1926 Pascual, C.

CL-1927 Patricio, J.

CL-1928 Patricio, P.

CL-1929 Patricio, R.

CL-1930 Patubo, L.

CL-1931 Paule, A.

CL-1932 Paule, C.

CL-1933 Paule, C.

CL-1934 Paule, F.

CL-1935 Paulino, K.

CL-1936 Paulino, R.

CL-1937 Paulino, R.

CL-1938 Payne, A.

CL-1939 Payne, J.

CL-1940 Payne Ii, J.

CL-1941 Pedro, D.

CL-1942 Pelletier, W.

CL-1943 Penaflor, A.

CL-1944 Pereda, R.

CL-1945 Pereda, V.

CL-1946 Peredo, V.

CL-1947 Perez, A.

CL-1948 Perez, F.

CL-1949 Perez, G.

CL-1950 Perez, G.

CL-1951 Perez, J.

CL-1952 Perez, J.

CL-1953 Perez, L.

CL-1954 Perez, M.

CL-1955 Perez, M.

CL-1956 Perez, N.

CL-1957 Perez, N.

CL-1958 Perez, P.

CL-1959 Perez, Q.

| | | |
|---|---|---|
| CL-1960 Perez, R. | CL-1961 Perez, R. | CL-1962 Perez-Bollinger, J. |
| CL-1963 Perez-Jackson, J. | CL-1964 Perez-Quitugua, M. | CL-1965 Petra, E. |
| CL-1966 Petra, T. | CL-1967 Pexa, D. | CL-1968 Pexa, P. |
| CL-1969 Pickop, R. | CL-1970 Pido, M. | CL-1971 Pierantozzi, S. |
| CL-1972 Piercy, C. | CL-1973 Pinaula, G. | CL-1974 Pineda, C. |
| CL-1975 Pineda, N. | CL-1976 Pineda, R. | CL-1977 Pineda, S. |
| CL-1978 Pineda, T. | CL-1979 Piol, C. | CL-1980 Piol, W. |
| CL-1981 Plate, D. | CL-1982 Plate, L. | CL-1983 Pocaigue, P. |
| CL-1984 Pocaigue, R. | CL-1985 Portin, L. | CL-1986 Powers, A. |
| CL-1987 Presillas, A. | CL-1988 Presto, D. | CL-1989 Prieto, S. |

CL-1990 Prudente, S.

CL-1991 Quenga, D.

CL-1992 Quenga, E.

CL-1993 Quiambao, K.

CL-1994 Quichocho, P.

CL-1995 Quilit, V.

CL-1996 Quinata, A.

CL-1997 Quinata, B.

CL-1998 Quinata, J.

CL-1999 Quinata, M.

CL-2000 Quinata, W.

CL-2001 Quindara, P.

CL-2002 Quinene, C.

CL-2003 Quinene, S.

CL-2004 Quintanilla, G.

CL-2005 Quintanilla, S.

CL-2006 Quito, S.

CL-2007 Quitoriano, A.

CL-2008 Quitugua, L.

CL-2009 Quitugua, M.

CL-2010 Quitugua, R.

CL-2011 Rabena, A.

CL-2012 Rambayon, A.

CL-2013 Ramiro, A.

CL-2014 Ramos, R.

CL-2015 Ramos, T.

CL-2016 Randall, M.

CL-2017 Randall, R.

CL-2018 Raniaga, M.

CL-2019 Rap.O.Lla, R.

CL-2020 Rasmussen, M.

CL-2021 Raulerson, C.

CL-2022 Raymundo, A.

CL-2023 Rayphand, S.

CL-2024 Razo, J.

CL-2025 Reburiano, R.

CL-2026 Redila, R.

CL-2027 Redoblado, L.

CL-2028 Reed, A.

CL-2029 Reed, E.

CL-2030 Rekdahl, K.

CL-2031 Rekdahl, R.

CL-2032 Retumban, L.

CL-2033 Reyes, B.

CL-2034 Reyes, B.

CL-2035 Reyes, C.

CL-2036 Reyes, D.

CL-2037 Reyes, D.

CL-2038 Reyes, E.

CL-2039 Reyes, E.

