**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
EMAIL:  jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL:  andrew.helman@dentons.com

*Counsel for the Debtor*

## IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.,[1] | Chapter 11 |
| Debtor. | **REVISED FIRST AMENDED PLAN OF REORGANIZATION OF ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC. DATED NOVEMBER 15, 2023, WITH INCORPORATED ADEQUATE DISCLOSURES UNDER SECTION 1190(1) OF THE BANKRUPTCY CODE** |

Pursuant to section 1189 of the Bankruptcy Code, Asia Pacific Financial Management Group, Inc., the debtor in the above-captioned chapter 11 case, hereby submits this *Revised First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated November 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code*, to all of the known creditors and holders of interests of Asia Pacific.[2]  Asia Pacific seeks confirmation of the Plan pursuant to section 1191(a) of the Bankruptcy Code, or, if necessary, under section 1191(b) of the Bankruptcy Code.  Asia Pacific also contends that the Plan provides adequate disclosures in accordance with section 1190(1) of the Bankruptcy Code and that no separate disclosure statement is required.

---

[1]     The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272.  The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910.

[2]     Capitalized terms not otherwise defined in the body of the Plan shall have the meaning given to them in Article I of the Plan.

22898651.v8

Dated: November 15, 2023

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
One City Center, Suite 11100
Portland, Maine 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

*Counsel to Asia Pacific Financial Management Group, Inc.*

# TABLE OF CONTENTS

ARTICLE I:       Definitions....................................................................................................5

ARTICLE II:      Background and Disclosures under Section 1190 of the Bankruptcy
                 Code, and Additional Information Regarding Confirmation.......................10

ARTICLE III:     Classification of Claims and Interests.........................................................17

ARTICLE IV:      Treatment of Claims and Interests ..............................................................17

ARTICLE V:       Allowance and Disallowance of Claims ......................................................19

ARTICLE VI:      Interests to be Retained and Rights to be Exercised ...................................20

ARTICLE VII:     Means of Financing the Plan; Plan Distributions; Remedies; and Other
                 Relief Afforded under the Plan ....................................................................20

ARTICLE VIII:    Approval of Settlement and Settlement Agreement ....................................23

ARTICLE IX:      Executory Contracts and Unexpired Leases ................................................26

ARTICLE X:       Effect of Confirmation, Discharge and Injunction .....................................26

ARTICLE XI:      Retention of Jurisdiction .............................................................................28

ARTICLE XII:     General Provisions .......................................................................................29

ARTICLE XIII:    Modification of the Plan ..............................................................................31

ARTICLE XIV:     Conditions Precedent to Effective Date ......................................................31

22898651.v8

## EXHIBITS[3]

| Exhibit Number | Description |
| --- | --- |
| 1 | Pro Forma |
| 2 | Liquidation Analysis |
| 3 | Cash Projection |
| 4 | Settlement Agreement |
| 5 | Rejected Contract Schedule |

---

[3]      Asia Pacific reserves the right to amend these exhibits.

22898651.v8

# ARTICLE I

## Definitions

The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1 "Administrative Claim" shall mean an expense of the kind described in section 503(b) of the Bankruptcy Code.

1.2 "Allowed" shall mean, with respect to any Claim, the status of the Claim, such that: (a) upon expiration of the Claims Objection Deadline, the Claim, whether filed or scheduled, has not been disputed, or (b) with respect to Disputed Claims, a Final Order allowing the Claim has been entered or Asia Pacific and the Claimant have reached agreement on the amount of the Claim.

1.3 "Allowed Amount" of a Claim shall mean, for the purposes of the Plan: (a) the amount of the Claim listed in Asia Pacific's Schedules if: (i) the Claim is not scheduled as disputed, contingent, or unliquidated by Asia Pacific, (ii) no objection to that amount is filed by the Claims Objection Deadline, and (iii) the Holder of the Claim has not timely filed a properly prepared proof of claim in an amount different from that scheduled by Asia Pacific; (b) the amount set forth by the Holder of a Claim in a timely filed and properly prepared proof of Claim if that amount differs from the amount scheduled by Asia Pacific and no objection to the amount stated in the proof of claim is filed by the Claims Objection Deadline; or (c) the amount of such Claim established by a Final Order of the Bankruptcy Court if: (i) such Claim is scheduled by Asia Pacific as contingent or disputed, (ii) an objection to that amount is filed on or before the Claims Objection Deadline, or (iii) if the amount set forth by the Holder of such Claim in a timely filed, properly prepared proof of claim differs from the amount scheduled by Asia Pacific and an objection is filed to the proof of claim prior to the Claims Objection Deadline.

1.4 "Asia Pacific" shall mean Asia Pacific Financial Management Group, Inc., including as a debtor and debtor in possession in the Chapter 11 Case, and its capacity as a reorganized debtor after the Confirmation Date.

1.5 "Assets" shall mean all property of the Estate under section 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate. In the event that the Plan is confirmed under section 1191(b) of the Bankruptcy Code, Assets shall include the property of Asia Pacific to the extent provided for by section 1186 of the Bankruptcy Code.

5

1.6  "Bankruptcy Code" shall mean title 11 of the United States Code, as in effect with respect to the Chapter 11 Case on the Petition Date. All Bankruptcy Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.7  "Cash" shall mean payment, including by check, issued by or on behalf of Asia Pacific with respect to any payment of funds required to be made pursuant to the Plan.

1.8  "Causes of Action" shall mean: (a) Chapter 5 Claims; (b) any other causes of action of the Estate as of the Effective Date; (c) in the event the Plan is confirmed under section 1191(b) of the Bankruptcy Code, any other causes of action of Asia Pacific; and (d) any and all proceeds, whether in the form of cash or otherwise, from any recoveries on or settlements of such causes of action.

1.9  "Chapter 5 Claims" shall mean any and all causes of action belonging to Asia Pacific or the Estate, whether arising before or after the Petition Date and whether arising under state or federal law, constituting causes of action under section 544 to 553 of the Bankruptcy Code (including, but not limited to, any state fraudulent conveyance statute by virtue of section 544 of the Bankruptcy Code).

1.10  "Chapter 11 Case" shall mean Asia Pacific's chapter 11 case pending as Case No. 23-00005 before the Bankruptcy Division of the District Court of Guam.

1.11  "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.12  "Claimant" shall mean any individual or entity making or holding a Claim against Asia Pacific or the Estate.

1.13  "Claims Objection Deadline" shall mean, with respect to Claims not subject to the Post-Petition Bar Date, the date that is 30 calendar days after the Confirmation Date.  The failure to object to a Claim by the Claims Objection Deadline shall not constitute a waiver, acceptance, or release of any Claim or Cause of Action against a creditor, including any Cause of Action based on a creditor receiving preferential or fraudulent transfers under sections 547 or 548 of the Bankruptcy Code.  For the avoidance of doubt, as to

1.14  "Classified Claims" shall mean those Claims classified in Article III of this Plan and not described in section 3.1 of Article III.

1.15  "Confirmation Date" shall mean the date on which the Confirmation Order becomes a Final Order in the Chapter 11 Case.

1.16  "Confirmation Hearing" shall mean the hearing held by the Court to consider confirmation of the Plan, as the same may be amended, and as contemplated by section 1128(a) of the Bankruptcy Code.

6

1.17    "<u>Confirmation Order</u>" shall mean the Final Order entered by the Court confirming the Plan.

1.18    "<u>Contracts</u>" shall mean all of Asia Pacific's executory contracts and unexpired leases, within the meaning of section 365 of the Bankruptcy Code, and as reflected and identified in the Contract Schedule.

1.19    "<u>Court</u>" shall mean the Bankruptcy Division of the District Court of Guam.

1.20    "<u>Cure Amount Claims</u>" shall mean the amount required to be paid to cure a Contract pursuant to section 365 of the Bankruptcy Code, as reflected in the column labeled "Cure Amount Claim" on the Contract Schedule.

1.21    "<u>Disallowed</u>" when used with respect to a Claim shall mean a Claim that, pursuant to a Final Order, is not Allowed.

