**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Telephone: (671) 472-8868/69
Email: *jtang@civilletang.com*

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
One City Center, Suite 11100
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*

*Counsel for the Debtor*

**IN THE DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**
**BANKRUPTCY DIVISION**

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC., [1] | Chapter 11 |
| Debtor. | **SUMMARY SHEET TO SECOND AND FINAL FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF DENTONS AS COUNSEL TO THE DEBTOR FOR THE PERIOD OF APRIL 26, 2023 THROUGH TO AND INCLUDING DECEMBER 20, 2023 AND FOR RELATED RELIEF** |

| | |
|---|---|
| Name of Applicant: | Dentons |
| Authorized to Provide Professional Services as: | *Counsel to the Debtor and Debtor in Possession* |
| Petition Date: | April 26, 2023 |
| Date of Retention Order: | June 9, 2023 [ECF No. 93] (effective as of April 26, 2023) |

---

[1] The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910

| | |
|---|---|
| Disclosure of Compensation Received Before the Petition Date: | $ 101,921.50 [ECF No. 56] |
| Period for Which Compensation and Reimbursement is Sought: | April 25, 2023 through December 20, 2023, (the "Compensation Period"), which includes compensation not previously presented for approval on an interim basis for the time period of October 1, 2023 through and including December 20, 2023. |
| Total Amount of **Fees** for Compensation Period: | **$233,824.00** |
| Total Amount of Reimbursement for **Expenses** for Compensation Period: | **$763.40** |
| Voluntary Reduction of Fees for Compensation Period: | **$(8,187.75)** |
| Total Amount of Compensation Requested for Allowance on a **Final** Basis: | **$223,839.65**[2] |
| Previous Amounts Awarded by the Court: | $184,786.51 |
| Previous Amounts Received: | $97,739.50 |
| Balance Due: | $126,100.15 |
| Retainer held by Dentons: | **$0.00** |

**This is a Final Fee Application.**

---

[2]     The total amount of compensation requested for allowance on a final basis does not include $2,560.00 in fees incurred during the time period covered by the *First Interim Application for Compensation and Reimbursement of Dentons as Counsel to the Debtor for the Period of April 26, 20233 through September 30, 2023 and for Related Relief* [ECF No. 151] ("First Interim Application").  Dentons is not seeking final approval of fees that the Court previously did not award on an interim basis, as reflected in the Court's orders at Dkt. Nos. 180 and 184.

2

23287418.v2

# SUMMARY OF TIME AND EXPENSES FOR THE COMPENSATION PERIOD

## Compensation by Professional and Paraprofessional

| Initials | Timekeeper | Rate | Hours | Amount |
|---|---|---|---|---|
| ACH | Andrew C. Helman | $ 590.00 | 202.4 | $ 119,416.00 |
| GMY | Gina M. Young | $ 400.00 | 65.0 | $ 26,000.00 |
| JSM | Jacob Margolies | $ 350.00 | 4.30 | $ 1,505.00 |
| KDS | Kyle D. Smith | $ 365.00 | 210.7 | $ 76,905.50 |
| SH | Samantha Hayes | $ 215.00 | 46.5 | $ 9,997.50 |
| | | | | |
| | | Less Voluntary Reductions: | | $ (8,187.50) |
| | | | | |
| | | Less Fees Related to Dkt. Nos. 180 & 184: | | $ (2,560.00) |
| | | | | |
| | | **Total:** | **528.90** | **$ 223,076.25** |

## Out-of-Pocket Expenses

| Expense | Date | Amount |
|---|---|---|
| Shipping/Order Distribution | 4/29/2023 | $ 250.51 |
| Shipping/Order Distribution | 10/5/2023 | $ 401.71 |
| Shipping/Order Distribution | 11/2/2023 | $ 63.75 |
| Shipping/Order Distribution | 11/3/2023 | $ 47.43 |
| | **Total:** | **$ 763.40** |

## Compensation by Time Period and Category

| Category | Task Code | Hours | Amount |
|---|---|---|---|
| Case Administration | B110 | 70.7 | $ 23,395.00 |
| Asset Analysis & Recovery | B120 | 1.3 | $ 767.00 |
| Adequate Protection/Relief from Stay | B140 | 0.8 | $ 472.00 |
| Utilities | B145 | 0.1 | $ 59.00 |
| Meetings & Communications with Debtor | B150 | 18.3 | $ 10,797.00 |
| Court Hearings | B155 | 5.6 | $ 3,304.00 |
| Employment Applications | B160 | 13.3 | $ 5,596.00 |
| Fee Applications | B170 | 42.9 | $ 16,584.00 |
| Executory Contact and Leases | B185 | 1.9 | $ 779.00 |
| Litigation and Contested Matters | B190 | 143.90 | $ 67,067.50 |
| Regulatory Matters and Corporate Matters | B200 | 3.9 | $ 1,423.50 |