CL-2040 Reyes, F.

CL-2041 Reyes, F.

CL-2042 Reyes, K.

CL-2043 Reyes, K.

CL-2044 Reyes, L.

CL-2045 Reyes, M.

CL-2046 Reyes, M.

CL-2047 Reyes, M.

CL-2048 Reyes, R.

CL-2049 Reyes, S.

| | | |
|---|---|---|
| CL-2050 Reyes, T. | CL-2051 Reyes, V. | CL-2052 Reynolds, B. |
| CL-2053 Rico, A. | CL-2054 Rico, D. | CL-2055 Rigsby, C. |
| CL-2056 Rinehart, A. | CL-2057 Ritter, V. | CL-2058 Rivera, C. |
| CL-2059 Rivera, D. | CL-2060 Rivera, M. | CL-2061 Rivera, M. |
| CL-2062 Rivera, Z. | CL-2063 Rivera Jr, B. | CL-2064 Roa, M. |
| CL-2065 Robert, A. | CL-2066 Roberto, A. | CL-2067 Roberto, D. |
| CL-2068 Robinson, K. | CL-2069 Rosa, C. | CL-2070 Rosalin, F. |
| CL-2071 Rosario, B. | CL-2072 Rosario, D. | CL-2073 Rosario, J. |
| CL-2074 Rosario, J. | CL-2075 Rosario, K. | CL-2076 Rosario, R. |
| CL-2077 Rosario, V. | CL-2078 Rosario, Y. | CL-2079 Roxas, V. |

CL-2080 Rudolph, J.            CL-2081 Ruhlman, B.            CL-2082 Ruiz, S.

CL-2083 Rullan, M.             CL-2084 Rupley, S.             CL-2085 Rusko, T.

CL-2086 Russell, D.            CL-2087 Russell, G.            CL-2088 Russell, J.

CL-2089 Sabedra, E.           CL-2090 Sablan, D.             CL-2091 Sablan, G.

CL-2092 Sablan, H.            CL-2093 Sablan, J.             CL-2094 Sablan, O.

CL-2095 Sablan, S.            CL-2096 Sablan, V.             CL-2097 Sablan, Z.

CL-2098 Sablan-Jalique, P.    CL-2099 Sablan-Nededog, L.    CL-2100 Sajnovsky, C.

CL-2101 Sajnovsky, R.         CL-2102 Sajo, P.              CL-2103 Sakaba, M.

CL-2104 Salalila, S.          CL-2105 Salas, A.             CL-2106 Salas, B.

CL-2107 Salas, B.             CL-2108 Salas, B.             CL-2109 Salas, G.

CL-2110 Salas, J.

CL-2111 Salas, R.

CL-2112 Salas, R.

CL-2113 Salcedo, M.

CL-2114 Samala, R.

CL-2115 Sampson, C.

CL-2116 San Agustin, B.

CL-2117 San Agustin, R.

CL-2118 San Gil-Chargualaf, G.

CL-2119 San Miguel, B.

CL-2120 San Nicolas, A.

CL-2121 San Nicolas, C.

CL-2122 San Nicolas, D.

CL-2123 San Nicolas, L.

CL-2124 San Nicolas, P.

CL-2125 San Nicolas Ii, P.

CL-2126 San Pablo, F.

CL-2127 San-Nicolas, E.

CL-2128 Sanchez, A.

CL-2129 Sanchez, M.

CL-2130 Sanchez, M.

CL-2131 Sanford, A.

CL-2132 Sanford, D.

CL-2133 Sant, A.

CL-2134 Santiago, J.

CL-2135 Santos, A.

CL-2136 Santos, C.

CL-2137 Santos, C.

CL-2138 Santos, E.

CL-2139 Santos, F.

CL-2140 Santos, G.

CL-2141 Santos, J.

CL-2142 Santos, J.

CL-2143 Santos, L.

CL-2144 Santos, M.

CL-2145 Santos, N.

CL-2146 Santos, S.

CL-2147 Santos, T.

CL-2148 Santos, Z.

CL-2149 Sanz, J.

CL-2150 Sapp, S.

CL-2151 Sapp, S.

CL-2152 Sargee, V.