1.22    "<u>Disputed Claim</u>" shall mean any Claim listed as disputed in Asia Pacific's bankruptcy Schedules filed in this Chapter 11 Case or as to which an objection has been timely filed by the Claims Objection Deadline.

1.23    "<u>Effective Date</u>" shall mean the calendar day that is 14 days after entry of the Confirmation Order, which date is December [*], 2023, provided that the conditions precedent to the Effective Date in Article XIII of the Plan shall have been met or waived by Asia Pacific on or before such date.

1.24    "<u>Employee Benefit Plans and Programs</u>" shall mean all health, welfare, compensation, and retirement (including any cash balance or pension) plan that Asia Pacific maintains or is the administrator with respect to employees.

1.25    "<u>Encumbrances</u>" shall mean all Liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.26    "<u>Estate</u>" shall mean the bankruptcy estate of Asia Pacific, as it was created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, including as such Estate may be continued or preserved under the Plan.

1.27    "<u>Final Order</u>" shall mean an order of a court of competent jurisdiction with respect to which all periods for taking appeal from such order or any order of an appellate court relating to such order have expired with no appeal pending and no stay of such order being then in effect.

1.28    "<u>Bar Date</u>" shall mean the deadline for filing proofs of claim for all creditors, including other governmental units.  Such date was July 5, 2023.

7

1.29 "Holder" shall mean a creditor holding, including by assignment, a Claim or Interest against Asia Pacific and/or the Estate.

1.30 "Interests" shall mean the equity or ownership interests of any person or entity in Asia Pacific.

1.31 "IRS" shall mean the Internal Revenue Service.

1.32 "Lien" shall mean any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge, or assessment, of every kind, nature, and description, against, in or upon Assets, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown, and, without limiting the foregoing, shall include the meaning set forth in section 101(37) of the Bankruptcy Code.

1.33 "Liquidation Analysis" shall mean the hypothetical liquidation analysis required by section 1190(1)(B) of the Bankruptcy Code.

1.34 "Notice of the Effective Date" shall mean notice filed with the Court that the Effective Date has occurred.

1.35 "Petition Date" shall mean April 26, 2023.

1.36 "Phillips Claim" shall mean the Claim filed with the Court on June 23, 2023 at Proof of Claim 1-1 in the amount of $4,316,108.11.

1.37 "Plan" shall mean this *Revised First Amended Plan of Reorganization of Asia Pacific Financial Management Group, Inc. Dated November 15, 2023, with Incorporated Adequate Disclosures Under Section 1190(1) of the Bankruptcy Code*, as it may be amended or modified from time to time, together with all exhibits, schedules, and other attachments thereto, and including the Confirmation Order, as the same may be amended or modified from time to time, all of which are incorporated herein by reference.

1.38 "Post-Petition Bar Date" shall mean the date that is 60 days after the Effective Date and shall be the deadline to file final applications for Professional Fees and Expenses, Subchapter V fees and expenses, any other Administrative Claims, and Rejection Damages Claims, except as may otherwise be provided in this Plan.

1.39 "Priority Claim" shall mean an Unsecured Claim, other than an Administrative Claim, granted a priority under section 507 of the Bankruptcy Code.

1.40 "Pro Rata" means proportionate, so that, for example, the ratio of the consideration distributed on account of an Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such class of Claims to the amount of all Allowed Claims in the class.

8

1.41   "Professional Fees and Expenses" shall mean Allowed Administrative Claims of any professionals retained in the Chapter 11 Case under section 327 of the Bankruptcy Code for fees and expenses incurred on or before the Confirmation Date.

1.42   "Projected Net Disposable Income" shall mean, in accordance with section 1191(d) of the Bankruptcy Code, the income that is received by Asia Pacific and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of Asia Pacific, which such necessary payments shall include, but not be limited to, payments to the Holders of Allowed Administrative Claims in accordance with this Plan, as well as maintaining appropriate cash reserves, all as reflected in the Pro Forma.

1.43   "Rejection Damages Claim" shall mean any timely filed Claim for amounts due as a result of the rejection by Asia Pacific of any Contract under section 365 of the Bankruptcy Code or amounts designated under the column entitled "Rejection Damages Claim" on the Contract Schedule.

1.44   "Secured Claim" shall mean a Claim arising on or before the Petition Date to the extent such Claim is secured by a valid and perfected Lien on the Assets, which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code.

1.45   "Subchapter V Trustee" shall mean Kathlyn Selleck, in her capacity the Subchapter V Trustee in the Chapter 11 Case pursuant to section 1183 of the Bankruptcy Code.

1.46   "Subchapter V Trustee Claim" shall mean the Allowed Claim of the Subchapter V Trustee for compensation.

1.47   "Substantial Consummation" shall mean (i) the Effective Date has occurred; and (ii) Asia Pacific has begun making the distributions required under the Plan as of the Effective Date (excluding Allowed Professional Fees and Expenses and the Allowed Subchapter V Trustee Claim).

1.48   "Unclassified Claims" shall mean Claims described in section 3.1 of Article III of the Plan and which are not classified in Article III.

1.49   "Unsecured Claim" shall mean a Claim that is: (a) not an Unclassified Claim; and (b) not secured by a valid Lien on Assets of Asia Pacific which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code, and shall include deficiency Claims related to Holders of Allowed Secured Claims.

## ARTICLE II

### Background and Disclosures under Section 1190 of the Bankruptcy Code, and Additional Information Regarding Confirmation

2.1     History of Asia Pacific's Business Operations, as Required by Section 1190(1)(A) of the Bankruptcy Code

Asia Pacific was formed in 1993 as a corporation organized under the laws of the Territory of Guam. Asia Pacific is headquartered in Guam. Asia Pacific's ownership as of the Petition Date was as follows: Sandra McKeever (CEO) – 83.75%; Melinda Sulit (CFO) – 10.00%; and Jonathan Ulloa (Financial Advisor) – 6.25%. Asia Pacific provides professional investment advisory services to help businesses and individuals engage in financial planning to meet their respective goals. More specifically, Asia Pacific serves the following constituencies:

- Business Clients: The Debtor assists businesses with strategies for asset protection, cash management, employee retention, adequacy of insurance, adequacy of financing, and retirement and succession planning.

- Individuals: The Debtor provides individuals advisory services that include planning for retirement, college expenses, and for other specialized savings and investment goals. The Debtor also assists retirees preserve wealth to create sustainable income throughout retirement.

- Multigenerational Families: The Debtor assists families in planning for the growth, preservation, and transfer of wealth.

- Widows and Widowers: The Debtor advises individuals regarding life insurance proceeds, Social Security, and retitling financial accounts following the death of a spouse.

As of the Petition Date, Asia Pacific had approximately 2,400 clients (the "Clients"), predominantly residents of Guam and Micronesia, with about $206 million in assets under management ("AUM").

As of the Petition Date, Asia Pacific was and is registered and licensed with the Securities and Exchange Commission (the "SEC") as both a registered investment advisor and a broker-dealer. By virtue of Asia Pacific's status as a broker-dealer, Asia Pacific was and is also a member of the Financial Industry Regulatory Authority, Inc. ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). While there are some differences in the scope of services that investment advisors and broker-dealers provide, both are able to serve as wealth and financial planning advisors, though the manner in which they are paid and duties to investors are different. Investment advisors are typically paid a fee based on a percentage of total assets under management, whereas broker-dealers are typically paid a commission on a per-trade basis. Investment advisors typically have fiduciary duties to clients and do not have to be members of

10

FINRA, whereas broker-dealers do not have fiduciary duties, are required to engage in a suitability analysis for each proposed transaction, and are members of FINRA.

Asia Pacific maintains licensure as an investment advisor and broker-dealer, though all or virtually all of Asia Pacific's services are in its capacity as an investment advisor. Asia Pacific does not have custody of Client accounts, nor is property of Clients entrusted to Asia Pacific for the purpose of effecting securities transactions. **As a result, this Plan does not alter or change the rights of any Clients in and to their own funds or property and such funds and property shall not be used for debt repayment under this plan.** Asia Pacific is generally paid based on a percentage of assets under management.