3

| | | | | |
|---|---|---|---|---|
| Business Operations/Strategic Planning | B210 | 3.2 | $ | 1,888.00 |
| Financial Reports (MOR/Schedules/etc.) | B211 | 47 | $ | 20,735.00 |
| Employee Matters-Benefits/Pensions/Unions | B220 | 2.3 | $ | 1,019.50 |
| Claims Administration and Objections | B310 | 2.7 | $ | 1, 345.50 |
| Plan/Disclosure Statement | B320 | 171 | $ | 78,592.00 |
| | | | | |
| Less Voluntary Reductions: | | | $ | (8,187.50) |
| | | | | |
| Less Fees Related to Dkt. Nos. 180 & 184: | | | $ | (2,560.00) |
| | | | | |
| | **Total:** | **528.90** | **$** | **223,076.25** |

4

23287418.v2

**JOYCE C.H. TANG**
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam 96910
Telephone: (671) 472-8868/69
Email: *jtang@civilletang.com*

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
One City Center, Suite 11100
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*

*Counsel for the Debtor*

## IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re | Case No. 23-00005 |
| ASIA PACIFIC FINANCIAL MANAGEMENT GROUP, INC.,[1] | Chapter 11 |
| Debtor. | **SECOND AND FINAL INTERIM FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF DENTONS AS COUNSEL TO THE DEBTOR FOR THE PERIOD OF APRIL 26, 2023 THROUGH TO AND INCLUDING DECEMBER 20, 2023 AND FOR RELATED RELIEF** |

Dentons,[2] in its capacity as counsel to Asia Pacific Financial Management Group, Inc., the

above-captioned debtor and debtor-in-possession (the "Debtor"), hereby submits this second and

---

[1] The last four digits of the taxpayer identification number of Asia Pacific Financial Management Group, Inc. are 3272. The principal office of Asia Pacific Financial Management Group, Inc. is 145 Aspinall Avenue, Hagåtña, Guam 96910

[2] As disclosed in the Retention Application (as defined herein), Dentons refers to Dentons Group, a Swiss verein structure comprised of member firms. The partners of Dentons Bingham Greenebaum LLP ("DBG"), among others, are also partners of Dentons United States LLP, which is the U.S. Region member of Dentons Group, whose members and their respective subsidiaries, affiliates, and related entities provide legal services in different locations. Retention Application, ¶ 7.

5

final fee application (the "Fee Application") seeking an order authorizing the Debtor to pay to Dentons, on an final basis, compensation for professional services rendered and reimbursement of expenses incurred for the period beginning on April 26, 2023,[3] and ending on December 20, 2023 (the "Compensation Period"). In support of this Fee Application, Dentons states as follows:

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicates for the relief sought herein are sections 327(a) and 330 of chapter 11 of title of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2016(a) (the "Bankruptcy Rules"), and GUB 2016-1a (the "Local Rules").

## BACKGROUND AND PROCEDURAL HISTORY

4. On April 26, 2023 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in the District Court of Guam Territory of Guam Bankruptcy Court (the "Court"). No trustee or examiner has been appointed in the Bankruptcy Cases.

5. On April 26, 2023, Dentons filed its *Application to Employ Dentons as Counsel for the Debtor and Debtor in Possession* [ECF No. 16] (the "Retention Application"). On May 1, 2023, the Court entered an interim order granting the Retention Application and authorizing the Debtor to retain Dentons as counsel effective as of April 26, 2023 [ECF No. 38] (the "Interim

---

[3]   Due to the significant time difference between Guam and the Eastern Time Zone, where all relevant Dentons professionals are located, the Billing Detail attached to this Fee Application includes two time entries dated April 25, 2023. All time entries reflected on the billing detail attached hereto reflect the date in the time zone where the relevant timekeeper is located, rather than the local time in Guam. For the avoidance of doubt, the time entries shown on the Billing Detail as billed on April 25, 2023 were billed on April 26, 2023 at the prevailing local time in Guam.

23287418.v2

Order"). On June 9, 2023, the Court entered a final order granting the Retention Application and authorizing the Debtor to retain Dentons as counsel [ECF No. 93] (together with the Interim Order, the "Retention Order").