CL-2153 Sarmiento, J.

CL-2154 Sarmiento, J.

CL-2155 Satajo, M.

CL-2156 Savela, B.

CL-2157 Schrage, M.

CL-2158 Schumann, B.

CL-2159 Schupp, P.

CL-2160 Schweitzer, D.

CL-2161 Seerengan, K.

CL-2162 Sekine, P.

CL-2163 Sellmann, J.

CL-2164 Sengebau, A.

CL-2165 Setzer, M.

CL-2166 Sgambelluri, A.

CL-2167 Sgro, E.

CL-2168 Sgro, M.

CL-2169 Shimizu, D.

CL-2170 Shiroma, J.

CL-2171 Shiroma, Z.

CL-2172 Shironishi, K.

CL-2173 Shironishi, S.

CL-2174 Shook, S.

CL-2175 Siegel, M.

CL-2176 Simpson, C.

CL-2177 Singh, M.

CL-2178 Singh, P.

CL-2179 Smith, B.

CL-2180 Smith, B.

CL-2181 Smith, L.

CL-2182 Smith, M.

CL-2183 Smith, T.

CL-2184 Soberano, S.

CL-2185 Soriano, E.

CL-2186 Soriano, L.

CL-2187 Soriano, R.

CL-2188 Spencer, M.

CL-2189 Spidell, S.

CL-2190 Stahlnecker, P.

CL-2191 Stake, R.

CL-2192 Stanley, W.

CL-2193 Sterling, T.

CL-2194 Stewart, S.

CL-2195 Strong, D.

CL-2196 Suarez, C.

CL-2197 Sulit, A.

CL-2198 Sulit, M.

CL-2199 Summers, Z.

CL-2200 Superales, J.

CL-2201 Swamy, A.

CL-2202 Swamy, N.

CL-2203 Swegler, B.

CL-2204 Swett, A.

CL-2205 Sy, L.

CL-2206 Sykes, C.

CL-2207 Tacloban, R.

CL-2208 Tagle, M.

CL-2209 Taijeron, D.

CL-2210 Taijeron, E.

CL-2211 Taijeron, E.

CL-2212 Taimanglo, D.

CL-2213 Taimanglo, G.

CL-2214 Taimanglo, R.

CL-2215 Taimanglo, R.

CL-2216 Taimanglo-Valenzuela, J.

CL-2217 Tainatongo, C.

CL-2218 Tainatongo, G.

CL-2219 Taisipic, E.

CL-2220 Taitano, A.

CL-2221 Taitano, J.

CL-2222 Taitano, J.

CL-2223 Taitano, L.

CL-2224 Taitano, L.

CL-2225 Taitano, M.

CL-2226 Taitano, P.

CL-2227 Taitano, R.

CL-2228 Taitano, S.

CL-2229 Taitingfong, P.

CL-2230 Taitingfong, R.

CL-2231 Takenaka, Y.

CL-2232 Tam, T.

CL-2233 Tanag, E.

CL-2234 Tanaka Jr, P.

CL-2235 Tangi, E.

CL-2236 Taniguchi, C.

CL-2237 Taniguchi, J.

CL-2238 Tao, X.

CL-2239 Taylor, R.

CL-2240 Tedtaotao, A.

CL-2241 Tenorio, J.

CL-2242 Terlaje, E.

CL-2243 Terlaje, I.

CL-2244 Terlaje, M.

CL-2245 Terlaje, R.

CL-2246 Thompson, H.

CL-2247 Thundiyil, L.

CL-2248 Thurber, D.

CL-2249 Tio, R.

CL-2250 Tiong, A.

CL-2251 Tiozon, O.

CL-2252 Togawa, L.

CL-2253 Tomasiak, T.

CL-2254 Tongson, E.

CL-2255 Topasna, C.

CL-2256 Torcelino, F.

CL-2257 Torre, M.

CL-2258 Torres, A.

CL-2259 Torres, D.

CL-2260 Torres, L.

CL-2261 Torres, M.

CL-2262 Torres, R.

CL-2263 Torres, S.

CL-2264 Toves, E.

CL-2265 Toves, J.

CL-2266 Toves, M.

CL-2267 Treltas, G.