Asia Pacific obtains third-party custody services from RBC Clearing & Custody, a division of RBC Capital Markets, LLC ("RBC"), and other firms. Historically, Asia Pacific has used RBC's broker-dealer platform, with RBC acting as custodian and clearing broker executing any trades. This required maintaining a broker-dealer license even though Asia Pacific's services are all or nearly all as an investment advisor and clients do not entrust property to Asia Pacific for the purpose of effecting securities transactions. Asia Pacific had initially selected the broker-dealer platform on the belief that it provided access to a broader range of potential services or transactions that Asia Pacific could offer to Clients. At this point, Asia Pacific is in the process of transitioning its Clients from RBC's broker-dealer platform to RBC's investment advisor platform, which will not require maintaining a broker-dealer license but will still permit Asia Pacific to provide advisory services. As of the filing of this Plan, a majority of Asia Pacific's Clients have made this transition and completed necessary documentation. Asia Pacific intends to continue this transition for the balance of its Clients in the ordinary course of business post-petition. As previously disclosed in the Chapter 11 Case, Asia Pacific further intends to file a Form BDW with appropriate authorities to withdraw its broker-dealer license in the ordinary course of business before confirmation of this Plan. In addition, Asia Pacific also works with Clients who maintain their custodial accounts with other custodial firms, including SEI Investments, MG Trust, Benefits Trust, Lincoln Financial, ASC Trust, and Interactive Brokers.

2.2 Summary of Largest Prepetition Claims and Circumstances Leading Up to the Chapter 11 Filing, and the Chapter 11 Case

Prior to the Petition Date, Asia Pacific engaged in transactions with parties that resulted in Asia Pacific incurring certain debt obligations. The largest of those prepetition Claims and Liens is held by Michael Phillips ("Mr. Phillips"). Accordingly, Asia Pacific filed its bankruptcy petition in order to reorganize its business and is proposing a debt-repayment plan in accordance with the provisions of subchapter V of chapter 11 of the Bankruptcy Code. Asia Pacific determined that it needed to take this step following assertion of claims by a former client, Mr. Phillips, that resulted in an arbitration award (the "Award") from a FINRA arbitration panel totaling approximately $3.041 million which Mr. Phillips asserts is in the amount of approximately $4.3 million when interest is added. *See* Proof of Claim 1-1. The claims arise out of a client relationship that existed between Mr. Phillips and Asia Pacific from 2009 to 2020, when Mr. Phillips discontinued his business relationship with Asia Pacific. The events Mr. Phillips complained of pertain to an individual who stopped providing services to clients of Asia Pacific in March 2020 and who is no longer located in Guam.

Upon commencement of this Chapter 11 Case, Asia Pacific maintained that it is not liable to Mr. Phillips by virtue of the Award and Mr. Phillips allegations related thereto. To that end, Asia Pacific filed a motion to vacate (the "Motion to Vacate") in the Superior Court of Guam prior to commencing the Chapter 11 Case. However, due to the risks and uncertainty involved in litigation and the existential threat to Asia Pacific's business presented by the prospect of a judgment entered against Asia Pacific based on the Award, Asia Pacific determined that proceeding with the Chapter 11 Case was the most appropriate course of action to stabilize its business and ensure that it continued as a going concern.

During the Chapter 11 Case, Mr. Phillips filed a motion to, among other things, convert the Chapter 11 Case to a case under chapter 7 or to dismiss this Chapter 11 Case [Docket No. 85] (the "Motion to Dismiss"). Asia Pacific disputes the allegations made in the Motion to Dismiss, and does not agree that dismissal, conversion, or any other relief requested in the Motion to Dismiss is appropriate or in the best interest of creditors. Mr. Phillips also asserted in multiple filings that any Claim he holds in the Chapter 11 Case should be excepted from discharge under section 523 of the Bankruptcy Code. Asia Pacific likewise disputes this claim for a variety of reasons, including because courts are nearly unanimous that the section 523(a) exceptions to discharge do not apply to corporate debtors, including corporate debtors that have elected to proceed under subchapter V.[4]

Based on the allegations made by Mr. Phillips, the risks associated with them, and the costs attendant with fully litigating such contested matters, Asia Pacific and Mr. Phillips agreed to enter into mediation during the Chapter 11 Case in an effort to resolve the disputes between them in a cost effective manner that would be beneficial to and in the best interest of creditors and the estate. This mediation was conducted by the Honorable Daniel P. Collins, a bankruptcy judge for the United States Bankruptcy Court for the District of Arizona, and began on July 29, 2023 (the "Mediation"). After conducting three Mediation sessions, Asia Pacific and Mr. Phillips agreed to a global settlement of all disputes between them on August 15, 2023 (the "Settlement"). The terms of the Settlement, as read into the record of the Chapter 11 Case, are sealed by order of the Court [D.E. 132]. The Settlement is further memorialized in an agreement between Asia Pacific and Mr. Phillips (the "Settlement Agreement").

---

[4]    See, e.g., Gaske v. Satellite Rests. Crabcake Factor USA (In re Satellite Rests. Inc. Crabcake Factory USA), 626 B.R. 871 (Bankr. D. Md. 2021); Catt v. Rtech Fabrications, LLC (In re Rtech Fabrications, LLC), 635 B.R. 559 (Bankr. D. Idaho 2021); Jennings v. Lapeer Aviation, Inc. (In re Lapeer Aviation, Inc.), No. 21-31500, Adv. No. 22-3002, 2022 WL 1110072 (Bankr. E.D. Mich. Apr. 13, 2022); Avion Funding, LLC v. GFS Indus., LLC (In re GFS Indus., LLC), 647 B.R. 337 (Bankr. W.D. Tex. 2022); Nutrient Ag Solutions, Inc. v. Hall (In re Hall), No. 22-01326, Adv. No. 22-00062, 2023 WL 2927164 (Bankr. M.D. Fla. Apr. 13, 2023); BenShot, LLC v. 2 Monkey Trading, LLC (In re 2 Monkey Trading, LLC), No. 22-04099, Adv. No. 23-00007, 2023 WL 3145124 (Bankr. M.D. Fla. Apr. 28, 2023).[4] Shortly before the filing of this Plan, the Bankruptcy Appellate Panel for the Ninth Circuit issued a decision consistent with these authorities and held that the exceptions to discharge do not apply to corporate debtors proceeding under subchapter V. Lafferty v. Off-Spec Solutions et al. (In re Off-Spec Solutions, LLC), BAP No. ID-23-1020-GCB (9th Cir. B.A.P. Jul. 6, 2023).

2.3    Brief Summary of Asia Pacific's Reorganization Summary

As a small business debtor proceeding under the Small Business Reorganization Act, Asia Pacific seeks to reorganize through this Plan by restructuring its debt obligations so that Asia Pacific will achieve sufficient cash flow from business operations and other available funds to satisfy operational expenses and payment obligations under the Plan. Asia Pacific has prepared projections regarding post-confirmation revenue and expenses for a 36-month time period attached as **Exhibit 1** (defined above as the "Pro Forma"). The Pro Forma contains the Asia Pacific's Projected Disposable Income. Asia Pacific has also attached its Liquidation Analysis as **Exhibit 2** containing the Debtor's anticipated liquidation value (the "Liquidation Value"). As reflected in the Pro Forma and the Liquidation Analysis, the Liquidation Value exceeds the Projected Disposable Income.

Pursuant to the Settlement, Asia Pacific has agreed to pay Mr. Phillips $900,000.00 (the "Settlement Amount") in settlement of the Phillips Claim and related disputes. The Settlement Amount will be paid to Mr. Phillips in two lump sum payments: (a) $800,000.00, to be paid on the later date of the Effective Date of this Plan or November 1, 2023 (the "First Settlement Payment"); and (b) $100,000.00, to be paid on or before December 31, 2024 (the "Second Settlement Payment"). Asia Pacific proposes to pay the First Settlement Payment as part of the payments to be made to Class One Claimants (as further described herein) pursuant to this Plan. The Settlement includes certain releases of Claims between Asia Pacific and Mr. Phillips, including a release by Mr. Phillips of any Claims against Asia Pacific, including Asia Pacific's principals, employees, and shareholders. Asia Pacific makes no admission of liability or wrongdoing in connection with the Settlement. Further information regarding the Settlement and approval of the Settlement and Settlement Agreement upon confirmation of this Plan is included herein, *infra* Art. VIII.