6.       As set forth in the Retention Application, Dentons was authorized to render general legal services to the Debtor during the Bankruptcy Case, with a focus on bankruptcy and litigation, to the extent necessary. In particular, the Debtor retained Dentons to provide, among other things, the following legal services:

(a)     Advising with regard to the requirements of the Court, Bankruptcy Code, Bankruptcy Rules, Local Rules, and the Office of the United States Trustee, as they pertain to the Company;

(b)     Advising with regard to certain rights and remedies of the bankruptcy estate and rights, claims, and interests of creditors and bringing such claims as the Debtor, in its business judgment, chooses to pursue;

(c)     Representing the Debtor in any proceeding or hearing in the Court involving the estate, unless the Debtor is represented in such proceeding or hearing by other special counsel;

(d)     Conducting examinations of witnesses, claimants, or adverse parties, and representing the Debtor in any adversary proceeding (except to the extent that any such adversary proceeding is in an area outside of our expertise);

(e)     Reviewing and analyzing various claims of the Debtor's creditors and treatment of such claims and preparing, filing, or prosecuting any objections thereto or initiating appropriate proceedings regarding leases or contracts to be rejected or assumed;

(f)     Preparing and assisting the Debtor with the preparation of reports, applications, pleadings, motions, and orders;

(g)     Assisting in the negotiation, formulation, preparation, and confirmation of a plan of reorganization or a sale of the Debtor's assets, should that be appropriate; and

(h)     Performing any other services that may be appropriate in our representation of the Debtor in the Bankruptcy Case.

7.       On November 2, 2023, Dentons filed its *First Interim Application for*

*Compensation and Reimbursement of Dentons as Counsel to the Debtor for the Period of April 26, 20233 through September 30, 2023 and for Related Relief* [ECF No. 151] ("First Interim Application"). The First Interim Application requested interim allowance of fees in the amount of $187,096.00 and expenses in the amount of $250.51. On November 16, 2023, Dentons filed the *Supplement to the First Interim Application for Compensation and Reimbursement of Dentons as Counsel to the Debtor for the Period of April 26, 20233 through September 30, 2023 and for Related Relief* [ECF No. 169] voluntarily reducing the amount of fees sought by $580.50, to $186,515.50. On December 29, 2023, the Court entered an order [ECF No. 184] granting the First Interim Application and allowing for compensation in the amount of $184,786.51, comprised of fees in the amount of $184,536.00 and expenses in the amount of $250.51.

## COMPENSATION AND REIMBURSEMENT REQUEST

8.      By this Fee Application, Dentons seeks allowance, on a final basis, of professional fees incurred during the Compensation Period in the amount of **$223,076.25** and reimbursement of expenses incurred during the Compensation Period in the amount of **$763.40**, for a total of **$223,839.65**.[4]

9.      Pursuant to Bankruptcy Rule 2016(a), a detailed statement of professional services provided to the Debtor by Dentons during the both the Final Compensation Period and

---

[4]      As reflected on the Summary Sheet to this Fee Application, the Compensation Period Fees requested by Dentons include a voluntary reduction of fees in the amount of $8,187.75 (a reduction of approximately 3.5% of the total fees billed by Dentons). This voluntary reduction is the product of specific adjustments to time entries in the billing judgement of the undersigned. Dentons has also written off and will not charge the Debtor for certain expenses incurred during a judicial mediation.

Additionally, the total amount of compensation requested for allowance on a final basis does not include $2,560.00 in fees incurred during the time period covered by the *First Interim Application for Compensation and Reimbursement of Dentons as Counsel to the Debtor for the Period of April 26, 20233 through September 30, 2023 and for Related Relief* [ECF No. 151] ("First Interim Application"). Dentons is not seeking final approval of fees that the Court previously did not award on an interim basis, as reflected in the Court's orders at Dkt. Nos. 180 and 184.

8

Compensation Period is set forth on **<u>Exhibit A</u>** (the "<u>Billing Detail</u>"), which is attached hereto and incorporated herein by reference. As required by the United States Trustee's *Appendix A – Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330* (the "<u>Appendix A Guidelines</u>"), the Billing Detail contains project category task codes assigned to time entry narratives, and a summary chart for all work performed group by task code is set forth on the Summary Sheet to this Fee Application.