CL-2268 Treltas, M.

CL-2269 Tsao, P.

CL-2270 Tuazon, I.

CL-2271 Tuazon, L.

CL-2272 Tudela, E.

CL-2273 Tudela, V.

CL-2274 Tufvander, J.

CL-2275 Tumanda, C.

CL-2276 Tumanda, R.

CL-2277 Tuquero, J.

CL-2278 Tutanes, A.

CL-2279 Twenter, R.

CL-2280 Tyquiengco, Y.

CL-2281 Ugaban, J.

CL-2282 Ulloa, J.

CL-2283 Ulloa, R.

CL-2284 Umayan, A.

CL-2285 Uncangco, E.

CL-2286 Uncangco, M.

CL-2287 Ungacta, R.

CL-2288 Unsay, G.

CL-2289 Uy, G.

CL-2290 Valdes, C.

CL-2291 Valdez, L.

CL-2292 Valencia, Y.

CL-2293 Valentino, E.

CL-2294 Vander Weide, M.

CL-2295 Vega, R.

CL-2296 Vega, R.

CL-2297 Velasco, C.

CL-2298 Velasco, N.

CL-2299 Velasquez, O.

CL-2300 Velazquez, K.

CL-2301 Vensel, A.

CL-2302 Vensel, L.

CL-2303 Vensel, S.

CL-2304 Vensel Iv, L.

CL-2305 Veracruz, M.

CL-2306 Vergara, M.

CL-2307 Vest, J.

CL-2308 Vigilante, M.

CL-2309 Vigilante, M.

CL-2310 Villa, V.

CL-2311 Villaflor, A.

CL-2312 Villaflor, R.

CL-2313 Villaluna, K.

CL-2314 Villaluna, N.

CL-2315 Villanueva, A.

CL-2316 Villanueva, J.

CL-2317 Villanueva, M.

CL-2318 Villanueva, P.

CL-2319 Villaverde, C.

| | | |
|---|---|---|
| CL-2320 Villavicencio, M. | CL-2321 Viray-Mosley, M. | CL-2322 Volsteadt, K. |
| CL-2323 Volsteadt, T. | CL-2324 Waggoner, J. | CL-2325 Wall, G. |
| CL-2326 Wang, Y. | CL-2327 Weare, N. | CL-2328 Weare, W. |
| CL-2329 Webb, V. | CL-2330 Weeks, G. | CL-2331 Weibling, C. |
| CL-2332 Weiss, S. | CL-2333 Wesolowski, F. | CL-2334 Wesolowski Jr, J. |
| CL-2335 Wessling, M. | CL-2336 White, J. | CL-2337 White, J. |
| CL-2338 Whitt, D. | CL-2339 Whitt, D. | CL-2340 Whitt, J. |
| CL-2341 Whitt, T. | CL-2342 Williams, V. | CL-2343 Wintterle, D. |
| CL-2344 Wolff, M. | CL-2345 Wolff, P. | CL-2346 Wolff, V. |
| CL-2347 Wolfley, W. | CL-2348 Wood, W. | CL-2349 Woodley, S. |

| | | |
|---|---|---|
| CL-2350 Woodley Iii, S. | CL-2351 Wooster, D. | CL-2352 Wooster, M. |
| CL-2353 Wright, C. | CL-2354 Wu, F. | CL-2355 Wuerch, W. |
| CL-2356 Xiao, W. | CL-2357 Ya, R. | CL-2358 Yabut, S. |
| CL-2359 Yamamoto, J. | CL-2360 Yamamoto, W. | CL-2361 Yang, A. |
| CL-2362 Yang, R. | CL-2363 Yanger, C. | CL-2364 Yano, R. |
| CL-2365 Yeates, G. | CL-2366 Yoshida, R. | CL-2367 Yu, A. |
| CL-2368 Yu, X. | CL-2369 Yu-Healy, I. | CL-2370 Zabala, E. |
| CL-2371 Zafra, V. | CL-2372 Zamora, Z. | CL-2373 Zan, Y. |
| CL-2374 Zantua, A. | CL-2375 Zieber, D. | CL-2376 Zimms, D. |
| CL-2377 Zuniga, K. | CL-2378 Jenson, C. | CL-2379 Jenson, J. |