If the Holders of Claims accept this Plan in accordance with section 1126 of the Bankruptcy Code, then all Allowed Unsecured Claims will share ratably in a payment of $812,373.10, and the Holders of Allowed Claims of a higher priority will be paid in full in Cash. If this Plan is not accepted in accordance with section 1126 of the Bankruptcy Code, Asia Pacific will make distributions of Cash to the Holders of all Allowed Claims in an amount not less than what such party would receive in a hypothetical liquidation.

Asia Pacific believes that the proposed amount to be paid on account of Allowed Unsecured Claims represents a significant improvement in recovery for Claimants with Unsecured Claims. In the previous version of the Plan filed by Asia Pacific [Docket No. 120] Allowed Unsecured Claims were proposed to receive a payment equal to Pro Rata distribution of Asia Pacific's Projected Disposable Income or net Liquidation Value. Under such a Plan, Claimants would have received a distribution equal to approximately 0.82% - 2.55% of their Unsecured Claims. Under the present Plan, Asia Pacific anticipates that Claimants with unsecured Claims will receive approximately 18.53% of their Unsecured Claims.

As discussed below, Asia Pacific's Cash Projection (**Exhibit 3**) demonstrates that Asia Pacific has adequate financial resources to make such payments when and as required. This includes by virtue of a shareholder loan to be used to provide sufficient liquidity in the month that plan payments will be made.

22898651.v8

2.4 <u>Liquidation Analysis, as Required by Section 1190(1)(B) of the Bankruptcy Code</u>

The alternative to the Plan is the liquidation of the Assets in a proceeding under chapter 7 of the Bankruptcy Code and the distribution of the net proceeds thereof to administrative, priority, and unsecured creditors, in the order of priority and manner provided under the Bankruptcy Code. In general, this would require that administrative expense creditors, including administrative expense creditors in the Chapter 11 Case and in the chapter 7 case (with the latter having priority) be paid first, then priority creditors, with the balance, if any, distributed to unsecured creditors on a Pro Rata basis.

Asia Pacific's Assets include certain personal property, as identified in Asia Pacific's Schedules and Statement of Financial Affairs, including Cash, investments, and accounts receivable. Asia Pacific does not own any real property. Although it is impossible to determine the exact liquidation value of the Assets, for purposes of this Liquidation Analysis, Asia Pacific estimates that a liquidation of all Assets (excluding Causes of Action and Chapter 5 Claims) would produce values set forth in the Liquidation Analysis.

By way of additional information, Asia Pacific states as follows:

- **<u>Client List</u>:** Asia Pacific does not believe the Client List has any value in a hypothetical liquidation because (A) there is no contractual requirement that any Client continue to do business with Asia Pacific; (B) the good will value of Asia Pacific and individual investment advisor representatives is integral to the relationship that Asia Pacific has with each Client and would not transfer with a sale of the Client List; and (C) to the extent that there are non-competition provisions in contracts with Asia Pacific's registered representative investment advisors, such provisions are generally unenforceable under Guam law because they are located in personal services contracts. Without waiving any rights, the Liquidation Analysis contains a range of value for the Client List reflecting a maximum potential liquidation value.

- **<u>Chapter 5 Claims</u>:** No recovery or related litigation costs have been attributed to any potential Chapter 5 Claims due to potential defenses to such actions, the costs of such litigation, the lack of any sufficient source of post-conversion funding for speculative litigation, uncertainty about the outcome of such litigation, and anticipated disputes in these matters.[5] This could make any recovery worse in total due to higher professional fees to redistribute amongst creditors.

- **<u>Cash</u>:** Asia Pacific's estimate of cash includes all sources of funds known to be available to it.

---

[5] For example, the majority of potential Chapter 5 Claims are payments made to investment advisor representatives providing services to Asia Pacific. Asia Pacific believes such payments were generally made when and as required under such contracts and that reasonably equivalent value was provided for such services.

22898651.v8

- **Distribution of Net Proceeds:** The Liquidation Analysis assumes that gross proceeds of Assets would be distributed in accordance with section 726 of the Bankruptcy Code in accordance with the mandatory order of priorities and with appropriate fees and expenses to wind down Asia Pacific's business, as indicated in the Liquidation Analysis.

The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code because any Holder of an Allowed Claim who has not accepted the Plan will receive value, as of the Effective Date, that is at least as much as the Holder of such Allowed Claim would receive in a hypothetical liquidation on the same date.

2.5    Feasibility Analysis, as Required by Section 1190(1)(C) of the Bankruptcy Code

Section 1190(1)(C) of the Bankruptcy Code requires Asia Pacific to provide "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." Further, section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors.

**Exhibit 3** contains Asia Pacific's Cash Projections demonstrating that the Plan is feasible based on projected revenue, operating expenses, other necessary and standard expenses (including those permissible under section 1191(d) of the Bankruptcy Code), and Asia Pacific's restructured payment obligations under the Plan. The Cash Projections demonstrate that Asia Pacific has sufficient liquidity to fund obligations under this Plan when and as proposed.

In addition, the Pro Forma (**Exhibit 1)** constitutes Asia Pacific's projections based on historic and anticipated future operations, including after consultation with Asia Pacific's advisors, and Asia Pacific has attempted to provide as accurate information as possible. Premised on the Pro Forma, the Plan is not likely to be followed by the liquidation of the Assets or the need for further financial reorganization, and the reorganized entity is able and likely to make the payments required by this Plan.

2.6    Disclosure regarding Status of Claim Objections

Asia Pacific is continuing to evaluate potential objections to Claims consistent with the deadlines and requirements in this Plan. Asia Pacific is also considering the cost to the Estate of prosecuting an objection balanced against the benefit if such objection is sustained. Asia Pacific reserves the right to initiate any objection to a Claim in the future in accordance with the provisions of this Plan.

2.7    Voting to Accept or Reject the Plan

If you are entitled to vote, enclosed with this Plan is a ballot for your use in voting to accept or reject the Plan. Asia Pacific encourages you to vote to accept the Plan. In order for your vote to count, your properly completed and executed ballot must be received no later than **11:59 p.m. on November 3, 2023**, at the office of Asia Pacific's local counsel in Guam:

15

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email: jtang@civilletang.com

Ballots may be sent by any method, including e-mail, that causes them to be timely delivered.

The Court shall conduct the Confirmation Hearing regarding confirmation of the Plan on **November 21, 2023, at 8:00 a.m. (CHST), at 520 W. Soledad Avenue, 4th Floor, Hagåtña, Guam**, or as the Court directs and as will be indicated in the applicable notice of hearing that you will receive. The Confirmation Hearing may be continued by the Court from time to time, including on the record in open court. All objections to the Plan must be Filed no later than **November 3, 2023** (the "Confirmation Objection Deadline").

**EACH CREDITOR SHOULD NOTE THAT IF ANY CLASS OF CLAIMS SHOULD FAIL TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, THE BANKRUPTCY COURT MAY NONETHELESS ENTER AN ORDER CONFIRMING THE PLAN. THE REQUIREMENTS FOR OBTAINING SUCH AN ORDER ALLOW THE BANKRUPTCY COURT TO ENTER SUCH AN ORDER IF, AFTER NOTICE AND A HEARING, THE BANKRUPTCY COURT FINDS THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO ANY IMPAIRED CLASS OF CLAIMS OR INTERESTS WHICH HAS NOT ACCEPTED THE PLAN. IF ANY CLASS OF CLAIMS FAILS TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, ASIA PACIFIC SHALL SEEK SUCH AN ORDER CONFIRMING THE PLAN NOTWITHSTANDING THE FAILURE OF AN IMPAIRED CLASS TO ACCEPT THE PLAN.**

2.8     Tax Consequences of the Plan

The federal, state, and local tax consequences of the Plan may be complex and, in some cases, uncertain. Such consequences may also vary based upon the individual circumstances of each Holder of a Claim or Interest. **EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN. THIS PLAN MAY NOT BE RELIED UPON FOR, AND SHALL NOT BE DEEMED TO CONSTITUTE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any distributions under the Plan.