10.     It is the practice of the undersigned to review each time entry before an invoice is finalized and submitted to the Court for approval and to make specific adjustments, where necessary based on billing judgment, rather than applying any "courtesy" or lump sum discount that is not tied to or connected to review of specific time entries. As reflected in the Billing Detail, such adjustments have been made here, resulting in voluntary discounts totaling approximately 3.5% of gross billings.[5]

11.     No understanding exists between Dentons and any other person for the sharing of the compensation sought by this Fee Application except within Dentons.

12.     Dentons has substantial experience in such areas as restructuring law and the other matters for which it has been retained in these Bankruptcy Cases. Dentons' team has counseled the Debtor in these areas since the date of the firm's retention. A brief biography of each professional who has rendered services in connection with the fees and expenses requested herein is set forth in **<u>Exhibit B</u>** to this Fee Application.[6]

13.     This Fee Application is Dentons' final application to this Court for compensation

---

[5]     This does not reflect an added discount that the Debtor has received by virtue of the undersigned charging the Debtor $590 per hour rather than $725 per hour, as in certain other cases.

[6]     **<u>Exhibit B</u>** does not include a biography of support staff members whose biographies are not generally maintained on the firm's website.

9

for professional services and reimbursement of expenses pursuant to sections 328, 330, and 331 of the Bankruptcy Code; Bankruptcy Rule 2016; and Local Rule GUB 2016-1a.

14. The Debtor was given the opportunity to review this Fee Application prior to filing, and Dentons is not aware of any objections to the requested amounts herein.

## SUMMARY OF SERVICES

15. Dentons and its professionals have served as counsel to the Debtor for the matters set forth in the Retention Application and Retention Order. The scope of work performed by Dentons focused on the specific needs of the Debtor. The Billing Detail is annotated with task codes used by Dentons to supplement the time entries generated by each professional and paraprofessional who billed time to the Debtor during the Compensation Period. There are some instances where a time entry may span more than one category, in which case billing judgment is exercised to determine which the appropriate category is.

16. Each of the following categories of service and the services subject to specific time entries in the Billing Detail were reasonably likely to be beneficial to the Dentons at the time performed and provided the Dentons reasonable value for the work performed. More generally, Dentons' services to the Debtor during the Compensation Period included, but were not limited to, the following:[7]

A. **Case Administration – B110 [Fees $23,395.00; Hours 70.7]**

17. Case Administration refers to a catch-all for services provided on the matter that do not fit within another category and also includes coordination and compliance activities. In this matter, it has included, without limitation, (A) certain instances of general review of filings and

---

[7] For the purposes of the following summary, Dentons has omitted the following task code categories in which Dentons professionals billed less than one hour in total in each category during the Compensation Period: "B145 – Utilities", and "B140 – Adequate Protection/Relief From Stay."

23287418.v2

related meetings (such as in initial days of the case); (B) preparation of notices of appearance and motions for admission *pro hac vice*; (C) work by paralegal or support staff to ensure deadlines are properly calendared, court filings are properly served, and documents are properly filed in conformity with the Court's rules; (D) work related to the preparation of the Debtor's schedules and statements, including the redacted and unredacted version of the Debtor's Schedule G and work addressing various related issues (though some related work is also identified in task code B190 and B211); and (E) review of certain court filings that do not easily fit in other categories.

  **B.**  <u>Asset Analysis & Recovery – B120 [Fees $767.00; Hours 1.3]</u>

  18.  Asset Analysis & Recovery is a category that is used to describe the Debtor's review and investigation the Debtor's assets and financial statements for preparation of schedules and statements and related tasks.

  **C.**  <u>Meetings & Communications with Debtor or Committee – B150 [Fees $10,797.00 ; Hours 18.3]</u>

  19.  Meetings & Communications with Debtor is the task code used by counsel to record time spent communicating with the Debtor. These meetings and communications include (A) informal e-mail with the Debtor and the Debtor's employees, (B) memoranda provided to the Debtor regarding court filings or strategic and tactical matters, and (C) Zoom or telephone conferences with the Debtor. These communications are an essential part of counsel's work with the Debtor and are necessary to inform the client so that it can authorize counsel to proceed with a given course of action. Consequently, Dentons submits that fees incurred for meetings and communications were necessary and reasonable under the circumstances.

  **D.**  <u>Court Hearings – B155 [Fees $3,304.00; Hours 5.6]</u>

  20.  Court Hearings is the task code generally used to record time spent attending court hearings, though some hearings may also be recorded under B190. There have been relatively few

court hearings in this matter, and many of those that have occurred resulted in consensual outcomes thanks to productive cooperation among the various parties and their counsel. Representation of the Debtor in court is an essential function of counsel. Dentons submits that the fees incurred for this task were reasonable and necessary under the circumstances.