| | | |
|---|---|---|
| CL-2380 Cabildo, M. | CL-2381 SRMD CB Plan & 401 (K) | CL-2382 Calvo, E. |
| CL-2383 Cabral, N. | CL-2384 AEC CB Pension & 401(k) | CL-2385 AI 401(k) |
| CL-2386 APA 401(k) | CL-2387 Asia Pacific Financial Managemen | CL-2388 BPI 401(k) |
| CL-2389 CCLG 401(k) | CL-2390 CT 401(k) | CL-2391 CFCU 401(k) |
| CL-2392 JKMD Solo 401(k) | CL-2393 MCMD Solo 401(k) | CL-2394 SDMD Solo 401(k) |
| CL-2395 DCAI Entity | CL-2396 DCAI 401(k) | CL-2397 ECMEI 401(k) |
| CL-2398 EAE Entity | CL-2399 EHC 401(k) | CL-2400 FSO Entity |
| CL-2401 FSO 401(k) | CL-2402 GFFI 401(k) | CL-2403 GMFHI Entity |
| CL-2404 GP Trust | CL-2405 HAFD 401(k) | CL-2406 HSOTP 401(k) |
| CL-2407 IDI 401(k) | CL-2408 ID CB Plan & 401(k) | CL-2409 IC 401(k) & CB Plan |

| | | |
|---|---|---|
| CL-2410 IES 401(k) | CL-2411 IHIC Entity | CL-2412 IWAI 401(k) & CB Plan |
| CL-2413 JACLG DB Plan | CL-2414 JCBIM 401(k) | CL-2415 JNT Trust |
| CL-2416 KCC 401(k) & CB Plan | CL-2417 KL 401(k) | CL-2418 MSI Entity |
| CL-2419 MCBI Entity | CL-2420 MDXI 401(k) | CL-2421 MP 401(k) |
| CL-2422 M 401(k) | CL-2423 MI Entity | CL-2424 NGG 401(k) |
| CL-2425 PDS 401(k) | CL-2426 PHSCI 401K(k) | CL-2427 PIIC Entity |
| CL-2428 PUI 401(k) & CB Plan | CL-2429 PS Entity | CL-2430 PHIPR 401(k) |
| CL-2431 PD 401(k) | CL-2432 PHERS 401(k) | CL-2433 P Entity |
| CL-2434 RCI Entity | CL-2435 RFI Entity | CL-2436 RWTPC 401(k) |
| CL-2437 RD 401(k) | CL-2438 RJYDMD CB Plan & 401(k) | CL-2439 SM 401(k) |

CL-2440 STG Entity

CL-2441 SSS 401(k)

CL-2442 SWGI 401(k)

CL-2443 TJ Solo 401(k)

CL-2444 ANU Trust

CL-2445 TDC 401(k)

CL-2446 TPBDDS 401(k)

CL-2447 TI 401(k)

CL-2448 TR 401(k)

CL-2449 UDP Entity

CL-2450 UM 401(k)

CL-2451 UOG-1 Entity

CL-2452 UOG-2 Entity

CL-2453 URM 401(k)

CL-2454 VATI 401(k)

CL-2455 VJ 401(k)

CL-2456 WCTCI Entity

CL-2457 WMES 401(k)

CP- AB Risk Solutions

CP- Docusign

CP- G4S SECURITY SYSTEMS (GUAM), INC.

CP- Global Relay

CP- Guam Mini Storage

CP- IT&E

CP- Jonathan Ulloa

CP- Jonathon Holm

CP- MG Trust

CP- Microsoft Corporation

CP- Midland National Life Insurance Co.

CP- Morningstar Investor Inc.

CP- Pacific Data Systems

CP- Quintin Guillermo

CP- RBC Capital Markets, LLC

CP- RBC Clearing and Custody

CP- Redtail

CP- Sandra McKeever

CP- Sophie Brindejonc, CFP?, AIF

CP- St. Paul Fire & Marine Insurance

CP- Thad Jones

CP- UDP Corporation

CP- XEROX CORPORATION

CP- Zix Corp

CP- Zoom