16

22898651.v8

# ARTICLE III

## Classification of Claims and Interests

Each Holder of: (a) a Claim against Asia Pacific and/or the Estate of whatever nature, whether or not scheduled and whether unliquidated, absolute, or contingent, including all Claims arising from the rejection of leases and Executory Contracts; or (b) any Interests in Asia Pacific, shall be bound by the provisions of the Plan, and all such Claims and Interests are hereby classified as follows:

3.1 **Unclassified Claims** shall consist of: (A) all Allowed Administrative Claims, including, without limitation, Allowed Professional Fees and Expenses; and (B) the Allowed Subchapter V Trustee Claim. Unclassified claims are not being restructured and, therefore, are not entitled to vote on the Plan. The Bankruptcy Code requires that, to the extent Allowed, such Unclassified Claims must be paid in full upon the date when a chapter 11 plan becomes effective, unless otherwise agreed.

3.2 **Class One** shall consist of all Allowed Unsecured Claims, including, without limitation, (i) the Phillips Claim, and any (ii) any Rejection Damages Claims. There are no known Rejection Damages Claims at this time.

3.3 **Class Two** shall consist of the Interests in Asia Pacific as of the Petition Date.

**If you believe that you hold a Claim or Interest that is not provided for properly in this Plan, then you must timely file an Objection to confirmation or the Court may approve the proposed treatment of your Claim or Interest or lack of any treatment for such Claim or Interest.**

# ARTICLE IV

## Treatment of Claims and Interests

A. **Unclassified Claims**

4.1 **Unclassified Claims**. Unclassified Claims are unimpaired and subject to the following treatment.

(A) All Allowed Administrative Claims shall be paid in full in Cash, unless payment terms are subject to a separate Order of the Bankruptcy Court: (a) on the later of the Effective Date or within 14 calendar days after the date on which each such Claim is Allowed, or as soon as is reasonably practicable thereafter; or (b) in accordance with such terms as may be agreed upon by Asia Pacific and each such Holder of an Allowed Administrative Claim. Except as provided for in subparagraph (B) of this

17

Section 4.1, any party in interest asserting an Administrative Claim shall be required to file a motion or application seeking allowance of such Administrative Claim no later than the Post-Petition Bar Date, subject to the Bankruptcy Court's ordinary notice and objection procedures.

(B)     This subparagraph provides the treatment for Holders of Claims for administrative costs or expenses that are incurred in the ordinary course of Asia Pacific's operations and that allowable under section 503(b) of the Bankruptcy Code (each an "<u>Ordinary Course Administrative Claim</u>").  The term Ordinary Course Administrative Claim does not include Claims relating to the costs of curing a default under an executory contract or unexpired lease to be assumed by Asia Pacific, Professional Fees and Expenses, or the Subchapter V Trustee Claim.  Each Ordinary Course Administrative Claim, unless disputed by Asia Pacific, shall be satisfied by Asia Pacific under the terms and conditions of the particular transaction giving rise to that Ordinary Course Administrative Claim (including historic practice between the parties), without any further action by the Holder of such Ordinary Course Administrative Claim.  Asia Pacific will include a list of all unpaid Ordinary Course Administrative Claims with its Notice of the Effective Date (as that term is defined in this Plan) and shall pay such Ordinary Course Administrative Claims in the ordinary course of business without the Holders of such Ordinary Course Administrative Claims being required to seek relief from the Court.

**B.    <u>Classified Claims</u>**

The treatment of classified Claims under the Plan shall be as follows:

4.2     **<u>Class One – Allowed Unsecured Claims</u>.  The Claims in Class One are impaired and entitled to vote on the Plan, pursuant to section 1126 of the Bankruptcy Code.**  In full and final satisfaction of the Allowed Claims in Class One, Asia Pacific shall provide the following treatment to the Holders of each Allowed Claim in Class One: (A) in the event that Class One accepts the Plan, then Asia Pacific shall provide a single payment to each Holder of an Allowed Claim in Class One equal to a Pro Rata distribution of $812,373.10; or (B) in the event that Class One does not accept the Plan, then Asia Pacific shall pay the Holder of each Allowed Claim in Class One a Pro Rata distribution, not to exceed 100% of any Allowed Claim, of the net Liquidation Value set forth in the  Liquidation Analysis. Except as otherwise agreed between Asia Pacific and the Holder of any Allowed Claim, payments shall be made as follows:

In the event that this Plan is accepted by Class One, then the payments provided for herein shall be made on the later date of the Effective Date or November 1, 2023; or

In the event that this Plan is not accepted by Class One, then the payments provided for herein shall be made within 14 days all Objections to Claims are resolved by entry of a Final Order or agreement of the applicable parties or as soon as is reasonably practicable thereafter.

The Class One Claims shall not accrue or be paid interest.

4.3     **Class Two – Interests in Asia Pacific.  The Interests in Class Two are unimpaired and are not entitled to vote on the Plan, pursuant to section 1126(f) of the Bankruptcy Code.**  The Holders of Interests in Class Two as of the Petition Date shall retain their Interests under this Plan.  All Interests shall be reinstated and, to the extent necessary, those certain Amended and Restated Articles of Incorporation of Asia Pacific Financial Management Group, Inc., (as the same may have been or may be amended from time to time) are assumed and reinstated.

# ARTICLE V

## Allowance and Disallowance of Claims

5.1     **Pre-petition Claims and Amendments.**  Each Claim as to which a proof of claim is required to be filed on or before the Bar Date as to which a proof of claim was not filed on or before such Bar Date shall not under any circumstances become an Allowed Claim, except as may otherwise be provided for herein.  In no event shall the Allowed Amount of any Claim against Asia Pacific exceed the amount set forth in a proof of claim filed on or before the Bar Date, as each is applicable, unless the claimant, in its proof of claim, expressly reserved the right to amend such proof of claim.

5.2     **Objections.**  Any and all Claims (other than Claims subject to the Post-Petition Bar Date), which have **not** been scheduled by Asia Pacific as contingent, unliquidated, or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be Allowed in full, unless an objection to such Claim or interests is filed on or before the Claims Objection Deadline — provided, however, that the Phillips Claim shall be Allowed immediately upon the Effective Date.  Claims have been objected to and not Allowed shall have no right to vote with respect to acceptance or rejection of this Plan, except as otherwise ordered by the Court.

5.3     **Bar Date for Objection to Post-Petition Claims.**  Any Claim entitled to priority under section 507(a)(2) of the Bankruptcy Code arising before the Confirmation Date and still outstanding 60 days thereafter shall forever be barred, **unless** it is the subject of a motion (or, in the case of a Claim for Professional Fees and Expenses, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-Petition Bar Date or such other date as is provided by order upon motion of Asia Pacific, **except** that Claims for Professional Fees and Expenses, as well as the Subchapter V Trustee Claim, shall be Allowed only by order of the Bankruptcy Court.

22898651.v8

# ARTICLE VI

## Interests to be Retained and Rights to be Exercised

6.1 **Preservation of All Causes of Action**.  Except as otherwise provided in the Plan, or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b), Asia Pacific and/or the Estate shall retain and preserve and shall be vested with, retain, and may enforce and prosecute any claims or Causes of Action that Asia Pacific and/or the Estate may have against any person or entity that constitute a Cause of Action. Asia Pacific shall have standing as a representative of the Estate for the purposes of investigating, pursuing, prosecuting, settling, collecting, liquidating, and/or recovering any assets, claims or causes of action that constitute Causes of Action.