E.     **Employment Applications – B160 [Fees $5,596.00; Hours 13.3]**

1.     Employment Applications is the task code used by counsel to the Debtor to capture all time related to the retention of professionals and any related work. This includes, without limitation, preparation of Dentons' retention papers and related work (such as a supporting declaration and disclosures) as well as review of retention papers for other professionals.

2.     Work on matters pertaining to retention applications provided an important and valuable service to the Debtor in that it ensured that the Debtor would be represented by counsel and the other professionals to be retained by the Debtor were appropriate. Time entries related to this work demonstrate that it was efficient for the size and scope of the case.

F.     **Fee Applications – B170 [Fees $16,584.00; Hours 42.9]**

21.     The Fee Applications task code captures time related to preparation, review, and consideration of fee applications of professionals of the Debtor. Fees for this category have included preparation of compensation applications for the Debtor's professionals, including preparation of the First Interim Application, the *Amended First Interim Fee Application for Compensation and Reimbursement of Expenses of Civille & Tang, PLLC as Local Counsel to the Debtor for the Period of April 26, 2023 through September 30, 2023 and for Related Relief* [ECF No. 166]. This is work that is necessary and mandated by the Bankruptcy Code's provisions requiring judicial review of professional fees.

G.     **Executory Contracts and Leases – B185 [Fees $779.00; Hours 1.9]**

12

22.     Executory Contracts and Leases is a task code category utilized by Dentons to capture work related to the assumption and/or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code.  In this case, time billed in this task code include work related to the Debtor's RRIA Motion (as defined herein), while the bulk of the remainder of work related to the RRIA Motion is included in "B190 – Litigation and Contested Matters."

H.     <u>Litigation and Contested Matters – B190 [Fees $68,491.00; Hours 147.8]</u>[8]

23.     Litigation and Contested Matters is a category that is designed to capture work preparing and reviewing motions or engaging in contested matters – essentially, work that is likely to result in court hearings.  Generally speaking, Dentons used this task code to record time pertaining to motions practice and related matters.  Without limiting the generality of the foregoing, this included (A) the work related to multiple "first day" motions, including (i) informal communications and negotiation with the U.S. Trustee to consensually resolve issues and objections, (ii) formal response to objections filed by the U.S. Trustee, and (iii) supplemental rounds of briefing required in connection with the *Motion of the Debtor for Entry of an Order Approving the Assumption of the Registered Representative & Investment Advisor Representative Agreements* [ECF No. 8] (the "<u>RRIA Motion</u>") and the Debtor's *Motion for Entry of an Order Authorizing Procedures to Maintain Confidentiality of the Debtor's Client List and Granting Related Relief* [ECF No. 12] (the "<u>Confidentiality Motion</u>"); (B) preparation of a response to Mr. Phillips' *Motion for Recusal of Disqualification of Chief Judge Frances Tydingco-Gatewood and Request for Extension to File Supplemental Declaration in Support of Motion* [ECF No. 44] (the

---

[8]     For the purposes of following summary, one time entry displayed on the Billing Detail within the "B200 – Regulatory Matters and Corporate Matters" task code and in the amount of 3.9 hours and associates fees of $1,423.50 has been included in within the totals and description for "B190 – Litigation and Contested Matters."  This time entry pertains to those matters discussed herein.

"Recusal Motion"); (C) extensive review, analysis, and research in connection with *Creditor Michael Phillips' Motion to Dismiss, Convert to Chapter 7, Revoke Subchapter V Election, Remove Debtor-in-Possession Status, and/or Order an Investigation of the Debtor's Finances and Operations* [ECF No. 85] (the "Motion to Dismiss"); (D) review and analysis of legal precedent regarding the dischargeability of debts under subchapter V of the Bankruptcy Code; and (E) various work related to the Debtor's mediation with Mr. Phillips.

24.    There are some instances in which work that could be designated as Litigation and Contested Matters is assigned a task code related to a substantive area in which the work was or is being performed or that a court hearing may be designated as Litigation and Contested Matters.

25.    Dentons submits that the work performed in this task code was necessary and reflects reasonable value for the services provided. Every motion that Dentons filed on behalf of the Debtor was granted or resolved consensually—and the Recusal Motion, which the Debtor opposed, was denied. Thus Dentons' work provided material benefit to the Debtor and its estate.