# ARTICLE VII

## Means of Financing the Plan; Plan Distributions;
## Remedies; and Other Relief Afforded under the Plan

7.1 **Financing of Plan Obligations**.  The payments required under the Plan shall be made primarily from the following sources:  (a) cash on hand; (b) the proceeds generated from the ongoing operation of Asia Pacific's businesses; (c) a shareholder loan, as reflected in the Cash Projections; (d) the proceeds of any Causes of Action and Claims which Asia Pacific and/or the Estate have brought and/or may elect to bring, including without limitation, any proceeds of such Causes of Action; and (e) the proceeds of the sale of the Assets.  Please see the Cash Projections for further information.

7.2 **Manner of Distribution**.  Any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, ACH, or by wire transfer (or by any manner agreed to between Asia Pacific and the Holder of an Allowed Claim) and shall be made in United States funds.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

7.3 **De Minimis Distributions**.  "De Minimis Distributions" shall refer to any distribution to a Holder of an Allowed Claim or Interest under the Plan of less than $100.00.  All De Minimis Distributions shall be held by Asia Pacific for the benefit of the Holders of Allowed Claims or Interests entitled to De Minimis Distributions.  If the aggregate amount of De Minimis Distributions exceeds $100.00, Asia Pacific shall distribute such De Minimis Distributions to such Holder of the Allowed Claim or Interest, and De Minimis Distributions shall be retained by Asia Pacific in the event that the De Minimis Distributions does not exceed $100.00.

7.4 **Delivery of Distributions**.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by Asia Pacific:  (i) at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holder if no motion requesting payment or proof of claim is filed or Asia Pacific has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered

to Asia Pacific after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by Asia Pacific if no proof of claim has been filed and Asia Pacific has not received a written notice of a change of address.

7.5 **Undeliverable Distributions**. If payment or distribution to any Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, Asia Pacific shall file with the Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of 90 days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the Holder shall be distributed to the Holders in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

7.6 **Time Bar to Cash Payments**. Checks issued by Asia Pacific in respect of distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within 120 days of the date of their issuance, and Asia Pacific shall have no obligation to reissue such check after the 120-day deadline.

7.7 **Plan Defaults and Remedies**. In the event any party claims that Asia Pacific is in default of any obligation of Asia Pacific under the terms of the Plan, including any claim that Asia Pacific failed to make any payment required by the terms of the Plan, such party shall provide Asia Pacific with written notice setting forth, in specific terms, the alleged default. A copy of such notice shall also be provided to Asia Pacific's counsel at jtang@civilletang.com and andrew.helman@dentons.com and sent by United States Mail, postage prepaid, as follows:

To Asia Pacific:

Sandra McKeever
Asia Pacific Financial Management Group, Inc.
145 Aspinall Avenue
Hagåtña, GU 96910

To Counsel:

Joyce C.H. Tang
Civille & Tang, PLLC
330 Hernan Cortez Avenue, Suite 200
Hagåtña, GU  90910

   and

Andrew C. Helman
Dentons Bingham Greenebaum, LLP
One City Center, Suite 11100
Portland, ME  04101

21

All such notices shall be deemed received on the date sent by electronic mail, provided a return receipt is received, or three days after placed in the United States Mail. Asia Pacific shall have 15 business days from receipt of such notice to cure the default. In the event that Asia Pacific fails to cure the default within the 15-business-day period, the party claiming the default shall be free to pursue its remedies against Asia Pacific under applicable non-bankruptcy law, and Asia Pacific shall have the right to assert as a defense that no default occurred. No default shall be deemed to exist under the Plan until such time as: (i) the written notice has been provided as required herein, and (ii) Asia Pacific has failed to respond or cure the default as provided for by the terms herein.

7.8     **Setoffs and Recoupments**. Asia Pacific may, pursuant to sections 502(h), 553, and 558, or applicable non-bankruptcy law, but shall not be required to, offset against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever that Asia Pacific may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by Asia Pacific and/or the Estate of any right of offset or recoupment that Asia Pacific and/or the Estate may have against the Holder of such Claim, nor of any other claim or Cause of Action.

7.9     **Distributions in Satisfaction; Allocation**. Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and interests in Asia Pacific and/or the Estate and/or the Assets of Asia Pacific and/or the Estate, whether known or unknown, arising or existing prior to the Effective Date.

7.10     **Cancellation of Notes and Instruments**. As of the Effective Date, all notes, agreements, and securities evidencing Claims and Interests and the rights thereunder of the Holders thereof, shall, with respect to Asia Pacific, be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against Asia Pacific and/or the Estate, and such Liens shall be discharged automatically and without further action by Asia Pacific upon the Effective Date, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Plan, provided, however, that Asia Pacific shall be authorized, but not required, to file or record such notice(s) of discharge to reflect the relief in the Plan after the Effective Date. The foregoing sentence shall not apply to any Contract assumed pursuant to the Contracts Schedule nor to contravene any other express provision of the Plan.

7.11     **No Interest on Claims**. Unless otherwise specifically provided for in the Plan or the Confirmation Order, or a postpetition agreement in writing between Asia Pacific and a Holder of a Claim and approved by an order of the Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any claim which is not an Allowed Claim (a "Disputed Claim") in respect of the period from the Confirmation Date to the date the first distribution is made when and if such Disputed Claim becomes an Allowed Claim. No payments shall be made to the Holder of a Disputed Claim until such time as the Disputed Claim becomes an Allowed Claim, at which time Asia Pacific shall

begin to make payments to the Holder of the Allowed Claim from the date the Disputed Claim is deemed an Allowed Claim in accordance with the terms of the Plan.

7.12 **Cram Down**. In the event that any class Allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the Plan, Asia Pacific shall move the Court to confirm the Plan pursuant to section 1191(b) of the Bankruptcy Code.

7.13 **Settlement of Claims**. After the Effective Date, Asia Pacific may enter into settlement agreements with one or more of the Holders of Claims against Asia Pacific or the Estate, provided that the settlement provides a net benefit to Asia Pacific, in its sole business judgment, and helps foster performance under the Plan. Asia Pacific shall be authorized to enter into the foregoing arrangements after the Effective Date without further order of the Court.

7.14 **Asia Pacific Shall Directly Make All Distributions Required Under the Plan**. Pursuant to section 1194(b) of the Bankruptcy Code, and in the absence of a subsequent order of the Court to the contrary, the Plan expressly provides that Asia Pacific shall make all payments provided for under the Plan. For the avoidance of doubt, the Subchapter V Trustee has no duties to act as disbursing agent and no duties to disburse any payments to Claimants under the Plan. In the event that the Court orders Asia Pacific to make distributions through the Subchapter V Trustee, the Subchapter V Trustee's compensation and commission for effecting such distributions shall be determined by further order of the Court after an opportunity for notice and hearing to Asia Pacific and all other parties in interest.

7.15 **Internal Revenue Service**. As of the filing of the Plan, Asia Pacific is current with filing all payroll tax returns and payment of the required taxes under the payroll tax returns. Asia Pacific also has filed all federal income tax returns as of the filing of the Plan, subject to any applicable extensions. Following the Effective Date, Asia Pacific shall: (i) make all required federal tax deposits for all payroll tax returns as they come due under applicable non-bankruptcy law; and (ii) file all required federal tax returns on or before the date such returns are due under applicable non-bankruptcy law (including any extensions). In the event that Asia Pacific fails to comply with (i) and (ii) after the Effective Date, then Asia Pacific shall be obligated to rectify such discrepancies through applicable non-bankruptcy channels within the IRS, and Asia Pacific shall be subject to collection actions by the IRS pursuant to applicable non-bankruptcy. The foregoing obligations include any future tax liabilities that may arise after the Effective Date in the event of an examination or audit of a tax return. In the event that a tax liability arises after the Effective Date from an examination or audit of a tax return for any prepetition time period, then Asia Pacific shall address such audit or examination results through non-bankruptcy channels within the IRS.