I.    **Business Operations/Strategic Planning – B210 [Fees $1,888.00; Hours 3.2]**

26.    Business Operations/Strategic Planning includes time pertaining to various operational matters that arose during the Bankruptcy Case for which the Debtor required Dentons' counsel.  This includes matters related to the Debtor's cash management system and accounts, the Debtor's payroll system, and similar matters.

J.    **Financial Reports – B211 [Fees $20,735.00; Hours 47.0]**

27.    Financial Reports includes time pertaining to the preparation and review of monthly operating reports, weekly cash reporting, bankruptcy schedules and the like. Reviewing these documents is necessary to fulfill the Debtor's reporting requirements as a chapter 11 debtor and in order to understand the Debtors' assets, business operations, and cash position during the case and

14

inform strategic decision making by the Debtor and counsel. This task code also includes time associated with work preparing the Debtor's unredacted and redacted Schedule G and addressing related issues.

### K. Employee Matters – Benefits/Pensions/Unions – B220 [Fees $1,019.50; Hours 2.3]

28.     Employee Matters – Benefits/Pensions/Unions is the task code utilized by Dentons to record time for matters that related to the Debtor's employees and workforce. In this case, this has included providing advice to the Debtor on issues related to the Debtor's pension obligations as they arose during the Bankruptcy Case.

### L. Claims Administration and Objections – B310 [Fees $1,345.50; Hours 2.7]

29.     This category relates to the administration of the claims objection process and review and objection to claims. Work billed to this task code has included review of claims filed in the Bankruptcy Case and related matters.

### M. Plan/Disclosure Statement – B320 [Fees $78,592.00; Hours 171.0]

30.     Plan/Disclosure Statement is the task code used for time entries pertaining to the plan and disclosure statement process. This has included, without limitation, development and drafting of the Debtor's plan, including extensive legal analysis of relevant issues; negotiations with key parties prior to the filing of plan documents; negotiation related to the terms of proposed plan treatment; and development of financial models related to the Debtor's projected disposable income and the liquidation value of the Debtor's estate; drafting memoranda and declarations in support of the Debtor's plan, and related work necessary for confirmation of the Debtor's plan. The culminating result of this was the successful confirmation of a fully consensual plan of reorganization that reduced the Debtor's liabilities and permitted the Debtor to continue its business in the ordinary course and to the benefit of its members, employees, clients, and the

15

community of Guam.

31.     Dentons has also included time entries in this category that relate to participation in mediation and related settlement discussions with Mr. Phillips in an effort to reach a consensual plan, though this work also could have plausibly been attributed to B190.  Dentons estimates that work related to mediation, including attorney time attending mediation (except as noted) and briefing totaled 35.2 hours resulting in $18,248.00 in fees.  Dentons is not charging the Debtor for participation at mediation of an associate attorney, which resulted in billings totaling approximately $3,840.00, even though such participation provided value to the Debtor in that this attorney was then able to assist with revisions to the chapter 11 plan and other work in this matter.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

32.     Pursuant to section 330 of the Bankruptcy Code, this Court may award professionals "reasonable compensation for actual, necessary services."  11 U.S.C. § 330(a)(1)(A). A court "may approve applications for compensation of services that were competently performed and that were actual, necessary, and beneficial to a debtor's estate." *In re Zagara's Fresh Markets, LLC*, No. 03 43017 GMB, 2006 WL 4452980, at *3 (Bankr. D.N.J. Apr. 13, 2006).  Success is not a measure of whether a service performed was actual, necessary, or beneficial to a debtor's estate, but rather a court "must conduct an objective inquiry based upon what services a reasonable professional would have performed in the same circumstances." *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 861–62 (Bankr. D. Del. 2004) (quoting *In re Cenargo Int'l, PLC*, 294 B.R. 571 (Bankr. S.D.N.Y. 2003) *see also In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) ("[S]o long as there was a reasonable chance of success which outweighed the cost in pursuing the action, the fees relating thereto are compensable.")

33.     Section 330(a) of the Bankruptcy Code "does not create a retrospective standard

16

where services are only compensable if they result in a material benefit to the estate." *Fann Contracting, Inc. v. Garman Turner Gordon LLP.*, 620 B.R. 141, 148 (D. Nev. 2020). "Instead, 'a professional need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered.'" *Id*. (quoting *Slater v. U.S. Trustee (In re Garcia)*, 335 B.R. 717, 724 (9th Cir. B.A.P. 2005); *see also In re Berg*, 268 B.R. 250, 260 (Bankr. D. Mont. 2001) ("The test is whether the applicant's services were necessary and beneficial to the estate, not whether the debtor's activities, in hindsight, were necessary to achieve whichever outcome occurs.").