## ARTICLE VIII

### Approval of Settlement and Settlement Agreement

8.1 **Settlement with Michael Phillips.** Pursuant to section 1123 and Bankruptcy Rule 9019, the Plan incorporates a Settlement of both the Phillips Claim against Asia Pacific and of Asia Pacific's Causes of Action against Michael Phillips to achieve an economic and efficient

resolution of this Chapter 11 Case. The Settlement, as read into the record of the Chapter 11 Case and as further memorialized in the Settlement Agreement attached hereto as **Exhibit 4**, are further described in sections 2.2 and 2.3 of this Plan. Pursuant to the Settlement, Asia Pacific has agreed to pay Mr. Phillips $900,000.00 (the "Settlement Amount") in settlement of the Phillips Claim and related disputes, including the "Released Claims" as defined in the Settlement Agreement. Such "Released Claims" include (A) any and all claims that Mr. Phillips may have against Ms. Sandra McKeever and, among others, any current or former director, officer, or employee, or investment advisor of Asia Pacific and (B) and claims that Asia Pacific or Ms. McKeever may have against Mr. Phillips, his assigns, representatives, agents, heirs, and attorneys. The Settlement Amount will be paid to Mr. Phillips in two lump sum payments: (a) $800,000.00, to be paid on the later date of the Effective Date of this Plan or November 1, 2023;[6] and (b) $100,000.00, to be paid on or before December 31, 2024.

The entry of the Confirmation Order shall constitute the Court's approval under Bankruptcy Rule 9019 of the Settlement and Settlement Agreement between Asia Pacific and Mr. Phillips, including the granting of releases comprising the Released Claims.[7] The Bankruptcy Court's findings shall constitute its determination that such compromise and settlement is in the best interests of Asia Pacific, its Estate, Asia Pacific's creditors, and other parties-in-interest, and is fair, equitable, and within the range of reasonableness.

8.2    **Approval of the Settlement Upon Confirmation of the Plan.** Settlements between a debtor in possession and a third party affecting the property of a debtor's estate are subject to court approval. *See Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F. 3d 1036, 1039 (9th Cir. 2016) ("[S]ettlement between an estate and its creditors must be approved by the bankruptcy court under Rule 9019."). Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019. "Compromises and settlements are favored in bankruptcy." 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2023) (citing *Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993)).

To be approved, a proposed settlement must be the product of good faith negotiation between the settling parties, and must be "fair and equitable." *Martin v. Kelly (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). A court need not conduct "an exhaustive investigation or mini-trial on the merits of a settlement[.]" *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). "[T]he court's proper role is 'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *Id.* (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493, 496–97 (Bankr. S.D.N.Y. 1991)). In making these determinations, a court must consider the following factors: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily

---

[6]    In the event that the Plan is not accepted and Asia Pacific pays Class One Claimants the Liquidation Value, as described in Section 4.2 of the Plan, Asia Pacific will pay the Settlement Amount to Mr. Phillips on the terms set forth in the Settlement and Settlement Agreement.

[7]    There are no non-consensual third-party releases included in the Settlement. All releases are fully consensual among the affected parties.

22898651.v8

attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *A&C Props.*, 784 F.2d at 1381.

Section 1123(b) of the Bankruptcy Code sets out certain permissive provisions that may be included in a chapter 11 plan, including "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. §§ 1123(b)(3)(A) & (b)(6). Settlements under section 1123(b) are evaluated by the same standard applied by courts under Bankruptcy Rule 9019. *See*, *e.g.*, *In re NII Holdings, Inc.*, 536 B.R. 61, 98 (Bankr. S.D.N.Y. 2015).

Asia Pacific submits that in this case the Settlement and Settlement Agreement meet the standard for approval under Bankruptcy Rule 9019 and should be approved. The Settlement was negotiated in good faith in the Mediation. The Settlement is fair and equitable, is in the best interest of creditors and the estate, and is a reasonable and economical resolution of the disputes between Asia Pacific and Mr. Phillips. In reaching the Settlement, Asia Pacific carefully evaluated its probability of success if its various disputes with Mr. Phillips were fully litigated to conclusion, as well as the likelihood that such litigation would come at the cost of considerable time, expense, and continued interruption to Asia Pacific and its business.

Although Asia Pacific believes that it has strong positions with respect to issues including the Motion to Vacate, Motion to Dismiss, dischargeability of Claims pursuant to section 523 of the Bankruptcy Code, and the Liquidation Value of its business, continued litigation of each these issues is inherently uncertain. If Asia Pacific is ultimately unsuccessful litigating one or more of these issues, then the result could have negative impacts on Asia Pacific's business and ability to continue serving its Clients. What is more, even a successful resolution of these issues would likely involve several months of protracted and contentious discovery, motions practice, and trial preparation, and would significantly increase Asia Pacific's legal and administrative costs in in connection with this Chapter 11 Case. Further, the Chapter 11 Case has placed a significant burden on Asia Pacific and its officers and employees, who have been required to commit substantial time and energy to various issues that have arisen during the Chapter 11 Case. Asia Pacific determined that reaching a consensual resolution of disputes with Mr. Phillips as contemplated by the Settlement would ultimately minimize costs and business interruptions by permitting Asia Pacific to emerge from bankruptcy more quickly than otherwise able.

Lastly, Asia Pacific believes that no creditors or other parties in interest will be harmed by the Settlement. Indeed, as a result of the Settlement, Holders of Unsecured Claims are set to receive distributions under the Plan that are larger than the distributions initially proposed by Asia Pacific. Accordingly, Asia Pacific believes that creditors and the estate will receive substantial benefits as a result of the Settlement, and requests that the Settlement and Settlement Agreement be approved pursuant to Bankruptcy Rule 9019 upon confirmation of the Plan.

## ARTICLE IX

## Executory Contracts and Unexpired Leases

9.1 **Assumption/Rejection of Certain Executory Contract and Unexpired Leases.** As of the Effective Date, all Contracts of Asia Pacific shall be assumed except for those set forth on the Rejected Contract Schedule attached as **Exhibit 3**, which shall be rejected. Asia Pacific has not identified any amounts comprising Cure Amount Claims and, therefore, no Cure Amount Claims are proposed or required to be paid for assumption to occur as of the Effective Date, except as otherwise ordered by the Bankruptcy Court.[8] Among the Contracts assumed are contracts with Asia Pacific's registered investment advisor representatives on terms consistent with Asia Pacific's longstanding pre-bankruptcy practices and Asia Pacific's investment advisory agreements with its Clients, to the extent not previously terminated in accordance with applicable non-bankruptcy law. Assumption of such contracts is necessary for continuing business operations.

9.2 **Rejection Damages Claims**. Any Claim for damages arising from the rejection or deemed rejection of any Contract must be filed on or before the Post-Petition Bar Date or by such other date and time specified by the Court. If no such Claim is timely filed, then such Claim shall be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be classified as Allowed Unsecured Claims under Class One of the Plan.

## ARTICLE X

## Effect of Confirmation, Discharge and Injunction

10.1 **Discharge**. If the Plan is confirmed under section 1191(a), on the Confirmation Date of this Plan, Asia Pacific shall be discharged from any debt, Claim, or other obligation that arose before entry of the Confirmation Order, subject to the occurrence of the Effective Date, to the extent specified in section 1141(d) of the Bankruptcy Code. If, however, the Plan is confirmed under section 1191(b), then as soon as practicable after completion by Asia Pacific of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by Asia Pacific after the order for relief, the Court shall grant Asia Pacific a discharge of all debts and Claims provided in section 1141(d)(1)(A), and all other debts and Claims Allowed under section 503 of the Bankruptcy Code and provided for in this Plan, except any debt or Claim on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the Court. In addition to the foregoing, upon satisfaction of any Claim in the manner provided for under this Plan, the Debtor shall be deemed discharged of such Claim and any remedies with respect to such Claim that are not provided for under this Plan.

10.2 **Injunction.** **Except as otherwise expressly provided in this Plan, the documents executed pursuant to this Plan or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in Asia Pacific, the Assets, or the Estate that arose prior to the**

---

[8]    Asia Pacific reserves the right to amend the Rejected Contract Schedule according to section 1193 of the Bankruptcy Code.