34. If the court finds that services were actual, necessary, and beneficial at the time they were rendered, then section 330(a) also instructs that the court must then "assess a reasonable value for those services." *In re Fleming Cos., Inc.*, 304 B.R. 85, 90 (Bankr. D. Del. 2003) (quoting *In re Gencor Industs.*, 286 B.R. 170 176–77 (Bankr. M.D. Fla. 2002); *see also In re Virissimo*, 354 B.R. 284, 291 (Bankr. D. Nev. 2006) (discussing a three-part analysis previously referenced by the Ninth Circuit, which includes an evaluation of whether "the necessary tasks [were] performed within a reasonable amount of time and what is the reasonable value of that time?" (citing *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood, Inc.)*, 924 F.2d 955, 957–58 (9th Cir. 1991)).

35. Section 330 sets forth the specific criteria for the award of such reasonable compensation. *See* 11 U.S.C. § 330(a)(3)(A)-(F). In evaluating the amount of reasonable compensation to be awarded, a court should consider:

> the nature, the extent, and the value of such services, taking into account all relevant factors including:
> A. the time spent on such services;
> B. the rates charged for such services;
> C. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> D. whether the services were performed within a reasonable amount of

17

                       time commensurate with the complexity, importance, and nature of
                       the problem, issue, or task addressed;

    E.      with respect to a professional person, whether the person is board
           certified or otherwise has demonstrated skill and experience in the
           bankruptcy field; and

    F.      whether the compensation is reasonable based on the customary
           compensation charged by comparably skilled practitioners in cases
           other than cases under this title.

11 U.S.C. §§ 330(a)(3)(A–F). "In the Ninth Circuit, the customary method for determining the

reasonableness of attorney's fees is the 'lodestar' calculation," which is "calculated by multiplying

the number of hours . . . reasonably expended . . . by a reasonable hourly rate." *In re Parreira*,

464 B.R. 410, 416 (Bankr. E.D. Cal. 2012) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363

(9th Cir. 1996)). "A compensation award based on a reasonably hourly rate multiplied by the

number of hours actually and reasonably expended is presumptively a reasonable fee." *Burgess v.*

*Klenske (In re Manoa Fin. Comp., Inc.)*, 853 F.2d 687, 691 (9th Cir. 1988).

      36.     The "cost of comparable services factor" – enumerated in section 330(a)(3)(F) of

the Bankruptcy Code – is of particular importance to determine a reasonable hourly rate and the

value of services provided. *In Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 849 (3d Cir. 1994) ("the

cost of comparable services factor has an overarching role to act as a guide to the value of the

services rendered given their nature and extent."). "In reviewing the reasonableness of an

attorney's rate, the court is guided by the 'prevailing market rates in the relevant community.'" *In*

*re Buckridge*, 367 B.R 191, 205 n. 24 (Bankr. C.D. Cal. 2007) (quoting *Blum v. Stenson*, 465 U.S.

886, 895 (1984)); *see also Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691,

696 (9th Cir. 1996) (in context of civil rights litigation, "reasonable fees . . . are to be calculated

according to the prevailing market rates in the relevant community . . . .").

      37.     In determining "comparability" of hourly rates, many courts take a market-driven

approach. *See*, *e.g.*, *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 258 (3d Cir.

18

23287418.v2

Case 23-00005   Document 188   Filed 02/18/24   Page 18 of 23

1995) ([Section] 330 presents a "market-driven approach," . . . in which the cost of comparable services is the most important of the listed factors . . . ." (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d at 258)); *Cenargo Intern., PLC*, 294 B.R. at 596 (the "inquiry into the 'value' of a professional's services often is described as a market-driven approach."). "[I]f the debtor's professionals . . . charge the same amount as the applicable market for comparable services, the Court would need good and articulated reasons to reduce their fee request as excessive." *Cenargo Intern., PLC*, 294 B.R. at 596.