22898651.v8

Confirmation Date (including, but not limited to, federal, state and other governmental units or agents working on any of their behalf, and any federal or state official, employee, or other entity acting in an individual or official capacity on behalf of any federal, state or other governmental units, except as acting in the exercise of police or regulatory powers) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against Asia Pacific or the Estate, or any Assets of Asia Pacific of the Estate; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or Encumbrance of any kind against Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; (iv) asserting or effecting, directly or indirectly, any setoff (excluding any setoff within the meaning of section 553 of the Bankruptcy Code and asserted as a defense or for reduction only) or right of subrogation, against obligations due to Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan, including the Settlement Agreement. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IX shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of Asia Pacific under this Plan. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against Asia Pacific or any Assets of Asia Pacific based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan. Nothing in this Plan shall prevent the Holder of an Allowed Claim from requesting that the Court waive the foregoing paragraph as to such Holder of an Allowed Claim to the extent necessary following a determination by a court of competent jurisdiction that the Debtor has breached is obligations to the Holder of such Allowed Claim under the terms of this Plan.

10.3 **Term of Injunctions**. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, shall remain in full force and effect until the entry of the Confirmation Order and occurrence of the Effective Date.

**10.4 Exculpation.** As of the Effective Date, neither Asia Pacific, nor any of Asia Pacific's professionals, officers, directors, or agents (acting in a fiduciary capacity to the estate) (the "Exculpated Parties"), shall have or incur any liability to any Holder of an Allowed Claim or Equity Interest for any act taken or omitted to be taken after the Petition Date through and including the Effective Date in connection with the administration of the Chapter 11 Case, including the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation

27

of the transactions set forth in the Plan; **provided, however,** that the provisions of this section (1) shall not limit the rights of any Holder of an Allowed Claim or Equity Interest to enforce rights arising under the Plan; or (2) shall have no effect on the liability of the Exculpated Parties for willful misconduct, gross negligence, fraud, or criminal misconduct as determined by a Final Order of a court of competent jurisdiction. Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI

## <u>Retention of Jurisdiction</u>

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the Court shall retain jurisdiction with respect to the following matters after the Confirmation Date:

a) To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or Interest, including, without limitation, any Administrative or Priority Claim;

b) To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

c) To liquidate damages in connection with any disputed, contingent, or unliquidated Claims;

d) To adjudicate all Claims to, or ownership of any Assets of, Asia Pacific or in any proceeds thereof arising prior to and after the Effective Date;

e) To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken prior to the Effective Date;

f) To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

g) To hear and determine any and all Causes of Action;

h) To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses, the Subchapter V Trustee Claim, and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

i) To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

28

j)  To adjudicate any motions to turn over Assets to Asia Pacific;

k)  To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Court in connection with Asia Pacific, the Chapter 11 Case, or any controversy or dispute which may affect Asia Pacific's ability to implement or fund the Plan; and

l)  To hear and determine such other matters as the Court in its reasonable discretion shall deem appropriate.


## ARTICLE XII

### General Provisions

12.1  **Construction**.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretation of this Plan.

12.2  **Severability**.  Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.3  **Controlling Documents**.  In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto, including the Settlement Agreement) is inconsistent with the provisions of any other agreement, document, or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.

12.4  **Governing Law**.  Except to the extent that the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other controlling federal statutes or laws, are applicable, the rights and obligations arising under this Plan and any documents, instruments or agreements executed in connection with this Plan (except as otherwise indicated in such documents, instruments and agreements), shall be governed by, and construed and enforced in accordance with, the internal laws of the Territory of Guam.

12.5  **Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, Asia Pacific and its respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.  The rights, benefits, and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for Asia Pacific under chapters 7 or 11 of the Bankruptcy Code).

29

12.6 **The Assets**. On the Effective Date, the Assets shall vest in Asia Pacific in accordance with section 1141(b) of the Bankruptcy Code. On and after the Confirmation Date, and subject to compliance with the terms of this Plan, Asia Pacific may, without further approval of the Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Assets for the purpose of liquidating and converting such Assets to Cash, making distributions, and fully consummating the Plan.

12.7 **Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any leases or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to any of the Assets, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any tax to the fullest extent Allowed under section 1146 of the Bankruptcy Code.

12.8 **Further Assurances and Cooperation**. Asia Pacific, and each person required or contemplated by this Plan to execute and deliver a written instrument, agreement, or document, shall execute and deliver such instrument, agreement or document in form and substance satisfactory to Asia Pacific and shall perform all other and further reasonable acts requested by Asia Pacific, in order to permit the purposes and intents of this Plan to be consummated.

12.9 **Termination of Subchapter V Trustee**. The service of the Subchapter V Trustee shall terminate upon Substantial Consummation of the Plan, except that the United States Trustee may reappoint a trustee as needed for performance of duties under section 1183(b)(3)(C) and section 1185(a) of the Bankruptcy Code. Not later than 14 days after Substantial Consummation, Asia Pacific shall file with the Court and serve on the Subchapter V Trustee and the United States Trustee notice of such Substantial Consummation.

12.10 **Closing of Chapter 11 Case**. The Chapter 11 Case shall be deemed closed at such time as the order closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code has been entered by the Court.

12.11 **Management Post-Confirmation**. Upon confirmation of the Plan, Asia Pacific's existing officers, directors, and management shall continue to serve in their existing roles to operate the businesses and control the Assets of Asia Pacific on a day-to-day basis. Nothing in this Plan shall prohibit or limit the ability of Asia Pacific to change members of its management team or make other operational or management changes in the ordinary course. In compliance with section 1129(a)(5)(B), Asia Pacific discloses the following insiders that will be employed or retained post-confirmation and the nature of compensation for such insider:

| **Name** | **Position** | **Nature of Compensation** |
|---|---|---|
| Sandra McKeever | Chief Executive Officer | Commissions and/or investment advisory fees (on existing terms) |

30

| Melinda Sulit | Chief Financial Officer | Salary (on existing terms) |
| Jonathan Ulloa | Financial Advisor | Commissions and/or investment advisory fees (on existing terms) |

12.12.  **Operating Reports Post-Confirmation**.  Following confirmation of the Plan and until the Effective Date, Asia Pacific shall continue to file monthly operating reports utilizing Official Form 425C, to the extent required under applicable law or rules of the United States Trustee.

12. 13  **Notice of the Effective Date**.   As soon as practicable after the occurrence of the Effective Date, Asia Pacific shall file a Notice of the Effective Date

12.14  **Employee Benefit Plans and Programs**.  Entry of the Confirmation Order shall, to the extent necessary, authorize Asia Pacific to maintain or, to the extent necessary, assume and perform all obligations with respect to any Employee Benefit Plans and Programs.

12.15  **No Admissions**.   Notwithstanding anything herein to the contrary, nothing contained in the Plan or any exhibits hereto shall be deemed an admission by Asia Pacific or the Estate with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.


## ARTICLE XIII

### Modification of the Plan

Asia Pacific may modify the Plan in accordance with section 1193 of the Bankruptcy Code and other applicable law.


## ARTICLE XIV

### Conditions Precedent to Effective Date

14.1  **Conditions Precedent**. Subject to Article 14.2, the Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions precedent have occurred: (i) the Confirmation Order is a Final Order; and (ii) Asia Pacific has begun making the distributions required under the Plan as of the Effective Date (excluding Allowed Professional Fees and Expenses and the Allowed Subchapter V Trustee Claim).  In the event that the conditions precedent in Article 13.1 have not been met by the Confirmation Date or waived by Asia Pacific, then the Effective Date shall occur immediately upon satisfaction of such conditions thereafter.

31

14.2 **Waiver**. Asia Pacific may, in its discretion, waive some or all of the conditions precedent to the Effective Date set forth in Article 14.1. Notice of any such waiver shall be filed on the docket in the Chapter 11 Case.

Dated:  November 15, 2023                    Respectfully submitted,

**ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.**

*/s/ Sandra McKeever*
By:  Sandra McKeever
Its:  CEO and Authorized Representative

Through its counsel:                    */s/ Andrew C. Helman*

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Phone: (671) 472-8868/69
Email:  jtang@civilletang.com

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
One City Center, Suite 11100
Portland, Maine 04101
Phone: (207) 619-0919
Email:  andrew.helman@dentons.com