38.    In defining the applicable market for comparable services, a court should consider whether professionals within a local market possess the specialized expertise and experience required to provide services that are beneficial to a debtor's estate.  It is appropriate to look beyond prevailing local rates "[i]f local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). "Sometimes, where particular legal specialization is required, courts may consider a national billing rate." *In re RFC*, 399 F. Supp. 3d 827, 846 (D. Minn. 2019) (citing *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) ("The relevant market for attorneys . . . may extend beyond the local geographic community.")); *see also*, *In re Temple Retirement Cmty, Inc.*, 97 B.R. 333, 343 (Bankr. W.D. Tex. 1989) ("When the nature of a given case in fact justifies the retention of out-of-town counsel . . . local rates should not operate as a limiting factor in determining the reasonableness of the base fee sought."); *In re Computer Learning Centers, Inc.*, 285 B.R. 191, 228 n. 39 (Bankr. E.D. Va. 2002) ("One factor in determining the proper hourly rate is the type of work that is performed and the market within which counsel practices."); *See also*, *In re G.W.C. Fin. & Ins. Servs., Inc.*, 8 B.R. 122, 125 (Bankr. C.D. Cal. 1981) (remarking that section 330 of

the Bankruptcy Code "should be construed in a manner not to discourage competent counsel from representing financially distressed debtors.").

39.      An "attorney's actual billing rate for compensable work is 'presumptively appropriate' to use as the market rate." *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Gusman v. Unisys Corp.*, 986 F. 2d 1146, 1150 (7th Cir. 1993)); *see also Arter & Hadden LLP v. Meronk (In re Meronk)*, 24 Fed. Appx. 737, 738 (9th Cir. 2001) ("There is a strong presumption that payment of an attorney's standard hourly rate constitutes reasonable compensation."); *In re 14605, Inc.*, 2006 WL 2745709 at *8 (Bankr. D. Del. Sept. 19, 2007) (holding that, when rates charged by bankruptcy professionals are market rates, "there is a presumption that they are appropriate.").

40.      Dentons respectfully submits that the services for which it seeks compensation in this Fee Application were necessary for, and beneficial to, the Debtor and the Debtor's estate, and that such fees constitute fair and reasonable compensation to Dentons at reasonable, market-appropriate rates.

41.      Moreover, as reflected by the time entries in **Exhibit B**, the services rendered by Dentons were performed economically, effectively, and efficiently, and the work conducted by Dentons was assigned to appropriate professionals according to the experience and level of expertise required for each particular task.  Whenever possible and where appropriate, Dentons sought to minimize the costs of its services by utilizing professionals with lower billing rates. Further, Dentons has exercised billing judgment and made reductions or adjustments as appropriate (in many cases, indicated as "NO CHARGE" or with a parenthetical in the applicable invoice).

42.      In sum, the services rendered by Dentons were necessary and beneficial to the

Debtor and such services were consistently performed in a timely manner, commensurate with the complexity and the nature of the issues involved. Accordingly, approval of compensation sought herein is warranted.

## **ACTUAL AND NECESSARY EXPENSES SHOULD BE ALLOWED**

43.     All of the expenses for which reimbursement is requested are expenses which: (i) Dentons customarily recoups from all of its clients; (ii) were incurred or billed during the Compensation Period; and (iii) were necessarily incurred in connection with these Bankruptcy Cases. Dentons will not profit from the reimbursement of any expense.

## **NOTICE**

44.     Notice of this Fee Application and all related papers will be served on the following parties on the date and manner set forth in the certificate of service related to this Fee Application: (a) the U.S. Trustee; and (b) all parties in these Bankruptcy Cases receiving service through the Court's CM/ECF electronic filing system. Further, notice the hearing with respect to this Fee Application will be given to all parties entitled to notice under Bankruptcy Rule 2002(a). Dentons will serve any other parties as directed by the Court and requests that the Court limit notice in this instance to the extent the Court deems appropriate. *See* Fed. R. Bankr. P. 2002(m).

## **CONCLUSION**

Based on the foregoing, Dentons respectfully requests that the Court enter an order (A) approving this Fee Application on the terms requested in the proposed order filed herewith; and (B) providing any such other and further relief as this Court deems just and proper.

Date: February 18, 2024

/s/ Andrew C. Helman
ANDREW C. HELMAN (admitted *pro hac vice*)
DENTONS BINGHAM GREENEBAUM LLP
One City Center, Suite 11100
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*

*Counsel to the Debtor Asia Pacific Financial Management Group Inc.*

22

## CERTIFICATE OF SERVICE

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on (a) the U.S. Trustee; and (b) all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Date: February 18, 2024

/s/ Andrew C. Helman
ANDREW C. HELMAN (admitted *pro hac vice*)
DENTONS BINGHAM GREENEBAUM LLP
One City Center, Suite 11100
Portland, ME 04101
Telephone: (207) 619-0919
Email: *andrew.helman@dentons.com*